IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INFINITY COMPUTER PRODUCTS, INC.,   )
   )
             Plaintiff,   )
   )
v.   )    C.A. No. 12-6797-LDD
   )
OKI DATA AMERICAS, INC.,   )    Judge: Hon. Legrome D. Davis
   )
             Defendant.   )

**DEFENDANT OKI DATA AMERIAS, INC.'S
ANSWER AND COUNTERCLAIMS**

Defendant Oki Data Americas, Inc. ("ODA") answers the Complaint of plaintiff Infinity Computer Products, Inc. ("Infinity") as set forth below and demands a jury trial on all issues so triable:

1.     ODA denies that it infringes any valid claim of United States Patent Nos. 6,894,811 ("the '811 Patent"), 7,489,423 ("the '423 Patent"), 8,040,574 ("the '574 Patent"), or 8,294,915 ("the '915 Patent") (collectively, the "Asserted Patents"). ODA admits that Infinity's complaint is a patent infringement action that seeks injunctive relief and monetary damages. ODA is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 1 and, therefore, denies them.

2.     ODA admits that Infinity previously filed a patent infringement action in this Court, E.D. Pa. C.A. No. 2:10-cv-03175-LDD, on June 30, 2010 (the "Related Action"). ODA denies that it infringes any valid claim of the Asserted Patents. ODA is without knowledge or information sufficient to form a belief as to the truth of whether the other corporate entities

accused of infringement in the Related Action have engaged in the manufacture and sale of computer-related products.  ODA admits the remaining allegations of paragraph 2.

3.      ODA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and, therefore, denies them.

4.      ODA admits that it is a corporation organized and existing under the laws of Delaware with its principal place of business at 2000 Bishops Gate Blvd., Mt. Laurel, New Jersey, 08054. ODA denies the remaining allegations of Paragraph 4.

5.      Admitted.

6.      Admitted.

7.      ODA consents to personal jurisdiction for the limited purpose of this lawsuit only. ODA denies the remaining allegations of Paragraph 7.

8.      ODA admits that it ships, distributes, and sells products in the United States, the Commonwealth of Pennsylvania, and the Eastern District of Pennsylvania, and ODA admits that it provides an interactive web page that can be viewed in the United States, the Commonwealth of Pennsylvania, and the Eastern District of Pennsylvania. ODA denies the remaining allegations of paragraph 8.

9.      ODA consents to venue for the limited purpose of this lawsuit only.

10.     ODA admits that the United States Patent and Trademark Office ("USPTO") issued a patent that received U.S. Patent No. 6,894,811 ("the '811 patent"), entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER," but denies that this patent was duly or legally issued. ODA admits that the '811 patent states that it issued on May 17, 2005. ODA denies that an *Ex Parte* Reexamination Certificate was issued for the '811 patent that contains any claims allowed by the

2

USPTO. ODA admits that a copy of the '811 patent as originally issued and a copy of the re-examination certificate issued July 31, 2012 were attached as Exhibit A to Infinity's complaint. ODA denies the remaining allegations of Paragraph 10.

11.     ODA admits that the USPTO issued a patent that received U.S. Patent No. 7,489,423 ("the '423 patent"), entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER," but denies that this patent was duly or legally issued. ODA admits that the '423 patent states that it issued on February 10, 2009. ODA admits that an *Ex Parte* Reexamination Certificate was issued for the '423 patent on May 1, 2012. ODA admits that a copy of the '423 patent and a copy of the re-examination certificate issued May 1, 2012 were attached as Exhibit B to Infinity's complaint. ODA denies the remaining allegations of Paragraph 11.

12.     ODA admits that the USPTO issued a patent that received U.S. Patent No. 8,040,574, entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER," but denies that this patent was duly or legally issued. ODA admits that the '574 patent states that it issued on October 18, 2011. ODA admits that a copy of the '574 patent was attached as Exhibit C to Infinity's complaint. ODA denies the remaining allegations of Paragraph 12.

13.     ODA admits that the USPTO issued a patent that received U.S. Patent No. 8,294,915, entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER," but denies that this patent was duly or legally issued. ODA admits that the '915 patent states that it issued on October 23, 2012. ODA admits that a copy of the '915 patent was attached as Exhibit D to Infinity's complaint. ODA denies the remaining allegations of Paragraph 13.

14.    Denied.

15.    Denied.

16.    ODA re-states and incorporates by reference its answers to Paragraphs 1 through 15, above.

17.    Denied.

18.    ODA admits that it has business relationships with business entities. ODA denies the remaining allegations of paragraph 18.

19.    Admitted.

20.    ODA admits that it owns, operates, advertises, and controls www.okidata.com, through which it advertises, sells, offers to sell, and/or provides support to customers on some features of some multi-function products. ODA denies the remaining allegations of paragraph 20.

21.    Denied.

22.    Denied.

23.    Denied.

24.    ODA re-states and incorporates by reference its answers to Paragraphs 1 through 23, above.

25.    Denied.

26.    ODA admits that it has business relationships with business entities.  ODA denies the remaining allegations of paragraph 26.

27.    Admitted.

28.    ODA admits that it owns, operates, advertises, and controls www.okidata.com, through which it advertises, sells, offers to sell, and/or provides support to customers on some features of some multi-function products. ODA denies the remaining allegations of paragraph 28.

4

29.     Denied.

30.     Denied.

31.     Denied.

32.     ODA re-states and incorporates by reference its answers to Paragraphs 1 through 31, above.

33.     Denied.

34.     ODA admits that it has business relationships with business entities.  ODA denies the remaining allegations of paragraph 34.

35.     Denied.

36.     ODA admits that it owns, operates, advertises, and controls www.okidata.com, through which it advertises, sells, offers to sell, and/or provides support to customers on some features of some multi-function products. ODA denies the remaining allegations of paragraph 36.

37.     Denied.

38.     Denied.

39.     Denied.

40.     ODA re-states and incorporates by reference its answers to Paragraphs 1 through 39, above.

41.     Denied.

42.     ODA admits that it has business relationships with business entities.  ODA denies the remaining allegations of paragraph 42.

43.     Denied.

44.     ODA admits that it owns, operates, advertises, and controls www.okidata.com, through which it advertises, sells, offers to sell, and/or provides support to customers on some features of some multi-function products. ODA denies the remaining allegations of paragraph 44.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Paragraph 48 of the Complaint is a jury demand and does not require a response. To the extent that Paragraph 48 contains any factual allegations, ODA denies those allegations.

49.     Paragraph 49 of the Complaint is a prayer for relief and does not require a response. To the extent that Paragraph 49 contains any factual allegations, ODA denies those allegations.

## AFFIRMATIVE AND OTHER DEFENSES

Further answering the Complaint, ODA asserts the following defenses, undertaking the burden of proof on such defenses only to the extent required by law. ODA reserves its right to amend its Answer with additional defenses as more information is obtained.

## FIRST DEFENSE

With respect to each purported claim for relief asserted against ODA in the Complaint, Infinity fails to state a claim against ODA upon which relief may be granted.

## SECOND DEFENSE

ODA has not infringed and does not infringe literally or by the doctrine of equivalents, directly or indirectly, any valid claim of the '811 patent, the '423 patent, the '574 patent, or the '915 patent, and ODA is not liable for infringement thereof.

## THIRD DEFENSE

The claims of the Asserted Patents are invalid for failing to comply with the provisions of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

## FOURTH DEFENSE

Infinity is not entitled to injunctive relief because any injury to it is not immediate or irreparable, and Infinity has an adequate remedy at law for any claims it is able to prove.

## FIFTH DEFENSE

Infinity's recovery (if any) for alleged infringement of the Asserted Patents is limited to any alleged infringement committed no more than six years prior to the filing of the Complaint, pursuant to 35 U.S.C. § 286.

## SIXTH DEFENSE

Some or all of Infinity's claims are barred by one or more of the equitable doctrines of waiver, acquiescence, laches, estoppel, and/or unclean hands.

## SEVENTH DEFENSE

Infinity is estopped from construing the claims of the Asserted Patents in such a way as to encompass subject matter disclaimed by the amendments or arguments made in order to obtain allowance of the Asserted Patents.

## EIGHTH DEFENSE

ODA has not willfully infringed any valid and enforceable claim of the Asserted Patents.

## NINTH DEFENSE

Any damages sought by Infinity are limited by 35 U.S.C. § 284.

## TENTH DEFENSE

ODA is precluded pursuant to 35 U.S.C. § 287 from recovering any damages for alleged infringement that occurred prior to Infinity providing notice to ODA of any alleged infringement.

## ELEVENTH DEFENSE

Infinity cannot prove that this is an exceptional case justifying award of attorney fees against ODA pursuant to 35 U.S.C. § 285.

## TWELFTH DEFENSE

Infinity is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

## THIRTEENTH DEFENSE

The of the claims of the Asserted Patents are invalid due to inequitable conduct during prosecution, as set forth in ODA's Counterclaims, below.

## FOURTEENTH DEFENSE

Infinity's claims are barred, at least in part, based on absolute and equitable intervening rights pursuant to, *e.g.*, 35 U.S.C. §§ 252 and 307, as set forth in ODA's Counterclaims, below.

## FIFTEENTH DEFENSE

The claims of the '915 patent are invalid under the doctrine of double patenting.

## SIXTEENTH DEFENSE

Infinity lacks standing and holds no right to collect damages before March 3, 2010, as set forth in ODA's Counterclaims, below.

## SEVENTEENTH DEFENSE

All claims of the '811 patent were invalid when they were asserted against ODA in this action.

## EIGHTEENTH DEFENSE

ODA reserves the right to assert all other defenses, including, but not limited to defenses identified under Rule 8(c) of the Federal Rules of Civil Procedure, and/or defenses identified under the patent laws of the United States, that may now or in the future be available based on discovery, any other factual investigation, or any other development relating to this case or any other action.

## COUNTERCLAIMS

ODA asserts the following counterclaims against Infinity, and demands a jury trial on all issues so triable.

1.      ODA is a corporation organized and existing under the laws of the State of Delaware with its headquarters at 2000 Bishops Gate Boulevard, Mount Laurel, New Jersey 08054.

2.      Upon information and belief, Infinity is a corporation organized under the laws of the State of Pennsylvania having its principal place of business at 315 Saybrook Rd., Villanova, Pennsylvania 19085.

3.      These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and this Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331 and 1338(a), and under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

4.      With respect to the declaratory relief sought by these counterclaims, there is a substantial controversy between ODA and Infinity, of sufficient immediacy and reality to warrant the issuance of a judgment declaring the rights and other legal relations of the parties and awarding other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9

5.      This Court has personal jurisdiction over Infinity at least because Infinity has submitted to the jurisdiction of this Court by the filing of this patent infringement action.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

### FIRST COUNTERCLAIM
### DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,894,811

7.      ODA re-states and incorporates by reference its answers to paragraphs 1 through 6, above.

8.      The '811 patent is entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER" and states that it issued on May 17, 2005.

**A.      Infinity's Amendment of the Claims of the '811 Patent
During Reexamination Gave Rise to Intervening Rights**

9.      During an *ex parte* reexamination of the '811 patent before the USPTO, Control No. 90/009,901, Infinity substantively amended claims 1, 6, 18, 19 and 20 of the '811 patent.

10.      Specifically, claims 1, 6, 18, 19 and 20 were amended to require that the computer be "equipped with generic send/receive driver communications software."

11.      In addition, claim 19 was amended to require that the computer "equipped with generic send/receive driver communications software" be able "to send the digital image signals to the facsimile machine for printing."

12.      The reexamination certificate did not print the amended language, and allowed claims 1, 6, 18, 19 and 20.

13.      A Certificate of Correction issued March 12, 2013 for the '811 patent.

14.      Claim 19 was not fully corrected by the Certificate of Correction.

15.     Infinity states that it requested correction of the '811 patent reexamination certificate on September 24, 2012 (D.I. 29).

16.     Claims 1, 6 and 18-20 of the '811 patent, as published on the '811 patent reexamination certificate, were not correct at the time they were first asserted against ODA in this action.

17.     Claims 1, 6 and 18-20 of the '811 patent, as published on the '811 patent reexamination certificate, were invalid at the time they were first asserted against ODA in this action.

18.     On information and belief, Infinity knew or should have known that the '811 patent reexamination certificate did not contain the allowed claim language – "generic send/receive driver communications software" – at the time the reexamination certificate issued.

19.     On information and belief, Infinity knew or should have known that the '811 patent reexamination certificate did not contain the allowed claim language – "to send the digital image signals to the facsimile machine for printing" – at the time the reexamination certificate issued.

20.     Infinity continues to assert claim 19 against ODA despite not seeking correction.

21.     The Certificate of Correction for the '811 patent is not effective for this cause of action which arose before the Certificate of Correction was issued.

22.     Infinity's cause of action against ODA arose before Infinity requested the Certificate of Correction.

23.     Infinity's substantive amendments to the claims of the '811 patent during reexamination give rise to intervening rights.

24.     Under the doctrine of intervening rights, ODA is not liable for any infringement prior the date that a correct reexamination certificate issues for the '811 patent.

B.      **Infinity Lacks Standing to Pursue Damages Prior to March 3, 2010**

25.     A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent application that issued as the '811 patent, and any continuations based thereon, was executed by Marvin Nachman on March 3, 2010.

26.     A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent application that issued as the '811 patent and any continuations based thereon, was recorded in the records of the USPTO at reel 024016, frame 0994.

27.     A "Corrective Assignment" was recorded in the records of the USPTO at reel 024023, frame 0208 on March 4, 2010.

28.     To the extent the purported assignment dated March 3, 2010 is a valid conveyance of any rights in the '811 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

29.     To the extent the purported assignment dated March 4, 2010 is a valid conveyance of any rights in the '811 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

C.      **ODA Has Not Infringed Any Valid Claim of the '811 Patent**

30.     ODA has not infringed any valid claim of the '811 patent, and ODA is not liable for infringement thereof.

31.     ODA has not willfully infringed any valid claim of the '811 patent because it has not infringed any valid claim of the '811 patent and, and only if ODA is ultimately found to have

infringed a valid claim of the '811 patent, ODA did not act despite an objectively high likelihood that its actions constituted infringement.

## SECOND COUNTERCLAIM
## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,894,811

32.     ODA re-states and incorporates by reference its answers to paragraphs 1 through 31, above.

33.     Upon information and belief, the claims of the '811 patent are invalid for failing to comply with the provisions of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

34.     Claims 1, 6, 18, 19, and 20 of the '811 patent, and all claims dependent therefrom, were invalid prior to their correction.

35.     Claims 1, 6, 18, 19, and 20 of the '811 patent, and all claims dependent therefrom, were invalid at the time they were first asserted against ODA in Civ. No. 10-3175.

36.     Claims 1, 6, 18, 19, and 20 of the '811 patent, and all claims dependent therefrom, were invalid at the time they were first asserted against ODA in Civ. No. 12-6797.

37.     Claim 19 of the '811 patent has not been fully corrected and remains invalid.

## THIRD COUNTERCLAIM
## DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 6,894,811

38.     ODA re-states and incorporates by reference its answers to paragraphs 1 through 37, above.

### A.     Background

39.     The claims of the '811 patent were procured from the USPTO through inequitable conduct by Marvin J. Nachman and/or Infinity's patent attorney Louis Weinstein.

40.     The Applicant had a duty to disclose to the USPTO any information that is material to the patentability of any claim being prosecuted under 37 C.F.R. § 1.56 ("Rule 56").

41.     37 C.F.R. § 1.56 states:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.

42.     Rule 56 imposes a duty to disclose material information on all persons substantively involved in the preparation or prosecution of a patent application.

43.     Withheld information or misrepresentations are material to patentability if the USPTO would not have allowed a patent claim had it been aware of the undisclosed information or the misrepresentation.

44.     Under Rule 56, information is material to patentability when it is not cumulative to information already of record or being made of record in the application and (a) the information, by itself or in combination with other information, establishes a prima facie case of unpatentability of a claim or (b) the information refutes or is inconsistent with a position taken by the applicant in (i) rebutting an argument for unpatentability relied upon by the USPTO or (ii) supporting an argument for patentability.

45.     Rule 56 imposes a duty on all persons associated with the prosecution of a patent application to prosecute the application with candor, good faith, and honesty.

46.     The violation of the duties under Rule 56 constitutes inequitable conduct.

47.     Bruce Nachman filed U.S. Application No. 08/226,278 ("the '278 application") on April 11, 1994.

48.     U.S. Patent No. 5,530,558 ("the '558 patent") states that the '278 application issued as the '558 patent on June 25, 1996.

49.     Bruce Nachman is named as an inventor on the '558 patent.

50.     On information and belief, Bruce Nachman passed away on or about September 8, 1995.

51.     On information and belief, letters testamentary on the Estate of Bruce Nachman, deceased, were granted to Marvin Nachman to administer the estate.

52.     Marvin Nachman filed U.S. Application No. 08/669,056 ("the '056 application") on June 24, 1996 as a continuation-in-part of the '278 application.

53.     The '056 application issued on or around May 17, 2005 and was assigned U.S. Patent No. 6,894,811.

54.     Bruce Nachman is named as an inventor on the '811 patent.

55.     Upon information and belief, Bruce Nachman was employed by Infinity.

56.     Upon information and belief, Bruce Nachman was an officer of Infinity.

57.     Upon information and belief, Marvin Nachman is currently President and/or CEO of Infinity.

58.     Marvin Nachman prosecuted the '056 application.

59.     Marvin Nachman made representations to the USPTO during prosecution of the '056 application.

### B.     The Applicants Added New Matter to the '056 Application

60.     A continuation-in-part application must disclose or describe subject matter not disclosed or described in the parent application.

15

61.     Subject matter added in a continuation-in-part application does not obtain the benefit of the parent application's priority date.

62.     Any claim in a continuation-in-part application which encompasses any of the new subject matter added by the continuation-in-part application is only entitled to the benefit of the actual filing date of the continuation-in-part application.

63.     The specification of the '056 application discloses or describes subject matter that was not disclosed or described in the '278 application.

64.     The '056 application discloses or describes language that was not disclosed or described in the '278 application.

65.     The portion of the '056 application that ultimately issued at column 6, line 51 to column 8, line 29 of the '811 patent is not disclosed or described in the '278 application.

66.     The portion of the '056 application that ultimately issued as Figures 2f to 2i of the '811 patent is not disclosed or described in the '278 application.

67.     The portion of the '056 application that ultimately issued as Figure 2j of the '811 patent is not disclosed or described in the '278 application.

68.     The "send/receive driver communications software" limitation in the claims of the '811 patent is not disclosed or described in the '278 application.

69.     The claims of the '811 patent contains subject matter that was not disclosed or described in the '278 application.

70.     The claims of the '811 patent are not entitled to the benefit of the filing date of the '278 application.

71.     The claims of the '811 patent are not entitled to a priority date earlier than the actual filing date of the '056 continuation-in-part application—June 24, 1996.

16

C.     **The Scan By Fax Product was Offered for Sale**
       <u>**and Sold at Least As Early As July 29, 1994**</u>

72.     Upon information and belief, Infinity or a related entity marketed and/or offered for sale a product known as Scan-By-Fax.

73.     Upon information and belief, the Scan-By-Fax product was marketed and/or offered for sale as early as May 1, 1994.

74.     Infinity filed a trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE."

75.     The trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" was filed on August 3, 1994.

76.     The trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" was executed by Bruce Nachman.

77.     Upon information and belief, on August 3, 1994, Bruce Nachman was President of Infinity.

78.     The trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" identified the associated goods as "interface boards used with facsimile machines and computers."

79.     The trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" states a first use in interstate commerce on May 1, 1994.

80.     Under 15 U.S.C. § 1127, the "first use in interstate commerce" signifies that goods bearing the trademark had been "sold or transported in commerce" as of that date.

81.     Upon information and belief, Infinity sold an interface board intended for use with facsimile machines and/or computers on or before May 1, 1994.

82.     Upon information and belief, Infinity offered for sale an interface board intended for use with facsimile machines and computers on or before May 1, 1994.

83.     Upon information and belief, Infinity sold an interface board embodying the claims of the '558 patent on or before May 1, 1994.

84.     Upon information and belief, Infinity offered for sale an interface board embodying the claims of the '558 patent on or before May 1, 1994.

85.     Louis Weinstein was an attorney of record for proceedings in connection with the trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE."

86.     Lisa B. Scher was an attorney of record for the trademark application for "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE."

87.     Louis Weinstein and Lisa B. Scher were employed by the law firm of Weinstein, Scher & Kimmelman.

88.     Louis Weinstein filed the patent application that issued as the '558 patent.

89.     Louis Weinstein filed the continuation-in-part patent application that issued as the '811 patent.

90.     An October 11, 1994 article in Newsbytes described the Scan-by-Fax product.

91.     Newsbytes is a printed publication.

92.     The October 11, 1994 Newsbytes press release is a printed publication.

93.     The October 11, 1994 article stated that the Scan-By-Fax product was an:

> Infinity Computer Products Inc. (ICP) is shipping a $150 alternative to scanners that uses a fax machine as a sort of scanner equivalent. The Scan-by-Fax device links an external fax machine directly to a standard faxmodem to produce digitized images.
>                                          . . .

> According to the firm, with Scan-by-Fax, a fax machines 'calls' a fax modem directly, bypassing the phone company. This speeds the scanning process and improves image quality to the maximum the fax machine can provide. The currently shipping Scan-by-Fax is PC-compatible. ICP spokesperson Bruce Nachman told Newsbytes an Apple version will ship in the next 30 days.

94.    The "Scan-By-Fax" product referenced in the October 11, 1994 article was the same product sold under the "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" trademark.

95.    The Scan-by-Fax product was a means for using a conventional fax machine as a scanner or scanner equivalent.

96.    The Scan-by-Fax product linked a conventional fax machine to a fax modem.

97.    The Scan-by-Fax product enabled the use of a conventional fax machine as a scanner.

98.    The Scan-by-Fax product allowed a user to connect a computer to a conventional fax machine.

99.    The Scan-by-Fax allowed a user to send a fax to a conventional fax machine from a computer.

100.    The Scan-by-Fax product allowed a user to receive a fax on a computer from a conventional fax machine.

101.    With the Scan-by-Fax product, a conventional fax machine could call a fax modem directly.

102.    The Scan-by-Fax product allowed a conventional fax machine to bypass the phone company by calling a fax modem directly.

103.    The Scan-by-Fax product connected to a personal computer ("PC") via a telephone cord.

104.   The Scan-by-Fax product could be connected to a fax machine via a telephone cord.

105.   The Scan-by-Fax product could be connected to a fax modem via a telephone cord.

106.   The Scan-by-Fax product could be connected to a public telephone network via a telephone cord.

107.   The Scan-by-Fax product could be connected to a PC, a fax machine, and a public telephone network simultaneously.

108.   The Scan-by-Fax product could emulate a dial tone.

109.   Upon information and belief, the Scan-by-Fax included a user interface by which a user could choose to connect the PC to the conventional fax machine.

110.   Upon information and belief, the Scan-by-Fax included a user interface by which a user could choose to connect the conventional fax machine to the public telephone network.

111.   PR Newswire is a service that publishes press releases.

112.   Infinity described the Scan-By-Fax product in an October 7, 1994, press release on the PR Newswire.

113.   The October 7, 1994, press release on the PR Newswire describing the Scan-By-Fax product is a printed publication.

114.   Infinity's October 7, 1994 press release on the PR Newswire stated in part:

> [The Scan-by-Fax product] turns any office fax machine into a scanner, OCR (Optical Character Recognition) document reader and even a computer printer.
> . . .
> Called the SCAN-BY-FAX(TM), the new accessory provides a sharp, legible and accurate text or scanned image into any computer's memory. The unit, housed in a package about the size of a pocket dictating machine (5 x 5.5 x 1.5 inches) connects by

standard telephone cords and RJ-11 modular connectors to the fax machine and any kind of fax/modem installed in the computer. The fax machine 'calls' the fax modem and then sends the document image to the computer, where it is captured and stored by BitFax Professional software, which is bundled with the SCAN-BY-FAX. There are no telephone line connections or charges involved.

The product, U.S. Patent pending, may be used with any OCR software.

. . .

The product will find numerous time- and money-saving applications in both business and home office environments and is currently filling distribution and mass merchandise channels, and is being featured in mail-order catalogs. The technology is available immediately for OEM relabeling and licensing.

. . .

/NOTE TO EDITORS: Evaluation units are available for review./

115.    The Scan-by-Fax product could be used to turn a conventional fax machine into a scanner.

116.    The Scan-by-Fax product could be used to turn a conventional fax machine into an Optical Character Recognition document reader.

117.    The Scan-by-Fax product could be used to turn a conventional fax machine into a computer printer.

118.    The Scan-by-Fax product could be used to scan documents.

119.    The Scan-by-Fax product was housed in a package about the size of a pocket dictating machine.

120.    The Scan-by-Fax product was housed in a package measuring approximately 5 x 5.5 x 1.5 inches.

121.    The Scan-by-Fax product connects by standard telephone cords.

122.    The Scan-by-Fax product connects by RJ-11 modular connectors.

123.    The Scan-by-Fax product was sold with the BitFax Professional software.

124.    The BitFax Professional software was used in conjunction with the Scan-by-Fax product to connect to a conventional fax machine.

125.    The Scan-by-Fax product was filling distribution channels on or before October 7, 1994.

126.    The Scan-by-Fax product was filling mass merchandise channels on or before October 7, 1994.

127.    The Scan-by-Fax product was featured in mail-order catalogs on or before October 7, 1994.

128.    The Scan-by-Fax product was available for OEM relabeling on or before October 7, 1994.

129.    The Scan-by-Fax product was available for licensing as of October 7, 1994.

130.    Evaluation units of the Scan-by-Fax product were offered to editors on or before October 7, 1994.

131.    The Scan-by-Fax product was offered for sale on or before October 7, 1994.

132.    The October 7, 1994 press release referred to the pending '294 application.

133.    An August 8, 1994 article in Computer Reseller News described the Scan-by-Fax product.

134.    Computer Reseller News is a printed publication.

135.    The August 8, 1994 Computer Reseller News article stated, in part:

> Infinity Computer Products Inc., Norristown, is shipping a scan-by-fax device that converts a standard fax machine into an optical scanner. The [Scan-by-Fax] device, available to resellers, connects between the fax machine and computer, via an RJ11 connector, said inventor Bruce Nachman, president of the Norristown-based company. Scan-by-Fax also allows the use of the fax machine as a printer for the PC.

136.    The scan-by-fax device referred to in the August 8, 1994 article was the Scan-by-Fax product.

137.    The Scan-by-Fax product enabled the use of a conventional fax machine as a printer.

138.    The scan by fax device was available to resellers as of August 8, 1994.

139.    The Infinity Computer Products, Inc. referred to the in August 8, 1994 article is Infinity.

140.    The Scan-By-Fax product was described in a February 1995 article in PC World, Vol. 13 Issue 2.

141.    PC World is a printed publication.

142.    The February 1995 article regarding the Scan-By-Fax product in PC World stated:

> Consider the low-cost Scan-By-Fax, which lets a fax machine
> function as a scanner and printer. . . . I can't quibble with the
> installation or operation of Scan-By-Fax, which performed exactly
> as promised. I was able to scan documents from my fax machine,
> view them in BitFax Professional, and save them on my PC's hard
> disk. The printing feature worked well, too.

143.    The Scan-by-Fax let a conventional fax machine function as a scanner and printer.

144.    On July 29, 1996, Infinity issued a press release on PR Newswire.

145.    Infinity's July 29, 1996 press release on PR Newswire announced the award of a patent "for enabling fax machines to provide automatic full page scanning and printing for computers."

146.    Infinity's July 29, 1996 press release referred to the '558 patent.

147.    Infinity's July 29, 1996 press release on PR Newswire announced that "[i]nformation on this technology, called 'Scan-By-Fax(TM),' is available on the Internet."

148.    The July 29, 1996 press release stated, in part:

> Scan-By-Fax(TM)' Model 2000 installs between a standard fax
> machine and a PC containing a fax card. The scanning or printing
> function is activated automatically, at the press of a button. Key
> Features of "Scan-By-Fax(TM)":
> -- Enables use of your fax machine as a scanner for your PC.
> -- Enables use of your fax machine as a printer for your PC.
> -- Portable, may be used to gather field data. . . .
> -- Easy plug and play one time hook up.
> -- Bypasses telephone lines . . .
> -- Scanning or printing with multi-sheet feed is automatic and
> unattended.
> -- Internal or external "Scan-By-Fax(TM)" configurations may be
> incorporated into fax machines, or fax modems.

149.    The July 29, 1996 press release listed Marvin Nachman as a contact for Infinity.

150.    The July 29, 1996 press release stated that the "The Scan-By-Fax(TM) Model 2000, including FREE OCR software has been selling for two years, with a list price of $149.95."

151.    As of July 29, 1996 the Scan-by-Fax Model 2000 product had been selling for at least two years.

152.    The Scan-by-Fax Model 2000 product included all of the features of the Scan-by-Fax product.

153.    Upon information and belief, the Scan-by-Fax Model 2000 was the same product as the Scan-by-Fax.

154.    The Scan-by-Fax Model 2000 product was a means for using a conventional fax machine as a scanner or scanner equivalent.

155.    The Scan-by-Fax Model 2000 product linked a conventional fax machine to a fax modem.

156.    The Scan-by-Fax Model 2000 product enabled the use of a conventional fax machine as a scanner.

24

157.    The Scan-by-Fax Model 2000 product allowed a user to connect a computer to a conventional fax machine.

158.    The Scan-by-Fax allowed a user to send a fax to a conventional fax machine from a computer.

159.    The Scan-by-Fax Model 2000 product allowed a user to receive a fax on a computer from a conventional fax machine.

160.    With the Scan-by-Fax Model 2000 product, a conventional fax machine could call a fax modem directly.

161.    The Scan-by-Fax Model 2000 product allowed a conventional fax machine to bypass the phone company by calling a fax modem directly.

162.    The Scan-by-Fax Model 2000 product connected to a personal computer ("PC") via a telephone cord.

163.    The Scan-by-Fax Model 2000 product could be connected to a fax machine via a telephone cord.

164.    The Scan-by-Fax Model 2000 product could be connected to a fax modem via a telephone cord.

165.    The Scan-by-Fax Model 2000 product could be connected to a public telephone network via a telephone cord.

166.    The Scan-by-Fax Model 2000 product could be connected to a PC, a fax machine, and a public telephone network simultaneously.

167.    The Scan-by-Fax Model 2000 product could emulate a dial tone.

168.    Upon information and belief, the Scan-by-Fax Model 2000 product included a user interface by which a user could choose to connect the PC to the conventional fax machine.

169.    Upon information and belief, the Scan-by-Fax Model 2000 product included a user interface by which a user could choose to connect the conventional fax machine to the public telephone network.

170.    The Scan-by-Fax Model 2000 product could be used to turn a conventional fax machine into a scanner.

171.    The Scan-by-Fax Model 2000 product could be used to turn a conventional fax machine into an Optical Character Recognition document reader.

172.    The Scan-by-Fax Model 2000 product could be used to turn a conventional fax machine into a computer printer.

173.    The Scan-by-Fax Model 2000 product could be used to scan documents.

174.    The Scan-by-Fax Model 2000 product was housed in a package about the size of a pocket dictating machine.

175.    The Scan-by-Fax Model 2000 product was housed in a package measuring approximately 5 x 5.5 x 1.5 inches.

176.    The Scan-by-Fax Model 2000 product connects by standard telephone cords.

177.    The Scan-by-Fax Model 2000 product connects by RJ-11 modular connectors.

178.    The Scan-by-Fax Model 2000 product was sold with the BitFax Professional software.

179.    The BitFax Professional software was used in conjunction with the Scan-by-Fax Model 2000 product to connect to a conventional fax machine.

180.    The Scan-by-Fax Model 2000 product was filling distribution channels on or before October 7, 1994.

181.    The Scan-by-Fax Model 2000 product was filling mass merchandise channels on or before October 7, 1994.

182.    The Scan-by-Fax Model 2000 product was featured in mail-order catalogs on or before October 7, 1994.

183.    The Scan-by-Fax Model 2000 product was available for OEM relabeling on or before October 7, 1994.

184.    The Scan-by-Fax Model 2000 product was available for licensing as of October 7, 1994.

185.    Evaluation units of the Scan-by-Fax Model 2000 product were offered to editors on or before October 7, 1994.

186.    The Scan-by-Fax Model 2000 product was offered for sale on or before October 7, 1994.

187.    The Scan-by-Fax Model 2000 product enabled the use of a conventional fax machine as a printer.

188.    The Scan-by-Fax Model 2000 product was available to resellers as of August 8, 1994.

189.    The Scan-by-Fax Model 2000 product let a conventional fax machine function as a scanner and printer.

190.    Upon information and belief, the Scan-By-Fax product incorporated technology disclosed and claimed in the '558 patent.

191.    Upon information and belief, the Scan-By-Fax Model 2000 product incorporated technology disclosed and claimed in the '558 patent.

192.     Upon information and belief, the Scan-By-Fax product was in public use in this country on or before June 23, 1995.

193.     Upon information and belief, the Scan-By-Fax Model 2000 product was in public use in this country on or before June 23, 1995.

194.     Upon information and belief, the Scan-By-Fax product was offered for sale on or before June 23, 1995.

195.     Upon information and belief, the Scan-By-Fax Model 2000 product was offered for sale in this country on or before June 23, 1995.

196.     Upon information and belief, the Scan-By-Fax product was offered for sale on or before April 11, 1994.

197.     Upon information and belief, the Scan-By-Fax Model 2000 product was offered for sale in this country on or before April 11, 1994.

198.     Upon information and belief, the Scan-By-Fax product met the elements of at least one claim of the '558 patent.

199.     Upon information and belief, the Scan-By-Fax Model 2000 product met the elements of at least one claim of the '558 patent.

**D.     The Applicants Failed to Disclose the Scan-by-Fax
Product During Prosecution of the '056 Application**

200.     The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was not disclosed to the USPTO during prosecution of the '056 application.

201.     The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was material information with regard to the prosecution of the '056 application.

202.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product should have been specifically disclosed to the USPTO during prosecution of the '056 application.

203.    The characteristics of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were not disclosed to the USPTO during prosecution of the '056 application.

204.    The functionality of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was not disclosed to the USPTO during prosecution of the '056 application.

205.    No sales of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were disclosed to the USPTO during prosecution of the '056 application.

206.    No offers to sell the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were disclosed to the USPTO during prosecution of the '056 application.

207.    No public use of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was disclosed to the USPTO during prosecution of the '056 application.

208.    The October 11, 1994 article in Newsbytes referred to above was not disclosed to the USPTO during prosecution of the '056 application.

209.    The October 7, 1994 press release on the PR Newswire referred to above was not disclosed to the USPTO during prosecution of the '056 application.

210.    The August 8, 1994 Computer Reseller News article referred to above was not disclosed to the USPTO during prosecution of the '056 application.

211.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, was not disclosed to the USPTO during prosecution of the '056 application.

212.    The July 29, 1996 press release on PR Newswire, referred to above, was not disclosed to the USPTO during prosecution of the '056 application.

213.    The October 11, 1994 article in Newsbytes, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '056 application.

214.    The October 7, 1994 press release on the PR Newswire, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '056 application.

215.    The August 8, 1994 Computer Reseller News article, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '056 application.

216.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '056 application.

217.    The July 29, 1996 press release on PR Newswire, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '056 application.

218.    No publications describing the Scan-By-Fax product were disclosed to the USPTO during prosecution of the '056 application.

219.    Information concerning the Scan-By-Fax is relevant to at least the claim limitation of "by-passing or isolating the facsimile machine and the computer from the public network telephone line" of claim 1 of the '811 patent.

220.    Information concerning the Scan-By-Fax is relevant to at least the claim limitation of "coupling the facsimile machine to the computer" of claim 1 of the '811 patent.

221.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, Marvin Nachman was aware that the Scan-By-Fax product was in public use on or before June 23, 1995.

222.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, at least one attorney prosecuting the '056 application was aware that the Scan-By-Fax product was in public use on or before June 23, 1995.

223.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, Marvin Nachman was aware that the Scan-By-Fax product was offered for sale on or before June 23, 1995.

224.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, at least one attorney prosecuting the '056 application was aware that the Scan-By-Fax product was offered for sale on or before June 23, 1995.

225.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, Marvin Nachman was aware of printed publications describing the Scan-By-Fax product dated June 23, 1995 or earlier.

226.     Upon information and belief, between the dates of June 24, 1996 and May 17, 2005, at least one attorney prosecuting the '056 application was aware of printed publications describing the Scan-By-Fax product dated June 23, 1995 or earlier.

227.     Marvin Nachman executed a "Declaration To Accompany Application For Patent By An Administrator Or Executor" on August 16, 1996.

228.     In his declaration, Marvin Nachman acknowledged a duty to disclose information of which he was aware which was material to the examination of the '056 application.

229.     Marvin Nachman stated in his Declaration:

31

> I verily believe the said (B) BRUCE NACHMAN to be the original, first and sole inventor of the improvement in INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER described and claimed in the foregoing specification; that I do not know and do not believe that the same was ever known or used in the United States of America before the invention thereof by said (B) BRUCE NACHMAN, or patented or described in any printed publication in any country before said invention thereof, or more than one year prior to this application, or in public use or on sale in the United States of America more than one year prior to this application . . . .

230.    Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during prosecution of the '056 application.

231.    Louis Weinstein had a duty to disclose the Scan-By-Fax product to the USPTO during prosecution of the '056 application.

232.    Information regarding the Scan-By-Fax product was material to the patentability of the claims of the '811 patent.

233.    No information concerning the Scan-By-Fax product was disclosed to the USPTO during prosecution of the '811 patent.

234.    Sales and/or offers to sell the Scan-By-Fax product on or before June 23, 1995 were information material to the patentability of the claims of the '811 patent.

235.    Public use of the Scan-By-Fax product on or before June 23, 1995 was information material to the patentability of the claims of the '811 patent.

236.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during prosecution of the '056 application.

237.     Upon information and belief, Marvin Nachman and others associated with the prosecution of the '056 application were aware that information and publications relating to the Scan-By-Fax product was material to the patentability of the claims of the '056 application.

238.     Upon information and belief, Marvin Nachman and others associated with the prosecution of the '056 application withheld material information concerning the Scan-By-Fax product from the USPTO during prosecution of the '056 application with the intent to deceive the USPTO.

239.     The claims of the '811 patent would not have issued if information about the Scan-by-Fax product had been disclosed prior to the issuance of the '811 patent.

240.     Upon information and belief, the '811 patent is unenforceable due to inequitable conduct during the prosecution of the '056 application.

241.     Upon information and belief, the '811 patent is unenforceable due to inequitable conduct during the prosecution of the patent applications issuing as the '811 patent, the '423 patent, the '574 patent, and/or the '915 patent, and/or due to the pattern of inequitable conduct engaged in during prosecution of the '811 patent, '423 patent, '574 patent, and/or the '915 patent.

### E.     Marvin Nachman Failed to Disclose the Scan-by-Fax Product During Reexamination of the '811 Patent

242.     Reexamination of the '811 patent was requested on April 19, 2011.

243.     The USPTO issued an order granting reexamination of the '811 patent on May 26, 2011.

244.     An Ex Parte Reexamination Certificate for the '811 Patent was issued by the USPTO on July 31, 2012.

245.     On April 4, 2011, Samsung Electronics America, Inc. ("Samsung") filed an answer to Infinity's complaint in Civ. No. 10-3175, which included a Seventh Affirmative Defense describing offers for sale of the Scan-By-Fax product.

246.     Samsung's April 4, 2011 affirmative defense described printed publications describing the Scan-By-Fax product.

247.     Samsung's April 4, 2011 affirmative defense described Infinity's "SCAN-BY-FAX MODEL 2000 INFINITY COMPUTER PRODUCTS ONLINE" trademark application.

248.     Samsung's April 4, 2011 affirmative defense alleged that Marvin Nachman and Louis Weinstein "were aware of the Scan-By-Fax product, the Scan-By-Fax Trademark Application, and/or publications that relate to the Scan-By-Fax product" and withheld this information from the USPTO during prosecution of the '811 patent with intent to deceive.

249.     Marvin Nachman knew or should have known of the Scan-By-Fax product during reexamination of the '811 patent.

250.     Marvin Nachman knew or should have known of the Scan-By-Fax Model 2000 product during reexamination of the '811 patent.

251.     Marvin Nachman knew or should have known of publications describing the Scan-By-Fax product during reexamination of the '811 patent.

252.     Marvin Nachman knew or should have known of publications describing the Scan-By-Fax Model 2000 product during reexamination of the '811 patent.

253.     Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during reexamination of the '811 patent.

254.     Marvin Nachman had a duty to disclose information about the Scan-By-Fax Model 2000 product to the USPTO during reexamination of the '811 patent.

255.    Publications regarding the Scan-By-Fax product were not disclosed to the USPTO during reexamination of the '811 patent.

256.    No information concerning the Scan-By-Fax product was disclosed to the USPTO during reexamination of the '811 patent.

257.    Publications regarding the Scan-By-Fax Model 2000 product were not disclosed to the USPTO during reexamination of the '811 patent.

258.    No information concerning the Scan-By-Fax Model 2000 product was disclosed to the USPTO during reexamination of the '811 patent.

259.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during reexamination of the '811 patent.

260.    The Scan-By-Fax Model 2000 product and/or publications regarding the Scan-By-Fax Model 2000 product were not cumulative to the prior art before the Examiner during reexamination of the '811 patent.

261.    Upon information and belief, Marvin Nachman knew or should have known that information and publications relating to the Scan-By-Fax product were material to the patentability of the claims of the '811 patent during reexamination.

262.    Upon information and belief, Marvin Nachman knew or should have known that information and publications relating to the Scan-By-Fax Model 2000 product were material to the patentability of the claims of the  '811 patent during reexamination.

263.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during reexamination of the '811 patent.

264.    The Scan-By-Fax Model 2000 product and/or publications regarding the Scan-By-Fax Model 2000 product were not cumulative to the prior art before the Examiner during reexamination of the '811 patent.

265.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax product from the USPTO during reexamination of the '811 patent with the intent to deceive the USPTO.

266.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax Model 2000 product from the USPTO during reexamination of the '811 patent with the intent to deceive the USPTO.

267.    The claims of the '811 patent would not have issued on reexamination if information about the Scan-by-Fax product had been disclosed prior to the issuance of the '811 patent reexamination certificate.

268.    The claims of the '811 patent would not have issued on reexamination if information about the Scan-by-Fax Model 2000 product had been disclosed prior to the issuance of the '811 patent reexamination certificate.

269.    Upon information and belief, the '811 patent is unenforceable due to inequitable conduct during the reexamination of the '811 patent.

**FOURTH COUNTERCLAIM**
**DECLARATION OF NON-INFRINGEMENTOF U.S. PATENT NO. 7,489,423**

270.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 269, above.

271.    The '423 patent is entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER," states that it issued on

February 10, 2009. An *Ex Parte* Reexamination Certificate was issued for the '423 patent on

May 1, 2012.

### A. Infinity's Amendment of the Claims of the '413 Patent During Reexamination Gave Rise to Intervening Rights

272.   During ex parte reexamination of the '423 patent before the USPTO, Control No.

90/009,902, Infinity substantively amended all claims of the '423 patent. A Reexamination

Certificate for the '423 patent issued on May 1, 2012.

273.   Specifically, claims 1, 2, and 6 were amended to add a limitation that the

"send/receive driver communications software" or "send and receive driver communications

software" must be "generic."

274.   Infinity's substantive amendments to the claims of the '423 patent during

reexamination give rise to intervening rights.

275.   Under the doctrine of intervening rights, ODA is not liable for any infringement

prior to May 1, 2012, or the date that the reexamination certificate issued for the '423 patent.

276.   Infinity is precluded at least from recovering any damages in connection with

alleged infringement of the '423 patent prior to May 1, 2012.

### B. Infinity Lacks Standing to Pursue Damages Prior to March 3, 2010

277.   A document executed on March 3, 2010 and purporting to be an assignment of

patent rights to Infinity concerning the patent application that issued as the '423 patent, and any

continuations based thereon, was executed by Marvin Nachman on March 3, 2010.

278.   A document executed on March 3, 2010 and purporting to be an assignment of

patent rights to Infinity concerning the patent application that issued as the '423 patent and any

continuations based thereon, was recorded in the records of the USPTO at reel 024016, frame

0994.

279.    A "Corrective Assignment" was recorded in the records of the USPTO at reel 024023, frame 0208 on March 4, 2010.

280.    To the extent the purported assignment dated March 3, 2010 is a valid conveyance of any rights in the '423 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

281.    To the extent the purported assignment dated March 4, 2010 is a valid conveyance of any rights in the '423 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

**C.    ODA Has Not Infringed Any Valid Claim of the '423 Patent**

282.    ODA has not infringed any valid claim of the '423 patent, and ODA is not liable for infringement thereof.

283.    ODA has not willfully infringed any valid claim of the '423 patent because it has not infringed any valid claim of the '423 patent, and only if ODA is ultimately found to have infringed a valid claim of the '423 patent, ODA did not act despite an objectively high likelihood that its actions constituted infringement.

**FIFTH COUNTERCLAIM
DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,489,423**

284.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 283, above.

285.    Upon information and belief, the claims of the '423 patent are invalid for failing to comply with the provisions of the patent laws of the United States including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

**SIXTH COUNTERCLAIM**
**DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 7,489,423**

286.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 285, above.

### A.    Background

287.    The claims of the '423 patent were procured from the USPTO through inequitable conduct by Marvin Nachman and others associated with the prosecution of the '297 application.

288.    Marvin Nachman, "Co-Inventor/Executor" of the estate of Bruce Nachman, filed U.S. application No. 11/084,297 ("the '297 application") on March 19, 2005, as a division of U.S. Application No. 08/669,056. The '297 application issued as the '423 patent on or around February 10, 2009.

289.    Bruce Nachman is named as an inventor on the '423 patent.

290.    Marvin Nachman prosecuted and/or made representations to the USPTO during prosecution of the '297 application.

### B.    The '423 Patent is Not Entitled To Claim Priority to the '558 Patent

291.    The "send/receive driver communications software" limitation in the claims of the '423 patent is not disclosed in the '278 application.

292.    The "send driver communications software" limitation in the claims of the '423 patent is not disclosed in the '278 application.

293.    The "send and receive driver communications software" limitation in the claims of the '423 patent is not disclosed in the '278 application.

294.    Each of the claims of the '423 patent encompasses subject matter that was not disclosed or described in the '278 application.

295.   None of the claims of the '423 patent are entitled to the benefit of the filing date of the '278 application.

296.   None of the claims of '423 patent are entitled to a priority date earlier than the actual filing date of the '056 continuation-in-part application on June 24, 1996.

**C.   Marvin Nachman Failed to Disclose Information Pertaining to the Canon Fax L770 and RS-232 During Prosecution of the '423 Patent**

297.   Upon information and belief, in 2006, attorneys for Canon Inc. provided documents pertaining to the Canon Fax L770 and RS-232 Interface Kit to Marvin Nachman.

298.   Upon information and belief, in 2006, Marvin Nachman had in his possession documents pertaining to the Canon Fax L770 and RS-232 Interface Kit dated April 11, 1994 or earlier.

299.   Upon information and belief, in 2006, Marvin Nachman was aware of documents concerning the Canon Fax L770 and RS-232 Interface Kit dated April 11, 1994 or earlier.

300.   Upon information and belief, in 2006, Marvin Nachman had in his possession documents pertaining to the offering for sale and/or sale of Canon Fax L770 and RS-232 Interface Kit in the United States prior to April 11, 1994.

301.   Upon information and belief, representatives of Canon informed Marvin Nachman that this document showed that the Canon Fax L770 and RS-232 Interface Kit had been offered for sale in the United States prior to April 11, 1994.

302.   Upon information and belief, representatives of Canon informed Marvin Nachman that the Canon Fax L770 and RS-232 Interface Kit embodied the claims that issued as the '423 patent.

303.     Upon information and belief, in 2006, Marvin Nachman was aware that the Canon Fax L770 and RS-232 Interface Kit had been offered for sale in the United States prior to April 11, 1994.

304.     Marvin Nachman did not disclose the existence of the Canon Fax L770 and RS-232 Interface Kit to the USPTO during prosecution of the '297 application.

305.     Marvin Nachman did not disclose the characteristics and/or functionality of the Canon Fax L770 and RS-232 Interface Kit to the USPTO during prosecution of the '297 application.

306.     Marvin Nachman did not disclose the sales or offers to sell the Canon Fax L770 and RS-232 Interface Kit to the USPTO during prosecution of the '297 application.

307.     Marvin Nachman did not disclose any public use of the Canon Fax L770 and RS-232 Interface Kit to the USPTO during prosecution of the '297 application.

308.     Marvin Nachman did not disclose any publications describing the Canon Fax L770 and RS-232 Interface Kit to the USPTO during prosecution of the '297 application.

309.     Information regarding the Canon Fax L770 and RS-232 Interface Kit was material to the patentability of the claims of the '423 patent.

310.     Upon information and belief, documents concerning the Canon Fax L770 and RS-232 Interface Kit were intentionally withheld from the USPTO during prosecution of the '297 application with the intent to deceive the USPTO.

**D.     The Applicants Failed to Disclose the Scan-by-Fax Product During Prosecution of the '297 Application**

311.     The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was not disclosed to the USPTO during prosecution of the '297 application.

312.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was material information with regard to the prosecution of the '297 application.

313.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product should have been specifically disclosed to the USPTO during prosecution of the '297 application.

314.    The characteristics of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were not disclosed to the USPTO during prosecution of the '297 application.

315.    The functionality of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was not disclosed to the USPTO during prosecution of the '297 application.

316.    No sales of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were disclosed to the USPTO during prosecution of the '297 application.

317.    No offers to sell the Scan-By-Fax and/or Scan-By-Fax Model 2000 product were disclosed to the USPTO during prosecution of the '297 application.

318.    No public use of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product was disclosed to the USPTO during prosecution of the '297 application.

319.    The October 11, 1994 article in Newsbytes referred to above was not disclosed to the USPTO during prosecution of the '297 application.

320.    The October 7, 1994 press release on the PR Newswire referred to above was not disclosed to the USPTO during prosecution of the '297 application.

321.    The August 8, 1994 Computer Reseller News article referred to above was not disclosed to the USPTO during prosecution of the '297 application.

322.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, was not disclosed to the USPTO during prosecution of the '297 application.

323.    The July 29, 1996 press release on PR Newswire, referred to above, was not disclosed to the USPTO during prosecution of the '297 application.

324.    The October 11, 1994 article in Newsbytes, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '297 application.

325.    The October 7, 1994 press release on the PR Newswire, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '297 application.

326.    The August 8, 1994 Computer Reseller News article, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '297 application.

327.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '297 application.

328.    The July 29, 1996 press release on PR Newswire, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '297 application.

329.    No publications describing the Scan-By-Fax product were disclosed to the USPTO during prosecution of the '297 application.

330.    Information concerning the Scan-By-Fax is relevant to at least the claim limitation of "conditioning the facsimile machine to receive print image data from the computer," among others, of claim 1 of the '423 patent.

331.     Information concerning the Scan-By-Fax is relevant to at least the claim limitation of "conditioning the computer for initiating transmission of a document to be printed by said computer," among others, of claim 1 of the '423 patent.

332.     Upon information and belief, between the dates of March 19, 2005 and February 10, 2009, Marvin Nachman was aware that the Scan-By-Fax product was in public use on or before June 23, 1995.

333.     Upon information and belief, between the dates of March 19, 2005 and February 10, 2009, Marvin Nachman was aware that the Scan-By-Fax product was offered for sale on or before June 23, 1995.

334.     Upon information and belief, between the dates of March 19, 2005 and February 10, 2009, Marvin Nachman was aware of printed publications describing the Scan-By-Fax product dated June 23, 1995 or earlier.

335.     Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during prosecution of the '297 application.

336.     Information regarding the Scan-By-Fax product was material to the patentability of the claims of the '423 patent.

337.     No information concerning the Scan-By-Fax product was disclosed to the USPTO during prosecution of the '423 patent.

338.     Sales and/or offers to sell the Scan-By-Fax product on or before June 23, 1995 were information material to the patentability of the claims of the '423 patent.

339.     Public use of the Scan-By-Fax product on or before June 23, 1995 was information material to the patentability of the claims of the '423 patent.

340.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during prosecution of the '297 application.

341.    Upon information and belief, Marvin Nachman was aware that information and publications relating to the Scan-By-Fax product was material to the patentability of the claims of the '297 application.

342.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax product from the USPTO during prosecution of the '297 application with the intent to deceive the USPTO.

343.    The claims of the '423 patent would not have issued if Marvin Nachman had disclosed information about the Scan-by-Fax product to the USPTO prior to the issuance of the '423 patent.

344.    Upon information and belief, the '423 patent is unenforceable due to inequitable conduct by Marvin Nachman.

345.    Upon information and belief, the '423 patent is unenforceable due to inequitable conduct during the prosecution of the patent applications issuing as the '811 patent, the '423 patent, the '574 patent, and/or the '915 patent, and/or due to the pattern of inequitable conduct engaged in during prosecution of the '811 patent, '423 patent, '574 patent, and/or the '915 patent.

### E.    Marvin Nachman Failed to Disclose the Scan-by-Fax Product During Reexamination of the '423 Patent

346.    Reexamination of the '423 patent was requested on April 19, 2011.

347.    The USPTO issued an order granting reexamination of the '423 patent on May 26, 2011.

348.    An Ex Parte Reexamination Certificate for the '423 patent issued by the USPTO on May 1, 2012.

349.    Samsung's April 4, 2011 affirmative defense alleged that Marvin Nachman and Louis Weinstein "were aware of the Scan-By-Fax product, the Scan-By-Fax Trademark Application, and/or publications that relate to the Scan-By-Fax product" and withheld this information from the USPTO during prosecution of the '423 patent with intent to deceive.

350.    Marvin Nachman knew or should have known of the Scan-By-Fax product during reexamination of the '423 patent.

351.    Marvin Nachman knew or should have known of the Scan-By-Fax Model 2000 product during reexamination of the '423 patent.

352.    Marvin Nachman knew or should have known of publications describing the Scan-By-Fax product during reexamination of the '423 patent.

353.    Marvin Nachman knew or should have known of publications describing the Scan-By-Fax Model 2000 product during reexamination of the '423 patent.

354.    Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during reexamination of the '423 patent.

355.    Marvin Nachman had a duty to disclose information about the Scan-By-Fax Model 2000 product to the USPTO during reexamination of the '423 patent.

356.    Publications regarding the Scan-By-Fax product were not disclosed to the USPTO during reexamination of the '423 patent.

357.    No information concerning the Scan-By-Fax product was disclosed to the USPTO during reexamination of the '423 patent.

358.    Publications regarding the Scan-By-Fax Model 2000 product were not disclosed to the USPTO during reexamination of the '423 patent.

359.    No information concerning the Scan-By-Fax Model 2000 product was disclosed to the USPTO during reexamination of the '423 patent.

360.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during reexamination of the '423 patent.

361.    The Scan-By-Fax Model 2000 product and/or publications regarding the Scan-By-Fax Model 2000 product were not cumulative to the prior art before the Examiner during reexamination of the '423 patent.

362.    Upon information and belief, Marvin Nachman knew or should have known that information and publications relating to the Scan-By-Fax product were material to the patentability of the claims of the '423 patent during reexamination.

363.    Upon information and belief, Marvin Nachman knew or should have known that information and publications relating to the Scan-By-Fax Model 2000 product were material to the patentability of the claims of the  '423 patent during reexamination.

364.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during reexamination of the '423 patent.

365.    The Scan-By-Fax Model 2000 product and/or publications regarding the Scan-By-Fax Model 2000 product were not cumulative to the prior art before the Examiner during reexamination of the '423 patent.

366.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax product from the USPTO during reexamination of the '423 patent with the intent to deceive the USPTO.

47

367.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax Model 2000 product from the USPTO during reexamination of the '423 patent with the intent to deceive the USPTO.

368.    The claims of the '423 patent would not have issued on reexamination if information about the Scan-by-Fax product had been disclosed prior to the issuance of the '423 patent reexamination certificate.

369.    The claims of the '423 patent would not have issued on reexamination if information about the Scan-by-Fax Model 2000 product had been disclosed prior to the issuance of the '423 patent reexamination certificate.

370.    Upon information and belief, the '423 patent is unenforceable due to inequitable conduct during the reexamination of the '423 patent.

## SEVENTH COUNTERCLAIM
## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,040,574

371.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 370, above.

372.    The '574 patent is entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER" and states that it issued on October 18, 2011.

### A.    Infinity Lacks Standing to Pursue Damages Prior to March 3, 2010

373.    A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent application that issued as the '574 patent, and any continuations based thereon, was executed by Marvin Nachman on March 3, 2010.

374.    A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent application that issued as the '574 patent, and any

48

continuations based thereon, was recorded in the records of the USPTO at reel 024016, frame 0994.

375.    A "Corrective Assignment" was recorded in the records of the USPTO at reel 024023, frame 0208 on March 4, 2010.

376.    To the extent the purported assignment dated March 3, 2010 is a valid conveyance of any rights in the '574 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

377.    To the extent the purported assignment dated March 4, 2010 is a valid conveyance of any rights in the '574 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

### B.    Ka Has Not Infringed Any Valid Claim of the '574 Patent

378.    ODA has not infringed any valid claim of the '574 patent, and ODA is not liable for infringement thereof.

379.    ODA has not willfully infringed any valid claim of the '574 patent because it has not infringed any valid claim of the '574 patent, and only if ODA is ultimately found to have infringed a valid claim of the '574 patent, ODA did not act despite an objectively high likelihood that its actions constituted infringement.

### EIGHTH COUNTERCLAIM
### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 8,040,574

380.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 379, above.

381.    Upon information and belief, the claims of the '574 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 102, 103, and 112.

## NINTH COUNTERCLAIM
## <u>DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 8,040,574</u>

382.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 381, above.

### A.    <u>Background</u>

383.    The claims of the '574 patent were procured from the USPTO through inequitable conduct by Marvin Nachman.

384.    Marvin Nachman, "Co-Inventor/Executor" of the estate of Bruce Nachman, filed U.S. application No. 12/322,908 ("the '908 application") on February 9, 2009, as a continuation of U.S. application No. 11/084,297.  The '908 application issued as the '574 patent on or around Oct. 18, 2011.

385.    Bruce Nachman is named as an inventor on the '574 patent.

386.    Marvin Nachman is named as an inventor on the '574 patent.

387.    Marvin Nachman prosecuted and/or made representations to the USPTO during prosecution of the '908 application.

### B.    <u>'574 Patent is Not Entitled To Claim Priority to the '558 Patent</u>

388.    The "send receive driver communications software" limitation in the claims of the '574 patent is not disclosed in the '278 application.

389.    The claims of the '574 patent encompasses subject matter that was not disclosed or described in the '278 application.

390.    The claims of the '574 patent are not entitled to the benefit of the filing date of the '278 application.

391.    The claims of '574 patent are not entitled to a priority date earlier than the actual filing date of the '056 continuation-in-part application on June 24, 1996.

**C.      The Applicants Failed to Disclose the Scan-by-Fax
          Product During Prosecution of the '908 Application**

392.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
was not disclosed to the USPTO during prosecution of the '908 application.

393.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
was material information with regard to the prosecution of the '908 application.

394.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
should have been specifically disclosed to the USPTO during prosecution of the '908
application.

395.    The characteristics of the Scan-By-Fax and/or Scan-By-Fax Model 2000
product(s) were not disclosed to the USPTO during prosecution of the '908 application.

396.    The functionality of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
was not disclosed to the USPTO during prosecution of the '908 application.

397.    The sale(s) of Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s) were not
disclosed to the USPTO during prosecution of the '908 application.

398.    The offers to sell the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
were not disclosed to the USPTO during prosecution of the '908 application.

399.    The public use of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)
was not disclosed to the USPTO during prosecution of the '908 application.

400.    The October 11, 1994 article in Newsbytes referred to above was not disclosed to
the USPTO during prosecution of the '908 application.

401.    The October 7, 1994 press release on the PR Newswire referred to above was not
disclosed to the USPTO during prosecution of the '908 application.

402.    The August 8, 1994 Computer Reseller News article referred to above was not disclosed to the USPTO during prosecution of the '908 application.

403.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, was not disclosed to the USPTO during prosecution of the '908 application.

404.    The July 29, 1996 press release on PR Newswire, referred to above, was not disclosed to the USPTO during prosecution of the '908 application.

405.    The October 11, 1994 article in Newsbytes, referred to above, constituted material information to the prosecution of the '908 application.

406.    The October 7, 1994 press release on the PR Newswire, referred to above, constituted material information to the prosecution of the '908 application.

407.    The August 8, 1994 Computer Reseller News article, referred to above, constituted material information to the prosecution of the '908 application.

408.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, constituted material information that should have been disclosed to the USPTO during prosecution of the '908 application.

409.    The July 29, 1996 press release on PR Newswire, referred to above, constituted material information to the prosecution of the '908 application.

410.    No publications describing the Scan-By-Fax product were disclosed to the USPTO during prosecution of the '908 application.

411.    Information concerning the Scan-By-Fax is relevant to at least the claim limitations of "establishing a communication path between the facsimile machine and the computer using a bidirectional passive link" and "activating the transfer in a first mode to send

52

the digital image scan data from the facsimile machine directly to the computer," among others, of claim 1 of the '574 patent.

412.    Upon information and belief, between the dates of February 9, 2009 and October 18, 2011, Marvin Nachman was aware that the Scan-By-Fax product was in public use on or before June 23, 1995.

413.    Upon information and belief, between the dates of February 9, 2009 and October 18, 2011, Marvin Nachman was aware that the Scan-By-Fax product was offered for sale on or before June 23, 1995.

414.    Upon information and belief, between the dates of February 9, 2009 and October 18, 2011, Marvin Nachman was aware of the printed publications describing the Scan-By-Fax product dated June 23, 1995 or earlier.

415.    Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during prosecution of the '908 application.

416.    Information regarding the Scan-By-Fax product was material to the patentability of the claims of the '574 patent.

417.    No information concerning the Scan-By-Fax product was disclosed to the USPTO during prosecution of the '574 patent.

418.    Sales and/or offers to sell the Scan-By-Fax product on or before June 23, 1995 were information material to the patentability of the claims of the '574 patent.

419.    Public use of the Scan-By-Fax product on or before June 23, 1995 was information material to the patentability of the claims of the '574 patent.

420.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during prosecution of the '908 application.

421.    Upon information and belief, Marvin Nachman was aware that information and publications relating to the Scan-By-Fax product was material to the patentability of the claims of the '908 application.

422.    Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax product from the USPTO during prosecution of the '908 application with the intent to deceive the USPTO.

423.    The claims of the '574 patent would not have issued if Marvin Nachman had disclosed information about the Scan-by-Fax product to the USPTO prior to the issuance of the '574 patent.

424.    Upon information and belief, the '574 patent is unenforceable due to inequitable conduct by Marvin Nachman.

425.    Upon information and belief, the '574 patent is unenforceable due to inequitable conduct during the prosecution of the patent applications issuing as the '811 patent, the '423 patent, the '574 patent, and/or the '915 patent, and/or due to the pattern of inequitable conduct engaged in during prosecution of the '811 patent, '423 patent, '574 patent, and/or the '915 patent.

### D.    Marvin Nachman Failed to Disclose The Co-Pending Reexamination, in which Similar Claims Were Rejected

426.    On January 21, 2011, the USPTO Examiner issued an office action that included a rejection of then-pending claim 1 of the '908 application.

427.    In the January 21, 2011 office action, the Examiner rejected pending claim 1 for obviousness-type double patenting over claim 6 of the '423 patent as originally issued.

428.    In rejecting pending claim 1 of the '908 application over originally-issued claim 6 of the '423 patent, the Examiner concluded that these two claims "are not patentably distinct from each other":

> Claim 1 claims a method comprising method steps corresponding to the method steps of patent claim 6. Note that the "establishing a communication path . . ." and the "activating the transfer in a first mode . . . or activating the transfer in a second mode . . ." correspond to the ['423] patent steps (a) and (b), respectively. Although claim 1 recites "in the first mode, storing the digital scan data in a computer readable medium, . . . , and in a second mode, printing the digital image print data . . ." that is not claimed in patent claim 6, one of ordinary skill in the art would have realized the benefit of storing the digital scan data in the first mode as claimed and printing the digital image print data in the second mode. Thus, it would have been obvious to one of ordinary skill in the art at the time the invention was made to provide the patent claim 6 method with the storing feature and the printing feature as is known in the art to saving the scan data for later use and visually presenting the print data to the user.

429.    In response to the January 21, 2011 office action, on April 18, 2011, a terminal disclaimer was filed for the '908 application disclaiming the patent term extending beyond that of the '423 patent.

430.    The Examiner's obviousness-type double patenting rejection was obviated by the terminal disclaimer.

431.    Marvin Nachman did not state a disagreement with any of the Examiner's conclusions in the January 21, 2011 office action regarding double patenting.

432.    Marvin Nachman did not state a disagreement with any of the Examiner's conclusions in the January 21, 2011 office action that claim 1 of the '908 application & claim 6 of the '423 patent were not patentably distinct.

433.    As-filed claim 1 of the '908 application issued unchanged as claim 1 of the '574 patent with one exception:  claim 1 of the '908 application patent provided "and the activation being initiated . . ." and was amended to "and the activating being initiated . . ." prior to issuing as claim 1 of the '574 patent.

434.    Following the filing of the terminal disclaimer on April 18, 2011, the Examiner allowed all pending claims of the '908 application.

435.    On April 19, 2011, a third-party requester (Brother International Corporation) filed requests for ex parte reexamination of the '811 and '423 patents with the USPTO.

436.    The requests for reexamination of the '811 and '423 patents were filed before the '574 patent issued, while the '908 application was still pending before the USPTO.

437.    On April 19, 2011, a copy of the Request for Ex Parte Reexamination of the '811 patent was mailed to Marvin Nachman at 315 Saybrook Rd., Villanova, PA 19085.

438.    On information and belief, Marvin Nachman received this mailed copy.

439.    On April 19, 2011, a copy of the Request for Ex Parte Reexamination of the '423 patent was mailed to Marvin Nachman at 315 Saybrook Rd., Villanova, PA 19085.

440.    On information and belief, Marvin Nachman received this mailed copy.

441.    On May 26, 2011, a different Examiner than the Examiner of the '908 application ordered ex parte reexaminations of both the '811 and '423 patents.

442.    This examiner found that prior art references cited in the requests raised substantial new questions of patentability regarding all claims of both the '811 and '423 patents.

443.    The USPTO's orders initiating reexamination of the '811 and '423 patents issued before the '574 patent issued, and while the '908 application was still pending before the USPTO.

444.    In both the order granting *ex parte* reexamination of the '811 patent and the order granting *ex parte* reexamination of the '423 patent, the examiner found a substantial new question of patentability of all the claims in view of U.S. Patent No. 5,390,031, filed on November 21, 1991 and issued on February 14, 1995, to Kang *et al.* ("Kang") and U.S. Patent No. 4,802,204, filed on September 25, 1987 and issued on January 31, 1989, to Chang ("Chang").

445.    On June 22, 2011, the USPTO issued a Notice Of Allowance indicating that claims 1-8 of the '908 application were allowable.

446.    On September 19, 2011, the USPTO received payment of the issue fee for the '908 application.

447.    On September 21, 2011, the Examiner assigned to the reexaminations of the '811 and '423 patents issued office actions rejecting all claims of both patents as invalid in view of prior art references cited in the requests for reexamination.

448.    Among other rejections, the Examiner rejected originally-issued claim 6 of the '423 patent as anticipated under 35 U.S.C. § 102(e) by Kang.

449.    Among other rejections, the Examiner rejected originally-issued claim 6 of the '423 patent as obvious under 35 U.S.C. § 103(a) over Kang in view of U.S. Patent No. 5,218,458, filed on October 31, 1990 and issued on June 8, 1993, to Kochis *et al.* ("Kochis '458").

450.    In the reexaminations, the Examiner cited and applied prior art that had not previously been cited to the USPTO during prosecution of the '908 application.

451.    In the reexaminations, the Examiner cited and applied the Kochis reference.

452.    The Kochis reference had not previously been cited to the USPTO during prosecution of the '908 application.

453.    The Examiner rejected originally-issued claim 6 of the '423 patent in the reexamination before the '574 patent issued, while the '908 application was still pending before the USPTO.

454.    The '574 patent states that it issued on October 18, 2011.

455.    Marvin Nachman was required to be notified promptly of any and all filings at the USPTO regarding the asserted patents.

456.    Prior to the issuance of the '574 patent, Marvin Nachman was aware of the reexaminations of the '811 and '423 patents.

457.    Prior to the issuance of the '574 patent, Marvin Nachman was aware that all the claims of the '811 and '423 patents were rejected during reexamination.

458.    The Kochis reference was not disclosed during prosecution of the '908 application.

459.    The USPTO's May 26, 2011 orders granting reexamination of the '811 and '423 patents and identifying substantial new questions of patentability were not disclosed during prosecution of the '908 application.

460.    The USPTO's September 21, 2011 office actions rejecting all originally-issued claims of the '811 and '423 patents were not disclosed during prosecution of the '908 application.

461.    The fact that a different USPTO Examiner had rejected originally issued claim 6 of the '423 patent over prior art during co-pending reexamination were not disclosed during prosecution of the '908 application.

462.    The Examiner of the '908 application determined that at least claim 1 of the '574 patent was not "patentably distinct" from originally issued claim 6 of the '423 patent.

463.    The Examiner's determination that at least claim 1 of the '908 application was not "patentably distinct" from originally issued claim 6 of the '423 patent was not rebutted.

464.    During prosecution of the '908 application, Marvin Nachman submitted declarations dated February 9, 2009 and May 2, 2009.

465.    In the February 9, 2009 and May 2, 2009 declarations executed by Marvin Nachman during prosecution of the '908 application, Mr. Nachman acknowledged a duty imposed by 37 C.F.R. § 1.37, to disclose information of which he was aware and which was material to the examination of the application.

466.    Information regarding the co-pending reexamination of the '811 patent was not disclosed to the USPTO during prosecution of the '908 application.

467.    The co-pending *ex parte* reexamination of the '811 patent was information material to the patentability of the claims of the '574 patent.

468.    The prior art cited and applied during the co-pending ex parte reexamination of the '811 patent was material to the patentability of the claims of the '574 patent.

469.    The prior art cited and/or applied during the co-pending ex parte reexamination of the '811 patent was not cumulative to the prior art before the Examiner during prosecution of the '908 application.

470.    The USPTO's May 26, 2011 order granting reexamination of the '811 patent and identifying substantial new questions of patentability was material to the patentability of the claims of the '574 patent.

471.    The USPTO's September 21, 2011 office action rejecting all originally-issued claims of the '811 patent was material to the patentability of the claims of the '574 patent.

472.    Information regarding the co-pending reexamination of the '423 patent was not disclosed to the USPTO during prosecution of the '908 application.

473.    The co-pending ex parte reexamination of the '423 patent was information material to the patentability of the claims of the '574 patent.

474.    The prior art cited and applied during the co-pending ex parte reexamination of the '423 patent was material to the patentability of the claims of the '574 patent.

475.    The prior art cited and/or applied during the co-pending ex parte reexamination of the '423 patent was not cumulative to the prior art before the Examiner during prosecution of the '908 application.

476.    The USPTO's May 26, 2011 order granting reexamination of the '423 patent and identifying substantial new questions of patentability was material to the patentability of the claims of the '574 patent.

477.    The USPTO's September 21, 2011 office action rejecting all originally-issued claims of the '423 patent was material to the patentability of the claims of the '574 patent.

478.    The September 21, 2011 rejection of claim 6 of the '423 patent during reexamination was material to the patentability of the claims of the '574 patent.

479.    The USPTO's rejection of originally-issued claim 6 of the '423 patent over prior art was material to the patentability of at least claim 1 of the '574 patent given that those claims were characterized as not "patentably distinct."

480.    Marvin Nachman had a duty to disclose information regarding the co-pending reexamination of the '811 patent to the USPTO.

60

481.    Marvin Nachman had a duty to disclose information regarding the co-pending reexamination of the '423 patent to the USPTO.

482.    Marvin Nachman had a duty to disclose the USPTO's rejection of similar claims during the co-pending reexamination of the '811 patent to the USPTO.

483.    Marvin Nachman had a duty to disclose the USPTO's rejection of similar claims during the co-pending reexamination of the '423 patent to the USPTO.

484.    Upon information and belief, Marvin Nachman was aware that information regarding the co-pending reexaminations of the '811 and '423 patents was material to the patentability of the claims of the '908 application.

485.    Upon information and belief, Marvin Nachman withheld material information concerning the co-pending reexaminations of the '811 and '423 patents from the USPTO during prosecution of the '908 application with the intent to deceive the USPTO.

486.    The claims of the '574 patent would not have issued if information about the reexamination proceedings to the USPTO had been disclosed prior to the issuance of the '574 patent.

487.    Upon information and belief, the '574 patent is unenforceable due to the inequitable conduct committed during prosecution of the '574 patent.

488.    Upon information and belief, the '574 patent is unenforceable due to the pattern of inequitable conduct engaged in during prosecution of the '811 patent, '423 patent, '574 patent, and/or the '915 patent.

## TENTH COUNTERCLAIM
## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,294,915

489.    ODA re-states and incorporates by reference its answers to paragraphs 1 through 488, above.

490.    The '915 patent is entitled "INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER OR PRINTER" and states that it issued on October 23, 2012.

A.    **Infinity Lacks Standing to Pursue Damages Prior to March 3, 2010**

491.    A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent applications that issued as the '811 patent, the '423 patent, and the '574 patent, and any continuations based thereon, and any continuations based thereon, was executed by Marvin Nachman on March 3, 2010.

492.    A document executed on March 3, 2010 and purporting to be an assignment of patent rights to Infinity concerning the patent applications that issued as the '811 patent, the '423 patent, and the '574 patent, and any continuations based thereon, was recorded in the records of the USPTO at reel 024016, frame 0994.

493.    A "Corrective Assignment" was recorded in the records of the USPTO at reel 024023, frame 0208 on March 4, 2010.

494.    To the extent the purported assignment dated March 3, 2010 is a valid conveyance of any rights in the '915 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

495.    To the extent the purported assignment dated March 4, 2010 is a valid conveyance of any rights in the '915 patent, the purported assignment fails to convey the right to sue for and collect damages for past infringement.

B.    **ODA Has Not Infringed Any Valid Claim of the '915 Patent**

496.    ODA has not infringed any valid claim of the '915 patent, and ODA is not liable for infringement thereof.

497.     ODA has not willfully infringed any valid claim of the '915 patent because it has not infringed any valid claim of the '915 patent, and only if ODA is ultimately found to have infringed a valid claim of the '915 patent, ODA did not act despite an objectively high likelihood that its actions constituted infringement.

**ELEVENTH COUNTERCLAIM**
**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 8,294,915**

498.     ODA re-states and incorporates by reference its answers to paragraphs 1 through 497, above.

499.     Upon information and belief, the claims of the '915 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 102, 103, and 112.

**TWELFTH COUNTERCLAIM**
**DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 8,294,915**

500.     ODA re-states and incorporates by reference its answers to paragraphs 1 through 499, above.

501.     Upon information and belief, the claims of the '915 patent are invalid and unenforceable due to inequitable conduct during prosecution.

502.     On information and belief, Marvin Nachman was aware of information material to the patentability of the claims of the '915 patent, but withheld that information from the USPTO with intent to deceive.

503.     Marvin Nachman had a duty to not make material misrepresentations to the USPTO.

### A.    Background

504.    The claims of the '915 patent were procured from the USPTO through inequitable conduct by Marvin Nachman.

505.    Marvin Nachman, "Co-Inventor/Executor" of the estate of Bruce Nachman, filed U.S. application No. 13/317,310 ("the '310 application") on Oct. 14, 2011, as a continuation of U.S. application No. 12/322,908. The '310 application issued as the '915 patent on or around October 23, 2012.

506.    Bruce Nachman is named as an inventor on the '915 patent.

507.    Marvin Nachman is named as an inventor on the '915 patent.

508.    Marvin Nachman prosecuted and/or and or was associated with the prosecution of the '310 application.

### B.    '915 Patent is Not Entitled To Claim Priority to the '558 Patent

509.    The "providing a digital serial communications port in the facsimile machine" limitation in the claims of the '915 patent is not disclosed in the '278 application.

510.    Each of the claims of the '915 patent encompasses subject matter that was not disclosed or described in the '278 application.

511.    None of the claims of the '915 patent are entitled to the benefit of the filing date of the '278 application.

512.    None of the claims of '915 patent are entitled to a priority date earlier than the actual filing date of the '056 continuation-in-part application on June 24, 1996.

### C.    Marvin Nachman Failed to Disclose the Scan-by-Fax Product During Prosecution of the '310 Application

513.    Marvin Nachman did not disclose the existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s) to the USPTO during prosecution of the '310 application.

514.    The existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s) was material information with regard to the prosecution of the '310 application.

515.    Marvin Nachman had a duty to disclose the existence of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)  to the USPTO during prosecution of the '310 application.

516.    Marvin Nachman did not disclose the characteristics of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)  to the USPTO during prosecution of the '310 application.

517.    Marvin Nachman did not disclose the functionality of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)  to the USPTO during prosecution of the '310 application.

518.    Marvin Nachman did not disclose any sales of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)  to the USPTO during prosecution of the '310 application.

519.    Marvin Nachman did not disclose any offers to sell the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s) to the USPTO during prosecution of the '310 application.

520.    Marvin Nachman did not disclose any public use of the Scan-By-Fax and/or Scan-By-Fax Model 2000 product(s)  to the USPTO during prosecution of the '310 application.

521.    Marvin Nachman did not disclose the October 11, 1994 article in Newsbytes referred to above to the USPTO during prosecution of the '310 application.

522.    Marvin Nachman did not disclose the October 11, 1994 article in Newsbytes referred to above to the USPTO during prosecution of the '310 application.

523.    Marvin Nachman did not disclose the October 7, 1994 press release on the PR Newswire referred to above to the USPTO during prosecution of the '310 application.

524.    Marvin Nachman did not disclose the August 8, 1994 Computer Reseller News article referred to above to the USPTO during prosecution of the '310 application.

525.    Marvin Nachman did not disclose the February 1995 article regarding the Scan-By-Fax product in PC World referred to above to the USPTO during prosecution of the '310 application.

526.    Marvin Nachman did not disclose the July 29, 1996 press release on PR Newswire referred to above to the USPTO during prosecution of the '310 application.

527.    The October 11, 1994 article in Newsbytes, referred to above, constituted material information that Marvin Nachman had a duty to disclose to the USPTO during prosecution of the '310 application.

528.    The October 7, 1994 press release on the PR Newswire, referred to above, constituted material information that Marvin Nachman had a duty to disclose to the USPTO during prosecution of the '310 application.

529.    The August 8, 1994 Computer Reseller News article, referred to above, constituted material information that Marvin Nachman had a duty to disclose to the USPTO during prosecution of the '310 application.

530.    The February 1995 article regarding the Scan-By-Fax product in PC World, referred to above, constituted material information that Marvin Nachman had a duty to disclose to the USPTO during prosecution of the '310 application.

531.    The July 29, 1996 press release on PR Newswire, referred to above, constituted material information that Marvin Nachman had a duty to disclose to the USPTO during prosecution of the '310 application.

532.    Marvin Nachman did not disclose any publications describing the Scan-By-Fax product to the USPTO during prosecution of the '310 application.

533.    Information concerning the Scan-By-Fax is relevant to at least the claim limitation of "scanning content from media provided within the facsimile machine to create digital image data representative of the content," of claim 9 of the '915 patent.

534.    Upon information and belief, between October 18, 2011 and October 23, 2012, Marvin Nachman was aware that the Scan-By-Fax product was in public use on or before June 23, 1995.

535.    Upon information and belief, between October 18, 2011 and October 23, 2012, Marvin Nachman was aware that the Scan-By-Fax product was offered for sale on or before June 23, 1995.

536.    Upon information and belief, between the dates of October 18, 2011 and October 23, 2012, Marvin Nachman was aware of the printed publications describing the Scan-By-Fax product dated June 23, 1995 or earlier.

537.    Marvin Nachman had a duty to disclose information about the Scan-By-Fax product to the USPTO during prosecution of the '310 application.

538.    Information regarding the Scan-By-Fax product was material to the patentability of the claims of the '915 patent.

539.    Sales and/or offers to sell the Scan-By-Fax product on or before June 23, 1995 were information material to the patentability of the claims of the '915 patent.

540.    Public use of the Scan-By-Fax product on or before June 23, 1995 was information material to the patentability of the claims of the '915 patent.

541.    The Scan-By-Fax product and/or publications regarding the Scan-By-Fax product were not cumulative to the prior art before the Examiner during prosecution of the '310 application.

542.     Upon information and belief, Marvin Nachman was aware that information relating to the Scan-By-Fax product was material to the patentability of the claims of the '310 application.

543.     Upon information and belief, Marvin Nachman withheld material information concerning the Scan-By-Fax product from the USPTO during prosecution of the '310 application with the intent to deceive the USPTO.

544.     The claims of the '915 patent would not have issued if Marvin Nachman had disclosed information about the Scan-by-Fax product to the USPTO prior to the issuance of the '915 patent.

545.     Upon information and belief, the '915 patent is unenforceable due to inequitable conduct by Marvin Nachman during the prosecution of the '310 application.

546.     Upon information and belief, the '915 patent is unenforceable due to inequitable conduct during the prosecution of the patent applications issuing as the '811 patent, the '423 patent, the '574 patent, and/or the '915 patent, and/or due to the pattern of inequitable conduct engaged in during prosecution of the '811 patent, '423 patent, '574 patent, and/or the '915 patent.

## PRAYER FOR RELIEF

WHEREFORE, ODA respectfully request that the Court enter judgment:

a.     Declaring that ODA does not infringe any of the Asserted Patents;

b.     Declaring that the claims of the Asserted Patents are invalid;

c.     Declaring that the claims of the Asserted Patents are unenforceable due to inequitable conduct;

       d.      Declaring that Defendant has not willfully infringed and is not willfully infringing any valid and enforceable claim of any of the Asserted Patents;

       e.      Ordering that Infinity's claims are dismissed with prejudice;

       f.      Ordering that Infinity must pay ODA's attorney fees and the costs and expenses of this action;

       g.      Declaring that this case is exceptional and awarding attorney fees and expenses of this litigation to ODA as set forth in the Patent Laws; and

       h.      Declaring that such other and further relief be granted as the Court may deem just and proper.

*s/ John W. Shaw*
John W. Shaw (No. 75738)
Stephanie O'Byrne
Andrew E. Russell
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
sobyrne@shawkeller.com
arussell@shawkeller.com
*Attorneys for Oki Data Americas, Inc.*

OF COUNSEL:
Marc R. Labgold, Ph.D.
NAGASHIMA & HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan

Dated: April 3, 2013