# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INFINITY COMPUTER PRODUCTS, INC., | |
| Plaintiff, | Civil Action No. 2:12-cv-06797-LDD |
| v. | Judge LEGROME D. DAVIS |
| OKI DATA AMERICAS, INC., | |
| Defendant. | |

### PLAINTIFF'S STATUS REPORT
### CONCERNING REEXAMINATIONS
### OF U.S. PATENT NOS. 6,894,811, 7,489,423, 8,294,915, AND 8,040,574

Comes now, Plaintiff Infinity Computer Products, Inc. ("Plaintiff" or "Infinity") to provide this Status Report concerning the reexaminations of U.S. Patent Nos. 6,894,811 (the "'811 Patent"), 7,489,423 (the "'423 Patent"), 8,294,915 (the "'915 Patent"), and 8,040,574 (the "'574 Patent") (collectively the "Patents-in-Suit"), as required by this Court's May 22, 2013 Order. (*see* Dkt. No. 35)

## I. BACKGROUND

The Complaint in this matter, filed in this Court on December 5, 2012 (*see* Dkt. No. 1), alleges infringement of the Patents-in-Suit by Defendant Oki Data

Americas, Inc. (Civil Action No. 2:12-cv-06797-LDD).  On or about March 22, 2013, Ricoh Americas Corporation, defendant in a parallel action brought by Plaintiff (Civil Action No. 2:12-cv-06807-LDD) filed with the United States Patent and Trademark Office ("USPTO") *ex parte* reexamination requests for each of the Patents-in-Suit, pursuant to 35 U.S.C. § 302, as follows:

| Application No. | Re-Examination of: |
|---|---|
| 90/012,815 | 11/084,297 ('423 Patent) |
| 90/012,816 | 08/669,056 ('811 Patent) |
| 90/012,817 | 12/322,908 ('574 Patent) |
| 90/012,818 | 13/317,310 ('915 Patent) |

The USPTO subsequently granted all reexamination requests.

As a result of the reexamination requests, Defendant filed its Motion to Stay. (*see* Dkt. No. 32) This Court granted Defendant's Motion to Stay on May 22, 2013 and ordered the parties to file periodic status reports every 90 days to keep the Court apprised of the status of the reexaminations.  (*see* Dkt. No.35) On August 20, 2013, Plaintiff filed its first status report with this court (*see* Dkt. No. 38) On October 29, 2013, this court ordered the parties to update the Court on the status of the reexaminations of U.S. Patent Nos. 6,894,811, 7,489,423, 8,294,915, and 8,040,574 (1) every ninety (90) days, and (2) within 7 days of the USPTO's issuance of a final determination regarding any of these patents. (*see* Dkt. No. 39)

## II. ACTIVITY SINCE FIRST STATUS REPORT

A. The PTO Has Issued Office Actions in the Reexamination of the Subject Patents.

In compliance with the second part of this court's October 29, 2013 order (*see* Dkt. No. 39), Plaintiff reports that on or after October 29, 2013, the PTO issued Office Actions in Ex Parte Reexamination (the "Office Actions") setting forth the examiners' final determinations in the reexaminations of the Patents-in-Suit. Plaintiff received notice of these Office Actions by mail on or after November 2, 2013. In each Office Action, the PTO rejected all claims of the Patents-in-Suit. The Office Actions are attached hereto as Exhibits A, B, C, and D.

B. Plaintiff Will Contest the Office Actions.

The cover sheets to the Office Actions provides Plaintiff with the longer of one month or thirty (30) days to respond to the Office Actions. Plaintiff intends to respond within such time, and if necessary, preserve its rights to appeal the PTO's rejection, set forth in the Office Actions, of the contested claims. Plaintiff undertakes to advise this court upon filing of its responses and further, to notify this court, pursuant to its most recent order, of any further determination of the status of the reexaminations of the Patents-in-Suit. Plaintiff does not intend, by this filing, to suggest that the recent office action of the PTO is necessarily a "final determination" as identified in this court's most recent order, but nonetheless is

filing this status update in compliance with the spirit of the order, which is to keep this court informed of actions and events that bear on the decision to continue the existing stay.

Respectfully submitted;

Date: November 5, 2013

/s/ Robert L. Sachs, Jr.
Robert L. Sachs, Jr., Esq.
E-mail: RSachs@shragerlaw.com
**SHRAGER, SPIVEY & SACHS**
One Commerce Square
2005 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (215) 568-7771
Fax: (215) 568-7495

*Attorney for Infinity Computer Products, Inc.*

PLAINTIFF'S FIRST STATUS REPORT CONCERNING REEXAMINATIONS OF U.S. PATENT
NOS. 6,894,811, 7,489,423, 8,294,915, AND 8,040,574

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing using

the CM/ECF system.


Date: November 5, 2013

/s/ Robert L. Sachs, Jr.
Robert L. Sachs, Jr., Esq.



U NITED S TATES P ATENT AND T RADEMARK O FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,818 | 03/22/2013 | 8294915 | 105413-0007-504 | 5742 |

7590        10/31/2013

MARVIN J. NACHMAN
315 SAYBROOK ROAD
VILLANOVA, PA 19085

| EXAMINER |
|---|
| SAGER, MARK ALAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/31/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ROPES & GRAY LLP

IPRM - FLOOR 43

PRUDENTIAL TOWER

800 BOYLSTON STREET

BOSTON, MA  02199-3600

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,818*.

PATENT NO. *8294915*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Application/Control Number: 90/012,818                                       Page 2
Art Unit: 3992

The present proceeding is being examined under the pre-AIA first to invent provisions.

## *Reexamination*

1.     Reexamination continues in response to Patent Owner response that cancels claims 5 and 13 and amends claims 1, 6, 9 and 14 of United States Patent Number 8294915 (hereinafter Nachman '915 or '915) and provides opinion testimony in a declaration under 1.132.

## Extension of Time

2.     Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

## Identification of References

3.     The following references from page 7 of Request are relied on herein:

| U.S. Patent No. 5,390,031 to Kang et al, (hereinafter "Kang") | Exhibit E |
| U.S. Patent No. 5,218,458 to Kochis et al, (hereinafter "Kochis") | Exhibit F |
| U.S. Patent No. 4,802,204458 to Chang, (hereinafter "Chang") | Exhibit G |
| Japanese Patent Application No. S58-95050, published as Japanese Unexamined Patent Application Publication S59-221068 | Exhibit H |

4.     The following new references are relied on herein solely in reply to added "generic":

| U.S. Patent No. 5,175,762 | Kochis et al (hereinafter "Kochis '762") |
| U.S. Patent No. 5,598,533 | Yokota et al. (hereinafter "Yokota") |

Application/Control Number: 90/012,818                                    Page 3

Art Unit: 3992

### *Response to Amendment*

5.      The declaration by Mr. Mark Myslinski under 37 CFR 1.132 filed July 26, 2013 is

insufficient to overcome the rejection of claims 1-4, 6-12 and 14-15 based upon anticipation

and/or obviousness of Kang alone or combined with Kochis '458 (and Chang or Kurosaki as

applicable) as set forth in the last Office action because:  At the outset, Mr. Mark Myslinski

asserts that he is an artisan in the field of invention in this reexam based on the

knowledge/experience submitted in paragraph 1 that avers in part having a BSEE and having

completed nine courses towards a Masters in Digital Communications with experience in the

broadcast and television industry including video-on-demand.  However, while he has

experience in the telecommunications and telephone industries, there is no expertise shown

relative to the particularly claimed PC with scan, print and fax functions of the Nachman patent

under reexam.  Also, Mr. Mark Myslinski does not state whether he has been compensated for

his testimony or that, if any compensation was received, that it is in no way conditioned on the

outcome of this reexamination.  The declaration also does not state having no other affiliation

with Patent Owner/assignee so as to establish whether this expert has any other indirect/direct

personal interest in the outcome of this proceeding.  For the record, in order to assess the

probative value of an opinion, the examiner must consider the nature of the matter sought to be

established, the strength of any opposing evidence, *the interest of the expert in the outcome of the*

*case*, and the presence or absence of factual support for the expert's opinion. (emphasis added).

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 227 USPQ 657 (Fed. Cir.

1985), *cert. denied*, 475 U.S. 1017 (1986). See also *In re Oelrich*, 579 F.2d 86, 198 USPQ 210

(CCPA 1978) (factually based expert opinions on the level of ordinary skill in the art were

Application/Control Number: 90/012,818                                                        Page 4
Art Unit: 3992

sufficient to rebut the *prima facie* case of obviousness); *Ex parte Gray*, 10 USPQ2d 1922 (Bd.

Pat. App. & Inter. 1989) (statement in publication dismissing the "preliminary identification of a

human b-NGF-like molecule" in the prior art, even if considered to be an expert opinion, was

inadequate to overcome the rejection based on that prior art because there was no factual

evidence supporting the statement); *In re Carroll*, 601 F.2d 1184, 202 USPQ 571 (CCPA 1979)

(expert opinion on what the prior art taught, supported by documentary evidence and formulated

prior to the making of the claimed invention, received considerable deference); *In re Beattie*,

974 F.2d 1309, 24 USPQ2d 1040 (Fed. Cir. 1992) (declarations of seven persons skilled in the

art offering opinion evidence praising the merits of the claimed invention were found to have

little value because of a lack of factual support); *Ex parte George*, 21 USPQ2d 1058 (Bd. Pat.

App. & Inter. 1991) (conclusory statements that results were "unexpected," unsupported by

objective factual evidence, were considered but were not found to be of substantial evidentiary

value).  However, the lack of clarity noted above is minor.  Therefore, in this proceeding, the

opinion testimony in support of Patent Owner has been afforded some weight but less than

otherwise if the issue of compensation was clearer; however, this is relatively minor issue.

   **Although** factual evidence is preferable to opinion testimony, such testimony is entitled

to consideration and some weight so long as the opinion is not on the ultimate legal conclusion at

issue. While an opinion as to a legal conclusion is not entitled to any weight, the underlying basis

for the opinion may be persuasive. *In re Chilowsky*, 306 F.2d 908, 134 USPQ 515 (CCPA 1962)

(expert opinion that an application meets the requirements of 35 U.S.C. 112 is not entitled to any

weight; however, facts supporting a basis for deciding that the specification complies with 35

U.S.C. 112 are entitled to some weight); *In re Lindell*, 385 F.2d 453, 155 USPQ 521 (CCPA

Application/Control Number: 90/012,818                                    Page 5
Art Unit: 3992

1967) (Although an affiant's or declarant's opinion on the ultimate legal issue is not evidence in the case, "some weight ought to be given to a persuasively supported statement of one skilled in the art on what was not obvious to him." 385 F.2d at 456, 155 USPQ at 524 (emphasis in original)). With consideration of the above cases, the following review of the opinion testimony is provided.

During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims *(In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984)).

Also, the weight attached to evidence of secondary considerations by the examiner will depend upon its relevance to the issue of obviousness and the amount and nature of the evidence. Note the great reliance apparently placed on this type of evidence by the Supreme Court in upholding the patent in *United States v. Adams*, 383 U.S. 39,148 USPQ 479 (1966).

Further, to be given <u>substantial weight</u> in the determination of obviousness or nonobviousness, evidence of secondary considerations *<u>must be relevant to the subject matter as claimed</u>*, and therefore the examiner must determine whether there is a nexus between the merits of the claimed invention and the evidence of secondary considerations. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42, 227 USPQ 657, 673-674 n. 42 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). The term "nexus" designates a factually and legally sufficient connection between the objective evidence of nonobviousness and the claimed invention so that the evidence is of probative value in the determination of nonobviousness. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir.), *cert. denied*, 488 U.S. 956 (1988).

The following guidance and rulings are relevant in considering the opinion testimony.

During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims *(In re Yamamoto,* 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984)). The statutory presumption of validity, **35 U.S.C. 282,** has no application in reexamination *(In re Etter,* 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985)). See **MPEP 2258, I, G.**

A mere reference to another application, patent, or publication is not an incorporation of anything therein into the application containing such reference for the purpose of the disclosure required by **35 U.S.C. 112,** first paragraph. *In re de Seversky,* 474 F.2d 671, 177 USPQ 144 (CCPA 1973). 37 CFR 1.57(b)(1) limits a proper incorporation by reference (except as provided in 37 CFR 1.57(a)) to instances only where the perfecting words "incorporated by reference" or the root of the words "incorporate" (e.g., incorporating, incorporated) and "reference" (e.g., referencing) appear. The requirement for specific root words will bring greater clarity to the record and provide a bright line test as to where something is being referred to is an incorporation by reference. The Office intends to treat references to documents that do not meet this "bright line" test as noncompliant incorporations by reference and may require correction pursuant to 37 CFR 1.57(g). If a reference to a document does not clearly indicate an intended incorporation by reference, examination will proceed as if no incorporation by reference statement has been made and the Office will not expend resources trying to determine if an incorporation by reference was intended. See MPEP 608.01(p).

Under a broadest reasonable interpretation, words of the claim must be given their plain meaning, unless such meaning is inconsistent with the specification. The plain meaning of a term means the ordinary and customary meaning given to the term by those of ordinary skill in the art at the time of the invention. The ordinary and customary meaning of a term may be evidenced by a variety of sources, including the words of the claims themselves, the specification, drawings, and prior art. However, the best source for determining the meaning of a claim term is the specification - the greatest clarity is obtained when the specification serves as a glossary for the claim terms. The presumption that a term is given its ordinary and customary meaning may be rebutted by the applicant by clearly setting forth a different definition of the term in the specification. *In re Morris,* 127 F.3d 1048, 1054 (Fed. Cir. 1997) (the USPTO looks to the ordinary use of the claim terms taking into account definitions or other "enlightenment" contained in the written description); *But c.f. In re Am. Acad. of Sci. Tech. Ctr.,* 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("We have cautioned against reading limitations into a claim from the preferred embodiment described in the specification, even if it is the only embodiment described, absent clear disclaimer in the specification."). When the specification sets a clear path to the claim language, the scope of the claims is more easily determined and the public notice function of the claims is best served. See MPEP 2111.01, I.

Application/Control Number: 90/012,818                                                Page 7
Art Unit: 3992

Although claims of <u>issued</u> patents are interpreted in light of the specification, prosecution history, prior art and other claims, this is not the mode of claim interpretation to be applied during examination. During examination, the claims must be interpreted as broadly as their terms reasonably allow. *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1369, 70 USPQ2d 1827, 1834 (Fed. Cir. 2004) (The USPTO uses a different standard for construing claims than that used by district courts; during examination the USPTO must give claims their broadest reasonable interpretation in light of the specification.). This means that the words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification. *In re Zletz*, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (discussed below); *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372, 69 USPQ2d 1857 (Fed. Cir. 2004) (Ordinary, simple English words whose meaning is clear and unquestionable, absent any indication that their use in a particular context changes their meaning, are construed to mean exactly what they say. Thus, "heating the resulting batter-coated dough to a temperature in the range of about 400°F to 850°F" required heating the dough, rather than the air inside an oven, to the specified temperature.).  See MPEP 2111.01. I.

"Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004)(discussing recent cases wherein the court expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment);*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369, 67 USPQ2d 1947, 1950 (Fed. Cir. 2003) ("Interpretation of descriptive statements in a patent's written description is a difficult task, as an inherent tension exists as to whether a statement is a clear lexicographic definition or a description of a preferred embodiment. The problem is to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims."); *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371, 65 USPQ2d 1865, 1869-70 (Fed. Cir. 2003) (Although the specification discussed only a single embodiment, the court held that it was improper to read a specific order of steps into method claims where, as a matter of logic or grammar, the language of the method claims did not impose a specific order on the performance of the method steps, and the specification did not directly or implicitly require a particular order). See MPEP 2111.01. II.

An applicant is entitled to be his or her own lexicographer and may rebut the presumption that claim terms are to be given their ordinary and customary meaning by clearly setting forth a definition of the term that is different from its ordinary and customary meaning(s). See *In re Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed. Cir. 1994) (inventor may define specific terms used to describe invention, but must do so "with

reasonable clarity, deliberateness, and precision" and, if done, must "'set out his uncommon definition in some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of the change" in meaning) (quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88, 21 USPQ2d 1383, 1386 (Fed. Cir. 1992)). Where an explicit definition is provided by the applicant for a term, that definition will control interpretation of the term as it is used in the claim. *Toro Co. v. White Consolidated Industries Inc.*, 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir. 1999) (meaning of words used in a claim is not construed in a "lexicographic vacuum, but in the context of the specification and drawings"). Any special meaning assigned to a term "must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention." *Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432 (Fed. Cir. 1998). See also *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357, 52 USPQ2d 1029, 1033 (Fed. Cir. 1999) and **MPEP § 2173.05(a).** The specification should also be relied on for more than just explicit lexicography or clear disavowal of claim scope to determine the meaning of a claim term when applicant acts as his or her own lexicographer; the meaning of a particular claim term may be defined by implication, that is, according to the usage of the term in the context in the specification. See *Phillips v. AWH Corp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005) (*en banc*); and *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1577 (Fed. Cir. 1996). Compare *Merck & Co., Inc., v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370, 73 USPQ2d 1641, 1646 (Fed. Cir. 2005), where the court held that patentee failed to redefine the ordinary meaning of "about" to mean "exactly" in clear enough terms to justify the counterintuitive definition of "about." ("When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description."). See MPEP 2111.01. IV.

Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993) (Claims to a superconducting magnet which generates a "uniform magnetic field" were not limited to the degree of magnetic field uniformity required for Nuclear Magnetic Resonance (NMR) imaging. Although the specification disclosed that the claimed magnet may be used in an NMR apparatus, the claims were not so limited.); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571-72, 7 USPQ2d 1057, 1064-1065 (Fed. Cir.), *cert. denied*, 488 U.S. 892 (1988) (Various limitations on which appellant relied were not stated in the claims; the specification did not provide evidence indicating these limitations must be read into the claims to give meaning to the disputed terms.); *Ex parte McCullough*, 7 USPQ2d 1889, 1891 (Bd. Pat. App. & Inter. 1987) (Claimed electrode was rejected as obvious despite assertions that electrode functions differently than would be expected when used in nonaqueous battery since "although the demonstrated results may be germane to the patentability of a battery containing appellant's electrode, they are not germane to the patentability of the invention claimed on appeal."). See MPEP 2145. VI.

Application/Control Number: 90/012,818                                    Page 9
Art Unit: 3992

      In consideration of the above, there is no factual support in the Nachman '915 patent that

Patentee acted as their own lexicographer by clearly setting forth a definition of the term

'generic' that is different from its ordinary and customary meaning(s) as similarly noted during

the June 12, 2013 and July 22, 2013 interviews (see respective Examiner interview summaries

mailed June 21, 2013 and Aug 6, 2013).  There is also no indication that the Rockwell chip series

specifications mentioned in column 8 of Nachman '915 patent is incorporated by reference.  See

MPEP 608.01(p) cited above.  The opinion testimony by Mr. Mark Myslinski avers in part that

'generic' send/receive driver communications software package regards "'commercially'

available" (paragraph 12), "'off-the-shelf' packages that were generally, commercially available"

(paragraphs 12, 14-15 and 17), are 'interchangeable and interoperable" (paragraphs 13 and 15-

16) and "not customized or not tailored to a specific application or process" (paragraphs 9, 13, 15

and 17).  It is noteworthy that the Nachman '915 patent does not use the terms "commercial",

"off-the-shelf", "interchangeable and interoperable" and "not customized or not tailored to a

specific application or process" in any form including for the discussions of figure 2g and the

Rockwell chip series.  There was no reference to these terms in the prosecution history to the

application becoming the granted Nachman '915 patent.  In review of the Nachman '915 patent,

the discussion of the Rockwell chip series is only a data point or one example due in part to the

language at 8:10 of 8294915 "*such as* the Rockwell chip series" (emphasis added).  Thus, the

scope of 'generic' is broader than the embodiment in '915 relied on by Patentee and Mr.

Myslinski because this embodiment is merely a non-limiting example in the '915 patent.   It is

emphasized from above that it is improper to rely on a specific embodiment in the '915 Patent to

determine the broadest reasonable interpretation of "generic" where Patent Owner failed to act as

Application/Control Number: 90/012,818                                    Page 10
Art Unit: 3992

their own lexicographer. *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69

USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d

898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004). In essence, the opinion testimony relied on

by Patent Owner does not show that the Rockwell chip series that are relied on to establish how

one of ordinary skill in the art would interpret the claimed invention *must be the only* hardware

used to enable the invention. The Patent Owner has not asserted or provided evidence that the

Rockwell chip series is the only hardware to be used. Therefore, the amended invention fails to

preclude other hardware, firmware and/or software to perform the steps/functions claimed. In

fact, the language of '915 disclosure at 8:10 and Patentee remark, midway on page 6 of their July

24, 2013 reply, states the Rockwell chip series is a non-limiting example where the Patent Owner

states in-part "The 915 patent teaches that the Rockwell chip series is *an example* of hardware

that was capable of communicating serial digital data" (emphasis added). Further, similarly, the

discussion in '915 at 5:30-35 of various software packages and the reference by Mr. Myslinski in

paragraphs 10 (page 5) -16 for use of commercial software packages recited in the Rockwell chip

series references are also non-limiting examples such that at best the '915 disclosure indicates

software products may be used. Thus Declarant and Patent Owner improperly import these

limitations so as to re-draft the '915 specification to add 'commercial' and/or commercial-off-the-

shelf into '915 @ 8:21-22 for 'any available send/receive communications software package'.

The plain language in '915 and the reliance on the Rockwell chip series provides no indication

for "any available send/receive communications software package" to be limited to *only*

'commercial' products so as to be read as '*only* any available *commercial* send/receive

communications software package' (emphasis added), or similar phrasing. This is not stating

Application/Control Number: 90/012,818                                    Page 11

Art Unit: 3992

'915 does not permit use of commercial software products or the Rockwell chip series but

instead it is noting that the '915 discloses their use only as non-limiting examples.  Words in

patent claims are given their ordinary meaning in the usage of the field of the invention, unless

the text of the patent makes clear that a word was used with a special meaning.  *Toro Co. v.*

*White Consol. Indus., Inc.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999).  In

the '915 patent, the Specification does <u>not</u> make clear that the phrase "generic" send/receive

driver communications software <u>only</u> carries a special meaning as set forth by the Patentee and

Declarant for reasons noted above.

      Thus, the totality of the opinion testimony by Mr. Myslinski for his averment of

definitions of 'generic' and "any available send/receive communications software package" as

rebuttal evidence fails to outweigh the anticipation by Kang and/or the obviousness of Kang with

other applied references.  The claim language is broader than the embodiment relied on from the

Nachman patent that at best discloses a non-limiting form of the invention where the broadest

reasonable interpretation of the claimed invention consistent with its disclosure without

improperly importing features into the claims overlaps the applied art.

### *Response to Arguments*

6.      Patent Owner's arguments with respect to claims 1-4, 6-12 and 14-15 have been

considered but are moot because the arguments do not apply to any of the new Kochis '762 and

Yokota references being used in the new rejections solely in response to newly added "generic".

7.      Patent Owner's arguments filed July 24, 2013 have been fully considered but they are not

persuasive.  Based in part on testimony by Mr. Myslinski, Patent Owner asserts on pages 5-8 that

the term "generic" as it applies to 'send/receive driver communications software package' would

Application/Control Number: 90/012,818                                    Page 12
Art Unit: 3992

be interpreted by an artisan to regard "software than is not customized and not tailored to a

specific application or process and in this sense a characteristic of commercial off-the-shelf

communications software". The Examiner disagrees for reasons stated above in review of the

testimony (supra) where Patent Owner failed to act as their own lexicographer to set out their

uncommon definition(s) with reasonable clarity, deliberateness and precision within in the '915

patent. See *In re Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed. Cir. 1994)

(inventor may define specific terms used to describe invention, but must do so "with reasonable

clarity, deliberateness, and precision" and, if done, must "'set out his uncommon definition in

some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of

the change" in meaning) (quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88,

21 USPQ2d 1383, 1386 (Fed. Cir. 1992)). In considering the broadest reasonable interpretation

of claimed invention, the facts in this proceeding with regards to use of term "generic" in figure

2g, mentioning use of Rockwell chip series @ 8:8-10 and 'any available send/receive

communications software" @ 8:21-22 are in each instance only non-limiting examples (supra).

See MPEP 2111.01 I-II and IV cited above. Contrary to Patent Owner, in this case, the broadest

reasonable interpretation of the term 'generic' consistent with '915 without improperly importing

limitations into the claims regards its plain meaning of 'pertaining to or describing an entire

group or class: GENERAL' as defined in Webster's II New Riverside University Dictionary,

copyright 1984, 1988, 1994 by Houghton Mifflin Company, or similar. Thus, the broadest

reasonable interpretation of 'generic' of '915 is not limited to require commercial off the shelf

software that is not customized or not tailored to a specific application or process. Also, Patent

Owner states in part, midway on page 6 of their July 24, 2013 reply, "The 574 patent teaches that

Application/Control Number: 90/012,818                                    Page 13
Art Unit: 3992

the Rockwell chip series is *an example* of hardware that was capable of communicating serial digital data" (emphasis added). This indicates use of Rockwell chip series hardware relied on as basis of showing that Patent Owner acted as its own lexicographer merely is an example of hardware rather than an essential element that must be used. Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993). It is emphasized from above that it is improper to rely on a specific embodiment in the '915 Patent to determine the broadest reasonable interpretation of "generic" especially where Patent Owner failed to act as their own lexicographer. *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004). Although the alleged characteristics of 'commercial-off-the-shelf' software of 'not customized', 'not tailored' may be a form of the disclosed invention as noted in review of the testimony above, these alleged disclosed facets of '915 are not limiting as required elements of the claimed invention since that would involve improperly importing elements into the claims (supra).

In review of the rebuttal by Patent Owner on pages 5-8 regarding obviousness Kang with Kochis '458, their argument, in summary, is that the applied patents do not teach or suggest the amended invention as presently claimed with 'generic' since the applied patents are not commercial off the shelf communication software where Patentee asserts the applied art is customized or tailored for a specific application or process rather than not being customized for a specific application or process as a characteristic of commercial off the shelf software. The examiner disagrees for reasons stated in review of the opinion testimony above to extent those

Application/Control Number: 90/012,818                                    Page 14
Art Unit: 3992

features (e.g., commercial off the shelf, not customized, not tailored) are non-limiting and thus

their rebuttal is not persuasive due to relying on elements/features that are not claimed (supra).

The scope of claimed invention does not require these features and thus they do not provide a

basis to preclude applied art, but instead the scope of amended invention overlaps applied art.

     In response to Patent Owner's argument that the references fail to show certain features of

Patentee's invention, it is noted that the features upon which Patent Owner relies (i.e.,

commercial off the shelf, not customized and not tailored to a specific application or process) are

not recited in the rejected claim(s).  Although the claims are interpreted in light of the

specification, limitations from the specification are not read into the claims.  See *In re Van*

*Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).  Patentee failed to act as their own

lexicographer and the facts relied on merely establishes that '915 discloses these features as non-

limiting examples of the invention; thereby, the claims are not limited to only a form having

those features for reasons noted above (supra). The broadest reasonable interpretation of '915 as

amended, with consideration of scope of 'generic' and 'any available send/receive

communications software' overlaps the applied art or at least fails to preclude the applied art.

     The Patent Owner argues on pages 8-10 regarding obviousness over Kang with Kochis

'458 and Kurosaki, in summary, that 'generic' is not taught by applied art for 'receiving the

instruction from *generic* send/receive driver communications software' of claims 1 and 9, and

claims 5-8 and 13-15 which depend from claims 1 and 9, where 'generic' is asserted in testimony

by Mr. Myslinski to be "not customized and not tailored for a specific application or process"

(emphasis added).  The examiner disagrees for reasons stated above regarding broadest

reasonable scope of claimed invention including generic in '915 that overlaps applied art (supra).

Application/Control Number: 90/012,818                                              Page 15
Art Unit: 3992

Further as stated on pages 8-10, in response to Patent Owner assertion that the Requesters

assert that Kurosaki teaches using "an unmodified standard protocol for shifting the personal

computer to a connected mode for sending or receiving digital signals," the Examiner disagrees

since the patent owner characterization is erroneous since 'shifting the personal computer to a

connected mode for sending or receiving digital signals" is not a claimed element of '915 so this

is not a discriminator.  Also, Patent Owner asserts on page 9 that Kurosaki's use of CCITT

Group 1, 2, 3 standard protocol (an "unmodified standard protocol") only relates to the fax

machine and does not apply or qualify the protocol used between the fax machine and the PC.

such that the "CCITT Group 1, 2, 3 standard protocol is not applicable to the direct connection

between the facsimile machine and the personal computer recited in the claims and asserted by

the Requester, the Examiner disagrees since Kurosaki is directed to communications between a

fax and PC (Kurosaki @ page 1-2 and figures 1-4).  Further, Kurosaki discloses the PC and fax

are connected with a RS232C interface (a standard interface for connecting faxes to personal

computers, etc., based on CCITT recommendations) signal control line (*Id*,  page 2, column 1).

Kurosaki states "fax transmission functions can be implemented by connecting a PC and FAX

using the lines of the RS232C interface, wherein the existing hardware and software of the fax

are used for T30 phase B, D, and E protocol control" *Id*, page 2.  Further, Kurosaki discloses

there is no need to add new hardware or to modify the PC or fax, the existing PC and fax

functions are made use of as they are.  *Id*, page 2.  While, figure 4 of Kurosaki discloses the use

of phases A-E of the standard T.30 protocol for communications between the PC and fax

machine.  CCITT T.30 fax protocol specifies five phases for the flow of a fax session as depicted

in figure 4.  Thus, contrary to Patent Owner, it does not **only** apply to phases B, D, and E.  Thus,

Kurosaki discloses performing communications between the fax and computer by using each

device in its standard, unmodified form.  Examiner disagrees that the T30 commands only apply

to fax-to-fax communications as page 2 and figure 4 show PC to fax communications.

Regarding Patent Owner's argument on page 9 that Kurosaki does not use a bi-directional

direct connection between the facsimile machine and the computer to transmit scan and print

digital image data between the facsimile machine and the computer, the Examiner disagrees

since Kurosaki is not relied upon to teach this feature where specifically Kang is relied upon to

teach bi-directional direct connection between facsimile machine and PC to transmit scan and

print digital image data between the facsimile machine and the computer (Request @ pages 65-

68).

The Patent Owner alleges, on page 10, that "no proper combination of the references

teaches the subject matter of claims 1 and 9, as amended, as none of the references alone or

properly combined teaches using 'generic' send/receive driver communications software", and

"claims 5-8 and 13-15" that depend from claims 1 and 9 should be confirmed, the examiner

respectfully disagrees for reasons stated above regarding scope of generic where Patentee failed

to act as their own lexicographer and their alleged characteristics of claimed invention at best

regard improperly importing disclosed elements into the claims where the alleged characteristics

are at best non-limiting elements (supra).  Although the claims are interpreted in light of the

specification, limitations from the specification are not read into the claims. *In re Van Geuns*,

988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).  It is emphasized from above that it is

improper to rely on a specific embodiment in the '915 Patent to determine the broadest

reasonable interpretation of "generic" especially where Patent Owner failed to act as their own

lexicographer. *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d

1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906,

69 USPQ2d 1801, 1807 (Fed. Cir. 2004).

However, in so far as Patentee alleges that there is no teaching, suggestion, or motivation

to combine the references, the examiner recognizes that obviousness may be established by

combining or modifying the teachings of the prior art to produce the claimed invention where

there is some teaching, suggestion, or motivation to do so found either in the references

themselves or in the knowledge generally available to one of ordinary skill in the art. See *In re

Fine*, 837 F.2d 1071, 5 USPQ2d 1596 (Fed. Cir. 1988), *In re Jones*, 958 F.2d 347, 21 USPQ2d

1941 (Fed. Cir. 1992), and *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 82 USPQ2d

1385 (2007).  In this case, in consideration of the factual inquiries to establish a prima facie case

of obviousness, the Request, on pages 29-61 and 61-97, state 1) what the references teach, 2)

what is taught by the secondary reference(s) that is lacking from primary, 3) the skill of an

artisan is as shown by the applied art as stated in the respective holdings and provide a

motivation or reasoned basis that an artisan would have been motivated to combine the

respective teachings based on the references being in the same field of endeavor as claimed

invention.  If the only facts of record pertaining to the level of skill in the art are found within the

prior art of record, the court has held that an invention may be held to have been obvious without

a specific finding of a particular level of skill where the prior art itself reflects an appropriate

level. *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed.

Cir. 1983). See also *Okajima v. Bourdeau*, 261 F.3d 1350, 1355, 59 USPQ2d 1795, 1797 (Fed.

Cir. 2001)).  Therefore, in this proceeding a proper prima facie case of obviousness has been

Application/Control Number: 90/012,818                                            Page 18
Art Unit: 3992

stated in the record and is maintained after review and consideration of the totality of the rebuttal

evidence including opinion testimony that fails to outweigh the anticipation and/or obviousness

of applied art taken alone or in combination for what the reference(s) teach/suggest to an artisan

when taken as a whole at time of the invention for reasons as stated in the Request and above.

In reply to Patent Owner remark, in summary, on pages 10-12 that relies on testimony by

Mr. Myslinski to assert the combination of Kang in view of Kochis and further Chang and the

combination of Kang in view of Kochis '458 and Kurosaki and further Chang do not teach

'generic' send/receive driver communications software, as now recited in claims 1 and 9, and

claims 2-4 and 10-12 that depend from claims 1 and 9, the examiner respectfully disagrees for

reasons stated above that Patent Owner failed to act as their own lexicographer where their

definition of 'generic' improperly imports features into the claims from a disclosed non-limiting

embodiment (supra).

### *Claim Rejections - 35 USC § 103*

8.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

9.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

1.      Determining the scope and contents of the prior art.
2.      Ascertaining the differences between the prior art and the claims at issue.
3.      Resolving the level of ordinary skill in the pertinent art.

Application/Control Number: 90/012,818                                            Page 19
Art Unit: 3992

    4.      Considering objective evidence present in the application indicating obviousness
            or nonobviousness.

10.     **Claims 1, 5-9 and 13-15 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '458**.  Lacking evidence to the contrary, as would have been

interpreted by an artisan at the time of the invention, the Office agrees with factual findings

stated in Request, pages 2-3, 16, 20-26 and 29-61 incorporated herein, for cited claims for

reasons stated therein with consideration of response to amendment and response to arguments

above incorporated herein where the skill level of an artisan [i.e. one of ordinary skill] is as

demonstrated by the applied references.  The reliance on the facts therein is with regards to

teachings of Kang with Kochis '458 under 35 USC 102/103 rather than in relation to 35 USC

303 and 37 CFR 1.515.  Nachman '915 @ 8:21-22 states in part "any available send receive

software package"; thereby, lacking evidence to the contrary, the broadest reasonable

interpretation of the claimed communications software and send receive communications

software (or similar language) includes the software that enables the communication or transfer

of digital image data between fax machine and computer for scanning and/or printing functions

such as described in Kang to enable transfer of image data for print/scan between fax and

computer.  Also, to supplement discussion in Request, whereby the claim language 'initiating the

'printing/scanning 'at the facsimile machine' as present in claims 8 and 15 is factually showing

to be performed by Kang use of keyboard 80 inputting the document and control information

(2:5-6) or similarly by Kochis '458 (3:41-49).  Also, to clarify record, the citations to Office

actions or statements in other proceedings are considered and relied on herein only to extent

discussed in Request for claim interpretation of language herein or for scope of teachings of

applied art herein but is not suggesting applying a rejection of claims in any of those related

Application/Control Number: 90/012,818                                    Page 20
Art Unit: 3992

examinations or proceedings to this proceeding and is not an incorporation of any proposed

rejection herein to any related patent prosecution discussed.

11.     **Claims 1, 5-9 and 13-15 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '458 and Kurosaki**.   Discussion above regarding communication

software and initiating print/scan at the facsimile machine with regards to Kang and/or Kochis

'458 is incorporated herein. Lacking evidence to the contrary, as would have been interpreted by

an artisan at the time of the invention, the Office agrees with factual findings stated in Request,

pages 2-3, 16, 20-26, 29-32 and 61-97 incorporated herein, for cited claims for reasons stated

therein with consideration of response to amendment and response to arguments above

incorporated herein where the skill level of an artisan [i.e. one of ordinary skill] is as

demonstrated by the applied references.  The reliance on the facts therein is with regards to

teachings of Kang with Kochis '458 and Kurosaki under 35 USC 102/103 rather than in relation

to 35 USC 303 and 37 CFR 1.515.  Also, to clarify record, the citations to Office actions or

statements in other proceedings are considered and relied on herein only to extent discussed in

Request for claim interpretation of language herein or for scope of teachings of applied art herein

but is not suggesting applying a rejection of claims in any of those related examinations or

proceedings to this proceeding and is not an incorporation of any proposed rejection herein to

any related patent prosecution discussed.

12.     **Claims 2-4 and 10-12 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '458 as applied to claims 1 and 9 above, and further in view of**

**Chang**.  Discussion above regarding communication software and initiating print/scan at the

facsimile machine with regards to Kang and/or Kochis '458 is incorporated herein. Lacking

Application/Control Number: 90/012,818                                       Page 21
Art Unit: 3992

evidence to the contrary, as would have been interpreted by an artisan at the time of the

invention, the Office agrees with factual findings stated in Request, pages 2-3, 16, 20-26, 29-32

and 97-109 incorporated herein, for cited claims for reasons stated therein with consideration of

response to amendment and response to arguments above incorporated herein where the skill

level of an artisan [i.e. one of ordinary skill] is as demonstrated by the applied references.  The

reliance on the facts therein is with regards to teachings of Kang with Kochis '458 and Chang

under 35 USC 102/103 rather than in relation to 35 USC 303 and 37 CFR 1.515.  In addition, to

supplement the Request, Kochis '458 discusses using telephone lines (3:3-5 and 4:1-6) so as to

appear to include "interfacing the facsimile machine with telephone lines when in normal mode

of operation to send and receive facsimile communications", 'performed through RJ-11

telephone cables', and 'operating the facsimile machine in the normal mode of operation while

performing the printing of digital image data received at the digital serial communications port'

for use of telephone system.  Also, to clarify record, the citations to Office actions or statements

in other proceedings are considered and relied on herein only to extent discussed in Request for

claim interpretation of language herein or for scope of teachings of applied art herein but is not

suggesting applying a rejection of claims in any of those related examinations or proceedings to

this proceeding and is not an incorporation of any proposed rejection herein to any related patent

prosecution discussed.

13.     **Claims 2-4 and 10-12 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '458 and Kurosaki as applied to claims 1 and 9 above, and**

**further in view of Chang**.  Discussion above regarding communication software and initiating

print/scan at the facsimile machine with regards to Kang and/or Kochis is incorporated herein.

Application/Control Number: 90/012,818                                      Page 22
Art Unit: 3992

Lacking evidence to the contrary, as would have been interpreted by an artisan at the time of the

invention, the Office agrees with factual findings stated in Request, pages 2-3, 16, 20-26, 29-32

and 109-120 incorporated herein, for cited claims for reasons stated therein with consideration of

response to amendment and response to arguments above incorporated herein where the skill

level of an artisan [i.e. one of ordinary skill] is as demonstrated by the applied references.  The

reliance on the facts therein is with regards to teachings of Kang with Kochis '458 under 35 USC

102/103 rather than in relation to 35 USC 303 and 37 CFR 1.515.  In addition, to supplement the

Request, Kochis '458 discusses using telephone lines (3:3-5 and 4:1-6) so as to appear to include

"interfacing the facsimile machine with telephone lines when in normal mode of operation to

send and receive facsimile communications", 'performed through RJ-11 telephone cables', and

'operating the facsimile machine in the normal mode of operation while performing the printing

of digital image data received at the digital serial communications port' for use of telephone

system.  Also, to clarify record, the citations to Office actions or statements in other proceedings

are considered and relied on herein only to extent discussed in Request for claim interpretation of

language herein or for scope of teachings of applied art herein but is not suggesting applying a

rejection of claims in any of those related examinations or proceedings to this proceeding and is

not an incorporation of any proposed rejection herein to any related patent prosecution discussed.

14.      **Claims 1, 5-9 and 13-15 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '762**.  In response to Patent Owner adding 'generic' to claims,

Kang discloses the claimed functions including send/receive communications software but to the

extent that it is not 'generic', Kochis '762 discloses send/receive driver communications

software on a host computer that uses drivers to exchange information with peripheral devices to

Application/Control Number: 90/012,818                                    Page 23
Art Unit: 3992

perform multiple functions (abstract, 2:7-12, 27-30, 4:1-3, 18-29, 40-61, fig 3) that is general so

as to be 'generic' as broadly defined with discussion from Response to Amendment and

Response to Arguments incorporated herein regarding broadest reasonable interpretation of

scope of 'generic' (supra).   Kochis '762 recites: "A memory 312 contains user software 314 and

an operating system 316. Printer Command Language (PCL) driver software 318 is used by the

user software 314 to communicate to the printer 206 through the switch 230 of the present

invention. A Scanner Command Language (SCL) driver module 320 is used to communicate to a

scanner device within the Multi-Functional Peripheral Device 204. A FAX Command Language

(FCL) driver module 322 is used by the user software 314 to control all FAX functions within

the Multi-Functional Peripheral Device 204." Kochis '762, col.4 11.18-29, Fig. 3.   Thus, Kochis

'762 is relevant as analogous prior art due to having issued over a year prior to earliest priority of

'915 patent and for being in the same field as the '915 patent.   See *In re Oetiker*, 977 F.2d 1443,

24 USPQ2d 1443 (Fed. Cir. 1992).  The level of ordinary skill is as shown by the applied art.  If

the only facts of record pertaining to the level of skill in the art are found within the prior art of

record, the court has held that an invention may be held to have been obvious without a specific

finding of a particular level of skill where the prior art itself reflects an appropriate level. *Chore-

Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed. Cir. 1983). See

also *Okajima v. Bourdeau*, 261 F.3d 1350, 1355, 59 USPQ2d 1795, 1797 (Fed. Cir. 2001)).  In

consideration of the US Supreme Court decision in KSR v Teleflex, since both Kang and Kochis

'762 teach a method for communicating to receive image information from a telefax device and

to send image information to the telefax device, it would have been obvious to an artisan at the

time of the invention to substitute one method for the other to achieve the predictable result to

fax, scan and print using drivers.  In the alternative, it would have been obvious to apply the

generic send/receive driver communications software/process of Kochis '762 to the method of

Kang to achieve the predictable result to fax, scan and print by driver modules as shown by

Kochis '762.

15.     **Claims 1, 5-9 and 13-15 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Yokota.**   In response to Patent Owner adding 'generic' to claims, Kang

discloses the claimed functions/elements including send/receive communications software, but to

the extent that it is not 'generic', Yokota discloses send/receive driver communications software

on a host computer that uses modules to exchange information with peripheral devices to

perform multiple functions of print, fax and scan (abstract, 4:47-50, 12:37-44, fig 1 and 6-17)

that is general so as to be 'generic' as broadly defined with discussion from Response to

Amendment and Response to Arguments incorporated herein regarding broadest reasonable

interpretation of scope of 'generic' (supra).   Yokota teaches, in particular, the use of general

purpose driver communications software with multiple applications: "Ordinarily, when an

application software using the image scanner (PC scanner) is started, the scanner driver is loaded

into the memory before the application software is started. However, in the embodiment [under

discussion], <u>a driver having three functions of the personal computer scanner, FAX scanner, and</u>

<u>FAX reception data which have been prepared is provided</u> and they are previously loaded before

the application is started." Co1.12 11.37-44 (emphasis added). Yokota thus discloses

send/receive driver communications software that is not restricted to a single purpose or

function.  Thus, Yokota is relevant as analogous prior art due to claiming priority to an

application that predates the earliest priority of '915 patent and for being in the same field as the

Application/Control Number: 90/012,818                                    Page 25
Art Unit: 3992

'915 patent.   See *In re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443 (Fed. Cir. 1992).  The level of

ordinary skill is as shown by the applied art.  If the only facts of record pertaining to the level of

skill in the art are found within the prior art of record, the court has held that an invention may be

held to have been obvious without a specific finding of a particular level of skill where the prior

art itself reflects an appropriate level. *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713

F.2d 774, 218 USPQ 673 (Fed. Cir. 1983). See also *Okajima v. Bourdeau*, 261 F.3d 1350, 1355,

59 USPQ2d 1795, 1797 (Fed. Cir. 2001)).   In consideration of the US Supreme Court decision

in KSR v Teleflex, since both Kang and Yokota teach a method for communicating to receive

image information from a telefax device and to send image information to the telefax device, it

would have been obvious to an artisan at the time of the invention to substitute one method for

the other to achieve the predictable result to telefax, scan and print by use of modules/routines.

Alternatively, it would have been obvious to apply the generic send/receive driver

communications software/process of Yokota to the method of Kang to achieve the predictable

result to fax, scan and print by use of modules/routines as shown by Yokota.

16.    **Claims 2-4 and 10-12 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Kochis '762 as applied to claims 1 and 9 above, and further in view of**

**Chang**.  Discussion above regarding communication software and initiating print/scan at the

facsimile machine with regards to Kang and/or Kochis '762 is incorporated herein. Lacking

evidence to the contrary, as would have been interpreted by an artisan at the time of the

invention, the Office agrees with factual findings stated in Request with regards to teachings of

Kang and/or Chang.  Likewise this is in response to added 'generic' to claims, Kang in view of

Kochis '762 show the claimed elements (supra), but to the extent, the combination lacks

Application/Control Number: 90/012,818                                    Page 26
Art Unit: 3992

"interfacing the facsimile machine with telephone lines when in normal mode of operation to

send and receive facsimile communications" (claim 2 and 10), 'performed through RJ -11

telephone cables' (claim 3 and 11), and 'operating the facsimile machine in the normal mode of

operation while performing the printing of digital image data received at the digital serial

communications port' (claim 4 and 12) for use of telephone system, Chang discloses in figure 1,

ref 102 and 108 these claimed features as similarly stated in Request (pages 97-109) that notes

these same features were present in claims during '901 proceeding where Chang was applied as a

secondary teaching reference therein but Patentee did not challenge these findings of fact. This

was noted to establish relevance of Chang as analogous prior art as established during prior

proceeding that Chang is prior art for being prior to earliest priority of '915 patent and for being

in the same field as the '915 patent. See *In re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443 (Fed.

Cir. 1992). The level of ordinary skill is as shown by the applied art. In consideration of the US

Supreme Court decision in KSR v Teleflex, since Kang, Kochis '762 and Chang teach a method

for communicating to receive image information from a telefax device and to send image

information to the telefax device where, Chang shows it was known to interface the facsimile

machine with telephone lines when the facsimile is in normal mode of operation, it would have

been obvious to an artisan at the time of the invention to apply "interfacing the facsimile

machine with telephone lines when in normal mode of operation to send and receive facsimile

communications", 'performed through RJ -11 telephone cables', and 'operating the facsimile

machine in the normal mode of operation while performing the printing of digital image data

received at the digital serial communications port' as taught by Chang to improve the method of

Application/Control Number: 90/012,818                                         Page 27
Art Unit: 3992

Kang with Kochis '762 to achieve the predictable result of interfacing between two facsimile

machines using telephone lines for remote use of fax device.

17.      **Claims 2-4 and 10-12 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Kang in view of Yokota as applied to claims 1 and 9 above, and further in view of**

**Chang**.  Discussion above regarding communication software and initiating print/scan at the

facsimile machine with regards to Kang and/or Yokota is incorporated herein. Lacking evidence

to the contrary, as would have been interpreted by an artisan at the time of the invention, the

Office agrees with factual findings stated in Request with regards to teachings of Kang and/or

Chang.  Likewise this is in response to added 'generic' to claims, Kang in view of Yokota show

the claimed elements (supra), but to the extent, the combination lacks "interfacing the facsimile

machine with telephone lines when in normal mode of operation to send and receive facsimile

communications" (claim 2 and 10), 'performed through RJ -11 telephone cables' (claim 3 and

11), and 'operating the facsimile machine in the normal mode of operation while performing the

printing of digital image data received at the digital serial communications port' (claim 4 and 12)

for use of telephone system, Chang discloses in figure 1, ref 102 and 108 these claimed features

as similarly stated in Request (pages 97-109) that notes these same features were present in

claims during '901 proceeding where Chang was applied as a secondary teaching reference but

Patentee did not challenge these findings of fact.  This was noted to establish relevance of Chang

as analogous prior art as established during prior proceeding that Chang is prior art for being

prior to earliest priority of '915 patent and for being in the same field as the '915 patent.  See *In*

*re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443 (Fed. Cir. 1992).  The level of ordinary skill is as

shown by the applied art.  In consideration of the US Supreme Court decision in KSR v Teleflex,

Application/Control Number: 90/012,818                                   Page 28
Art Unit: 3992

since Kang, Kochis '762 and Chang teach a method for communicating to receive image

information from a telefax device and to send image information to the telefax device where,

Chang shows it was known to interface the facsimile machine with telephone lines when the

facsimile is in normal mode of operation, it would have been obvious to an artisan at the time of

the invention to apply "interfacing the facsimile machine with telephone lines when in normal

mode of operation to send and receive facsimile communications", 'performed through RJ -11

telephone cables', and 'operating the facsimile machine in the normal mode of operation while

performing the printing of digital image data received at the digital serial communications port'

as taught by Chang to improve the method of Kang with Yokota to achieve the predictable result

of interfacing between two facsimile machines using telephone lines for remote use of fax

device.


### *Conclusion*

18.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 8294915 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.


19.     **THIS ACTION IS MADE FINAL.**

Application/Control Number: 90/012,818                                      Page 29
Art Unit: 3992

A shortened statutory period for response to this action is set to expire two from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c).**  A request for extension of time must be filed on or before the day on which a response to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of time.  An extension of time will be granted only for sufficient cause, and for a reasonable time specified.

The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted.  In no event however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action.  See MPEP § 2265.

20.     **All** correspondence relating to this inter partes reexamination proceeding should be directed:

By Mail to:
Mail Stop Ex Parte Reexam
Attn: Central Reexamination Unit
Commissioner of Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Application/Control Number: 90/012,818                                         Page 30
Art Unit: 3992


By FAX to:
(571) 273-9900
Central Reexamination Unit

By hand:
Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

By EFS-Web:
Registered users of EFS-Web may alternatively submit such correspondence via the electronic
filing system EFS-Web, at

https:efs.uspto.qov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to
act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically
uploaded) directly into the official file for the reexamination proceeding, which offers parties the
opportunity to review the content of their submissions after the "soft scanning" process is
complete.

Any inquiry concerning this communication or earlier communications from the examiner, or as
to the status of this proceeding, should be directed to the Central Reexamination Unit at
telephone number (571) 272-7705.

Signed:

/Mark Sager/
Primary Reexamination Specialist, Art Unit 3992

Conferees:
/RSD/

/Daniel J Ryman/
Supervisory Patent Examiner, Art Unit 3992

| *Office Action in Ex Parte Reexamination* | Control No. 90/012,818 | Patent Under Reexamination 8294915 |
|---|---|---|
| | Examiner MARK SAGER | Art Unit 3992 | AIA (First Inventor to File) Status No |

| *Office Action in Ex Parte Reexamination* | Control No. 90/012,818 | Patent Under Reexamination 8294915 |
|---|---|---|
| | Examiner MARK SAGER | Art Unit 3992 |  AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on *July 24, 2013* .

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☒ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-4,6-12,14 and 15* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-4,6-12,14 and 15* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c) ☐ None    of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____ .

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-13)    **Office Action in Ex Parte Reexamination**    Part of Paper No. 10092013

| *Notice of References Cited* | Application/Control No.<br>90/012,818 | Applicant(s)/Patent Under Reexamination<br>8294915 | |
| --- | --- | --- | --- |
| | Examiner<br>MARK SAGER | Art Unit<br>3992 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
| --- | --- | --- | --- | --- | --- |
| * | A | US-5,598,533 | 01-1997 | Yokota et al. | 358/1.15 |
| * | B | US-5,175,762 | 12-1992 | Kochis et al. | 379/100.01 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
| --- | --- | --- | --- | --- | --- | --- |
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
| --- | --- | --- |
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
|  | 90/012,818 | 8294915 |
| | Examiner | Art Unit | |
| | MARK SAGER | 3992 | |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| none | 10/9/2013 | MAS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Part of Paper No.  10092013

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| *Index of Claims* | 90012818 | 8294915 |
| | Examiner | Art Unit |
| | MARK SAGER | 3992 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/15/2013 | 10/09/2013 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | - | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | - | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/012,818 | 8294915 |
| | **Certificate Date** | **Certificate Number** |

| Requester | Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|---|

ROPES & GRAY LLP
IPRM - FLOOR 43
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600

| **LITIGATION REVIEW** ☒ | **mas** | |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| 2:12cv6796 (closed) | | |
| 2:12cv6797 (closed) | | |
| 2:12cv6798 (closed) | | |
| 2:12cv6799 (closed) | | |
| See scanned Lit Search (10/3/2013) for further entries | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| 1.   NONE | |
| 2. | |
| 3. | |
| 4. | |

U.S. Patent and Trademark Office                                    DOC. CODE **RXFILJKT**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,815 | 03/22/2013 | 7489423 | 105413-0007-501 | 7882 |

7590        10/29/2013

MARVIN J. NACHMAN
315 SAYBROOK ROAD
VILLANOVA, PA 19085

| EXAMINER |
|---|
| DESAI, RACHNA SINGH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/29/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 United States Patent and Trademark Office

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Ropes & Gray LLP Prudential Tower
800 Boylston Street
IPRM-Floor 43
Boston, MA 02199-3600

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,815*.

PATENT NO. *7489423*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Application/Control Number: 90/012,815                                    Page 2
Art Unit: 3992

The present application is being examined under the pre-AIA first to invent

provisions.

### *Reexamination*

1.      An Ex Parte Reexamination was granted for claims 1-6 of U.S. 7,489,423 in the

Order mailed 04/24/2013.  Patent Owner filed a response to the non-final office action

on 07/24/2013 along with a Declaration by Mark Myslinski.

### *References Submitted by Requester*

2.      The following references have been cited in the proposed rejections by the

Requester:

US Patent 5,175,762        Kochis et al. (hereinafter "Kochis '762)

US Patent 5,598,533        Yokota et al. (hereinafter "Yokota")

US Patent 5,390,031        Kang et al. (hereinafter "Kang")

US Patent 5,218,458        Kochis et al. (hereinafter "Kochis '458)

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

Application/Control Number: 90/012,815                                    Page 3
Art Unit: 3992

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

### *Issue 1*

4.      Claims 1-4 and 6 are rejected under 35 U.S.C. 103(a) as being obvious over Kang in view of Kochis '762 (see pages 30-65 of the Request for Reexamination filed 03/22/2013, incorporated by reference).

These rejections are incorporated by reference as proposed on pages 30-65 of the Request for Reexamination filed 03/22/2013.

### *Issue 2*

5.      Claims 1-6 are rejected under 35 U.S.C. 103(a) as being obvious over Kang in view of Kochis '458 and Kochis '762 (see pages 65-106 of the Request for Reexamination filed 03/22/2013, incorporated by reference).

These rejections are incorporated by reference as proposed on pages 65-106 of the Request for Reexamination filed 03/22/2013.

Application/Control Number: 90/012,815                                    Page 4

Art Unit: 3992

*Issue 3*

6.      Claims 1-4 and 6 are rejected under 35 U.S.C. 103 (a) as being obvious over

Kang in view of Yokota (see pages 106-141 of the Request for Reexamination filed

03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 106-141 of

the Request for Reexamination filed 03/22/2013.

*Issue 4*

7.      Claims 1-6 are rejected under 35 U.S.C. 103(a) as being obvious over Kang in

view of Kochis '458 and Yokota (see pages 142-182 of the Request for Reexamination

filed 03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 142-182 of

the Request for Reexamination filed 03/22/2013.

**Declaration under 37 CFR 1.132**

8.      The Declaration under 37 CFR 1.132 filed 7/24/2013 is insufficient to overcome

the rejection of claims 1-6 for reasons explained below under "Response to Arguments".

        The 37 CFR 1.132 Declaration of Mark Mylinski (incorporated by reference), in

support of the Patent Owner received on 07/24/213, has been considered and entered

Application/Control Number: 90/012,815                                    Page 5
Art Unit: 3992

into the prosecution record.  Mr. Mylinski discloses (paragraph 1) academic and

professional credentials of one skilled in the art.  It is noted that the Mylinski declaration

does not note, and it is unclear to Examiner, any compensation received or any vested

interest related to the outcome of the proceeding of the reexamination of the '423

patent.  For the record, in order to assess the probative value of an opinion, the

examiner must consider the nature of the matter sought to be established, the strength

of any opposing evidence, *the interest of the expert in the outcome of the case*, and the

presence or absence of factual support for the expert's opinion. (emphasis added).

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 227 USPQ 657

(Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). See also *In re Oelrich,* 579 F.2d

86, 198 USPQ 210 (CCPA 1978) (factually based expert opinions on the level of

ordinary skill in the art were sufficient to rebut the *prima facie* case of obviousness); *Ex

parte Gray*, 10 USPQ2d 1922 (Bd. Pat. App. & Inter. 1989) (statement in publication

dismissing the "preliminary identification of a human b-NGF-like molecule" in the prior

art, even if considered to be an expert opinion, was inadequate to overcome the

rejection based on that prior art because there was no factual evidence supporting the

statement); *In re Carroll*, 601 F.2d 1184, 202 USPQ 571 (CCPA 1979) (expert opinion

on what the prior art taught, supported by documentary evidence and formulated prior to

the making of the claimed invention, received considerable deference); *In re Beattie*,

974 F.2d 1309, 24 USPQ2d 1040 (Fed. Cir. 1992) (declarations of seven persons

skilled in the art offering opinion evidence praising the merits of the claimed invention

were found to have little value because of a lack of factual support); *Ex parte George,*

21 USPQ2d 1058 (Bd. Pat. App. & Inter. 1991) (conclusory statements that results were "unexpected," unsupported by objective factual evidence, were considered but were not found to be of substantial evidentiary value). However, the lack of clarity noted above is minor. Therefore, in this proceeding, the opinion testimony in support of Patent Owner has been afforded some weight but less than otherwise if the issue of compensation was clearer; however, this is relatively minor issue.

The Mylinski declaration is addressed in more detail with respect to the discussion of issues and response to arguments below.

## *Response to Arguments*

**9.      Interpretation of "generic send/receive driver communications software"**

**PO's Arguments/Declarant Comments:**

PO argues in light of the Declaration of Mark Myslinksi, the term "generic send/receive driver communications software" would be understood to one of ordinary skill in the art to be "software that is not customized and not tailored to a specific application or process, and in this sense a characteristic of commercial off-the-shelf communications software. Myslinksi Declaration at paragraph 17.

PO refers to the 423 patent at figure 2g and column 8, lines 4-26 and states that the scan and print functions of a personal computer and a facsimile machine are accomplished using digital data that is communicated between the personal computer

and the facsimile machine by the "generic send/receive driver communications

software".   Myslinksi Declaration at paragraph 8.  PO argues the 423 patent teaches

that the Rockwell chip series is an example of hardware that was capable of

communicating serial digital data between a facsimile machine and a personal computer

to accomplish the above.  PO refers to data sheets associated with the Rockwell chip

series to argue that the examples of communication software packages that were

capable of operating with the Rockwell chip series all fall into a category of commercial

off-the-shelf communication software that conformed to common industry-wide

standards.  Myslinksi Declaration at paragraphs 9 and 12-13.  PO argues the extrinsic

evidence associated with the explicitly disclosed Rockwell chip series confirms the

understanding set forth by Mr. Myslinksi that "generic send/receive driver

communications software" would have been understood to be "software that is not

customized and not tailored to a specific application or process, and in this sense a

characteristic of commercial off-the-shelf communication software.  PO argues the

Requester's interpretation of "generic send/receive driver communications software" is

either customized and/or is not commercial off-the-shelf communication software and

does not conform to industry standards.

The Myslinksi Declaration states column 8 of the '423 patent describes the data

transfer process as using "unused signal lines which were and are today available on

most modem chips such as the Rockwell chip series".  Declarant argues column 8 is

preceded by a disclosure that a standard PC and a standard fax machine had a

common format of native digital data within each device that if transferred not

Application/Control Number: 90/012,815                                    Page 8
Art Unit: 3992

customized or tailored to a specific application or process, would support the basic functions of printing and scanning between a PC and a fax machine.

Declarant argues the 423 patent demonstrates a recognition by the inventor that a means was inherently available in association with a standard fax machine and standard PC, whereby the native digital data could be transmitted via "generic" send/receive driver communications software.

The Declaration argues various data specifications show ICs capable of fax modem communications and designed for original equipment manufacturers to build fax machines and stand-alone fax modems. Several of these devices support multiple data interfaces, including both parallel and serial bus interfaces. The serial interface is specified as either of the RS-232 or V.24 standards for serial communications. These interfaces are TTL-compatible making them compatible with TTL line drivers used to drive the serial communications off-board and for the standard line length for RS-232/V.24 of 50 feet. Declarant states the serial interface provided by the fax modem was commonly left unused. The '423 patent discloses that the serial interface feature supports interface between the fax modem and the remote device via a conventional DTE to DCE transmission interface. Declarant argues the '423 patent discloses facilitating this transfer using "generic" send/receive driver communication software.

Declarant argues the use of generic send/receive driver communication software is demonstrated by the reference within the Rockwell data sheet (Ref #4) associated with the disclosed Rockwell chip series that indicates the IC's serial interface "ensures

operation with" a number of off-the-shelf send/receive driver communication software

packages known at the time.  Declarant argues these demonstrate use of generic

send/receive driver communication software as they are software packages that support

the broadest range of communications applications that the serial communications

standard was intended for, and as they are interchangeable and interoperable per the

standard, thus validating them as not customized nor tailored for a specific application

or process.  Declarant argues the Rockwell data sheet further indicates that the chip

series will "operate with popular communication software packages such as Smartcom,

ProComm, Mirror, Quick Link II, and CROSSTALK" and that such off-the-shelf software

packages were generally, commercially available and each performed similar functions

in similar ways, as they each complied to send/receive data communication software

standards such as based on the "Hayes-compatible AT command set".  Declarant

argues these communications software packages conform to industry-wide standards,

and subsequently per these standards can be used in an interchangeable, interoperable

manner where one can be substituted for another.  Declarant argues these software

communications packages are cited in the Rockwell User's Guide and characterized as

a communications program and software packages.  Declarant argues these software

communication software packages can be substituted either in pairs or at only one end

of the receiving or transmitting, as the standard promotes interoperability of all

conforming software packages.  This ability for the communication packages to be

interchangeable and interoperable demonstrates these packages as "generic".

**Examiner's Response:**

Application/Control Number: 90/012,815                                      Page 10
Art Unit: 3992

Examiner does not agree with PO and Declarant arguments that the term "generic send/receive driver communication software" is limited "commercial off-the-shelf communications software" or "software that is not customized and not tailored to a specific application or process". Examiner further disagrees that the software packages must be interchangeable and interoperable per the standard, thus validating them as not customized nor tailored for a specific application or process.

During reexamination, claims are given the broadest reasonable interpretation consistent with the Specification and limitations in the Specification are not read into the claims (in re Yamamoto, 740 F.2d 1569, 222 USPQ 934 (Fed. Circ. 1984)). It is noted the terms "commercial", "off-the-shelf", and "interchangeable and interoperable" do not appear in the '423 Patent. The scope of the term "generic" is broader than the definition set forth by the PO and Declarant in relying on the use of Rockwell chip hardware and commercial software. Specifically, PO and Declarant rely on and present evidence based on the reference to the "Rockwell chip series" in column 8 of the '423 patent; however, the reference to the Rockwell chip series is merely an example. See column 8, lines 4-6 which states "The aforementioned procedure utilizes unused signal lines which are available on most modem chips **such as the Rockwell chip series"**. The Rockwell chip is merely cited as an exemplary embodiment and is not the only hardware that can be used according to the '423 specification. In other words, the invention fails to preclude other hardware, firmware, and/or software to perform the steps/functions claimed as the '423 patent is not limited to commercial software products or the Rockwell chip series.

Thus, PO and Declarant's proposed definition based on the Rockwell chip series specifications is not the only definition consistent with the specification.  The broadest reasonable interpretation of the term "generic" consistent with the '423 patent without improperly importing limitations into the claims regards its plain meaning of 'pertaining to or describing an entire group or class:  GENERAL' as defined in Webster's II New Riverside University Dictionary, copyright 1984, 1988, 1994 by Houghton Mifflin Company, or similar.  Thus the broadest reasonable interpretation of "generic" is not limited to require commercial off the shelf software that is not customized or not tailored to a specific application or process.  Further, column 8, lines 7-18 of the patent discloses "any available send/receive communications software package is acceptable".  The broadest reasonable interpretation of the term "generic send/receive driver communication software", in light of the Specification, is "any available send/receive communications software package" or a general send/receive communications software package.  "Any available send/receive communications software package" does not preclude proprietary software as argued by the PO and Declarant with respect to the applied references (addressed in more detail in the relevant sections below).

PO and Declarant argue this term means any available commercial off-the-shelf communication software that is not customized and not tailored to a specific application or process; however, the Specification does not support this interpretation for reasons stated above.  "Any available send/receive communications software package" allows for propriety software using the same structure to perform the same steps.  Words in patent claims are given their ordinary meaning in the usage of the field of the invention,

Application/Control Number: 90/012,815                                   Page 12
Art Unit: 3992

unless the text of the patent makes clear that a word was used with a special meaning. *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999).  In the '811 patent, the Specification does not make clear that the phrase "generic send/receive driver communications software" **only** carries a special meaning as set forth by the PO and Declarant.

Accordingly, Examiner interprets "generic send/receive driver communications software" as "any available send/receive communications software package".

## 10.    Issue 1 (Kang in view of Kochis '762) & Issue 2 (Kang in view of Kochis '458 and Kochis '762)

**PO's Arguments:**

Regarding Kang, PO argues Kang teaches a facsimile device and computer that communicate in a specific manner that could not be accomplished using "generic" send/receive driver communications software.  PO points to table 2 and argues to enable communications between their facsimile device and the computer, the control codes of Tables 2, 3, 4, and 5 must be communicated in a specific fashion to enable the various modes of operation described in column 3, line 27-column 4, line 23 and column 4, lines 28-29.  The control codes are shown in figure 3 as being pre-pended to the image information as part of the data that is communicated between the facsimile device and the computer.  Thus, PO argues Kang requires that the facsimile device and the computer must each be equipped with specific, i.e. non-generic, send/receive driver

Application/Control Number: 90/012,815                                    Page 13
Art Unit: 3992

communications software, as both the facsimile device and the computer must include

such specific software to enable them to understand the disclosed non-standard control

codes of Table 2, 3, 4, and 5.  PO argues such software is not off-the-shelf software.

PO argues the generic send/receive driver communications software of the instant

patent claims would not be able to communicate using the control codes of Kang.

Regarding Kochis '458, PO argues that while Kochis '458 teaches "software", the

reference does not teach "generic" send/receive driver communications software.

Regarding Kochis '762, PO argues Kochis '762 discloses a memory 312 that

contains user software 314 and an operating system 316.  PO argues Kochis 762's

SCL, PCL, and FCL driver software are not commercial off-the-shelf software, but rather

application specific, proprietary command language routines created using a PC's

command language utility.  PO argues the PC must be retrofitted with three separate

send/receive driver software applications, each individually communicating to the

separately disclosed printer, scanner, and fax devices depending on whether printing,

scanning, or faxing was to be performed.  Further, PO argues Kochis '762 uses a Non-

Standard Facility (NSF) of Group III fax protocol and thus is customized for a particular

purpose as the NSF enables a completely proprietary mode wherein the endpoint

devices can use any page transmission techniques they can mutually agree upon.

**Examiner's Response:**

Application/Control Number: 90/012,815                                    Page 14
Art Unit: 3992

While PO argues Kang and Kochis '458 do not teach "generic send/receive driver
communications software", it is noted Kochis '762 has been relied upon to teach
"generic send/receive driver communications software" in the rejections.

As stated above, the term "generic send/receive driver communications software"
is given its broadest reasonable interpretation.   "Generic" is interpreted as 'pertaining to
or describing an entire group or class:  GENERAL'.  Thus, "generic send/receive driver
communications software" is interpreted as "any available send/receive communications
software package" as specified in column 8, lines 17-18 of the '423 patent or "general
send/receive driver communications software".

Kochis '762 discloses generic send/receive driver communications software.
"Any available send/receive communications software package" does not preclude
propriety software using the same structure to perform the same steps.  Specifically,
Kochis '762 discloses a memory contains user software 314 and an operating system
316.  The user software uses PCL, SCL, and FCL driver modules to communicate to the
printer, a scanner device within the MFPD and to control all fax functions within the
MFPD.  See column 4, lines 18-29 and figure 3.  Kochis '762 discloses "user software"
enables communication with multiple devices, including a facsimile machine.  Further
"package" indicates the claimed software can comprise multiple components.
Accordingly, Examiner maintains that Kochis '762 teaches "generic send/receive driver
communications software".

Regarding PO's argument that Kochis '762 uses a Non-Standard Facility (NSF) of Group III fax protocol and thus is customized for a particular purpose as the NSF enables a completely proprietary mode wherein the endpoint devices can use any page transmission techniques they can mutually agree upon, Examiner notes this refers to standardized methods of allowing fax machines to use special features, such as transferring data without converting it to graphical image format and does not change the fact that Kochis '762 teaches generic send/receive driver communications software.

Issues 1 and 2 rely on the teachings of Kochis '762 to teach the disputed feature. Accordingly, the rejections presented in Issues 1 and 2 are maintained.

### 11.   Kang in view of Yokota (Issue 3) and Kang in view of Kochis '458 and Yokota (Issue 4)

**PO's Arguments:**

PO repeats the arguments made with respect to Kang and Kochis '458 above. Further, PO argues Yokota does not teach "generic" send/receive driver communications software.  PO argues Yokota teaches a store and forward process as part of the device-to-device communications whereby there is intervening processes that occurs between two memory means in the PC prior to permanent storage of data received from the fax machine.  PO argues Interrupt Service Routines (ISRs) are an integral function/process of a software driver.  PO argues Yokota discloses development or modification of each of the PC and fax device's standard driver software

Application/Control Number: 90/012,815                                          Page 16
Art Unit: 3992

via their ISRs of which makes the send/receive driver communication software in each

device non-generic, as they are specifically designed to work together.  Commercially

available off-the-shelf software is not taught by, nor would not operate in Yokota.  PO

argues Yokota teaches at column 4, line 54 "except for the common memory 34, the

above ports, registers and the like are constructed on one or more gate arrays" which

suggests modifications are made to the hardware of the PC, and apparently specific to

the data communications port.

　　　　Pertaining to the intervening processes, Yokota at column 14, line 53, teaches,

"...the image data which was formed by the application software and which is the data to

be printed and output as a visible image by the fax can also be directly transmitted to a

remote facsimile apparatus." PO argues while the word direct is used here, it is clear

from the description of the element and the existence of the shared memory for the data

transfer that a direct transfer is not being used.  As such, Yokota fails to teach or

suggest "generic" send/receive driver communications software.

**Examiner's Response:**

　　　　Examiner disagrees.  It is noted that PO does not appear to argue whether

Yokota teaches send/receive driver communications software, only that Yokota fails to

teach it is generic as it is not commercially available and is proprietary.

　　　　As stated above, Examiner is interpreting generic send/receive driver

communications software as "any available send/receive communications software

package" or "general send/receive driver communications software" and is not limited to

Application/Control Number: 90/012,815                                    Page 17
Art Unit: 3992

commercial off the shelf software.  Yokota teaches ordinarily when an application

software using the image scanner (PC scanner) is started, the scanner driver is loaded

into the memory before the application software is started.  However, in the

embodiment, a driver having three functions of the personal computer scanner, FAX

scanner, and FAX reception data which have been prepared is provided and they are

previously loaded before the application is started (column 12, lines 37-44).  Thus,

Yokota discloses generic send/receive driver communications software.  With respect to

PO's argument that Yokota describes using an indirect shared memory using

proprietary and non-standard software, Examiner notes "any available send/receive

driver communications software does not preclude proprietary software.

     Accordingly, the rejections under Issues 3 and 4 are maintained.


                              **Conclusion**

**12.    THIS ACTION IS MADE FINAL.**

     A shortened statutory period for response to this action is set to expire **one**

**month** from the mailing date of this action.

     **Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to

parties in a reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR

1.550(a), it is required that reexamination proceedings "will be conducted with special

dispatch within the Office."

Application/Control Number: 90/012,815                                    Page 18
Art Unit: 3992

**Extensions of time in reexamination proceedings are provided for in 37**

**CFR 1.550(c).**  A request for extension of time must be filed on or before the day on

which a response to this action is due, and it must be accompanied by the petition fee

set forth in 37 CFR 1.17(g).  The mere filing of a request will not effect any extension of

time.  An extension of time will be granted only for sufficient cause, and for a reasonable

time specified.

The filing of a timely first response to this final rejection will be construed as

including a request to extend the shortened statutory period for an additional month,

which will be granted even if previous extensions have been granted.  In no event

however, will the statutory period for response expire later than SIX MONTHS from the

mailing date of the final action.  See MPEP § 2265.


13.     All correspondence relating to this inter partes reexamination proceeding should

be directed:

By Mail to:        Mail Stop *Inter Partes* Reexam
                   Central Reexamination Unit
                   Commissioner for Patents
                   United States Patent & Trademark Office
                   P.O. Box 1450
                   Alexandria, VA 22313-1450

By FAX to:         (571) 273-9900
                   Central Reexamination Unit

By hand:           Customer Service Window
                   Randolph Building
                   401 Dulany Street
                   Alexandria, VA 22314

Application/Control Number: 90/012,815                                    Page 19
Art Unit: 3992

Registered users of EFS-Web may alternatively submit such correspondence via the

electronic filing system EFS-Web, at:


 https://efs.uspto.gov/efile/myportal/efs-registered


EFS-Web offers the benefit of quick submission to the particular area of the Office that

needs to act on the correspondence.  Also, EFS-Web submissions are "soft scanned"

(i.e., electronically uploaded) directly into the official file for the reexamination

proceeding, which offers parties the opportunity to review the content of their

submissions after the "soft scanning" process is complete.


Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number 571-272-7705.


/Rachna S Desai/
Primary Examiner
Central Reexamination Unit – Art Unit 3992


Conferees:
/MAS/

/Daniel J Ryman/
Supervisory Patent Examiner, Art Unit 3992

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/012,815 | Patent Under Reexamination<br>7489423 |
| | Examiner<br>RACHNA DESAI | Art Unit<br>3992 | AIA (First Inventor to File) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on *7/24/2013* .

     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

b. ☒ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-6* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-6* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All  b) ☐ Some* c) ☐ None    of the certified copies have

     1 ☐ been received.

     2 ☐ not been received.

     3 ☐ been filed in Application No. _____ .

     4 ☐ been filed in reexamination Control No. _____ .

     5 ☐ been received by the International Bureau in PCT application No. _____ .

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012815 | 7489423 |
| | Certificate Date | Certificate Number |
| | | |

| Requester Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|

ROPES & GRAY LLP PRUDENTIAL TOWER
800 BOYLSTON STREET
IPRM-FLOOR 43
BOSTON, MA 02199-3600

| LITIGATION REVIEW ☒ | /RSD/ (examiner initials) | 09/26/2013 (date) |
|---|---|---|
| Case Name | | Director Initials |
| 2:10cv3175  Infinity Computer Products, Inc. V. Brother Inter | | |
| 2:12cv6796  Infinity Computer Products, Inc. V. Toshiba Ameri | | |
| 2:12cv6797 Infinity Computer Products, Inc. V. Oki Data Ameri | | |
| 2:12cv6798 Infinity Computer Products, Inc. V. Samsung Electr | | |
| 2:12cv6799 Infinity Computer Products, Inc. V. Lexmark Intern | | |
| 2:12cv6800 Infinity Computer Products, Inc. V. Canon Usa, Inc | | |
| 2:12cv6801 Infinity Computer Products, Inc V Eastman Kodak Co | | |
| 2:12cv6802 Infinity Computer Products, Inc. V.  Konica Minolt | | |
| 2:12cv6803 Infinity Computer Products, Inc. V. Panasonic Corp | | |
| 2:12cv6804 Infinity Computer Products, Inc. V. Xerox Corporat | | |

| | |
|---|---|
| | |

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012815 | 7489423 |
| | **Certificate Date** | **Certificate Number** |

| **LITIGATION REVIEW** ☒ | /RSD/ | 09/26/2013 |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| 2:12cv6805 Infinity Computer Products, Inc. V. Hewlett-Packar | | |
| 2:12cv6806 Infinity Computer Products Inc. V Epson America, I | | |
| Infinity Computer Products, Inc. V.  Ricoh Americas 2:12cv680 | | |
| Infinity Computer Products, Inc. V. Dell, Inc. 2:12cv6808 | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012815 | 7489423 |
| | **Examiner** | **Art Unit** |
| | RACHNA DESAI | 3992 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed Patented File's Prosecution History | 4/4/2013 | RSD |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

|  |  |
|---|---|
| | |

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,816 | 03/22/2013 | 6894811 | 105413-0007-502 | 5428 |

7590          10/29/2013

MARVIN NACHMAN
315 SAYBROOK ROAD
VILLANOVA, PA 19085

| EXAMINER |
|---|
| DESAI, RACHNA SINGH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/29/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ROPES & GRAY LLP PRUDENTIAL TOWER

800 BOYLSTON STREET

IPRM-FLOOR 43

BOSTON, MA 02199-3600

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,816*.

PATENT NO. *6894811*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Application/Control Number: 90/012,816                                    Page 2
Art Unit: 3992

The present application is being examined under the pre-AIA first to invent

provisions.


## Detailed Action

1.      An Ex Parte Reexamination was granted for claims 1-20 of U.S. 6,894,811.  PO

submitted a response to the non-final office action on 7/24/2013 along with a declaration

by Mark Mylinski.


## *References Submitted by Requester*


2.      The following references were cited in the proposed rejections by the Requester:


Japanese Patent Application No.S58-95050, filed on May 31, 1983 and published on
December 12, 1984 (No. S59-221068) to Kurosaki (hereinafter "Kurosaki").

US Patent 5,218,458          Kochis et al. (hereinafter "Kochis '458")

US Patent 5,175,762          Kochis et al. (hereinafter "Kochis '762")

US Patent 5,598,533          Yokota et al. (hereinafter "Yokota")

US Patent 5,390,031          Kang et al. (hereinafter "Kang")

US Patent 4,802,204          Chang (hereinafter "Chang")

Application/Control Number: 90/012,816                                    Page 3
Art Unit: 3992

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

### *Rejection 1*

4.      Claims 7-10 and 12-16 are rejected under 35 U.S.C. 103(a) as being obvious

over Kang in view of Chang and Kurosaki (see pages 40-97 of the Request for

Reexamination filed 03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 40-97 of

the Request for Reexamination filed 03/22/2013.

### *Rejection 2*

5.      Claims 1-4 and 20 are rejected under 35 U.S.C. 103(a) as being obvious over

Kang in view of Kochis '762 (see pages 207-238 of the Request for Reexamination filed

03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 207-238 of

the Request for Reexamination filed 03/22/2013.

Application/Control Number: 90/012,816                                     Page 4
Art Unit: 3992

### *Rejection 3*

6.      Claim 1-5 and 20 are rejected under 35 U.S.C. 103(a) as being obvious over

Kang in view of Kochis '458 and Kochis '762 (see pages 239-273 of the Request for

Reexamination filed 03/22/2013, incorporated by reference)..

        These rejections are incorporated by reference as proposed on pages 239-273 of

the Request for Reexamination filed 03/22/2013.

### *Rejection 4*

7.      Claims 1-4 and 20 are rejected under 35 U.S.C. 103 (a) as being obvious over

Kang in view of Yokota (see pages 273-303 of the Request for Reexamination filed

03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 273-303 of

the Request for Reexamination filed 03/22/2013.

### *Rejection 5*

8.      Claims 1-5 and 20 are rejected under 35 U.S.C. 103(a) as being obvious over

Kang in view of Kochis '458 and Yokota (see pages 303-338 of the Request for

Reexamination filed 03/22/2013, incorporated by reference).

Application/Control Number: 90/012,816                                              Page 5
Art Unit: 3992

These rejections are incorporated by reference as proposed on pages 303-338 of

the Request for Reexamination filed 03/22/2013.


### *Rejection 6*


9.      Claims 6, 18, and 19 are rejected under 35 U.S.C. 103(a) as being obvious over

Kang in view of Chang and Kochis '762 (see pages 338-389 of the Request for

Reexamination filed 03/22/2013, incorporated by reference).

These rejections are incorporated by reference as proposed on pages 338-389 of

the Request for Reexamination filed 03/22/2013.


### *Rejection 7*


10.     Claims 6, 18, and 19 are rejected under 35 U.S.C. 103(a) as being obvious over

Kang in view of Chang, Kochis '458 and Kochis '762 (see pages 389-444 of the

Request for Reexamination filed 03/22/2013, incorporated by reference).

These rejections are incorporated by reference as proposed on pages 389-444 of

the Request for Reexamination filed 03/22/2013.

Application/Control Number: 90/012,816                                    Page 6
Art Unit: 3992

### *Rejection 8*

11.     Claims 6, 18, and 19 are rejected under 35 U.S.C. 103(a) as being obvious over
Kang in view of Chang and Yokota (see pages 444-494 of the Request for
Reexamination filed 03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 444-494 of
the Request for Reexamination filed 03/22/2013.

### *Rejection 9*

12.     Claims 6, 18, and 19 are rejected under 35 U.S.C. 103(a) as being obvious over
Kang in view of Chang, Kochis '458 and Yokota (see pages 495-548 of the Request for
Reexamination filed 03/22/2013, incorporated by reference).

        These rejections are incorporated by reference as proposed on pages 495-548 of
the Request for Reexamination filed 03/22/2013.

### Declaration under 37 CFR 1.132

13.     The Declaration under 37 CFR 1.132 filed 7/24/2013 is insufficient to overcome
the rejection of claims 1-20 for reasons explained below under "Response to
Arguments".

Application/Control Number: 90/012,816                                    Page 7
Art Unit: 3992

The 37 CFR 1.132 Declaration of Mark Mylinski (incorporated by reference), in

support of the Patent Owner received on 07/24/213, has been considered and entered

into the prosecution record.  Mr. Mylinski discloses (paragraph 1) academic and

professional credentials of one skilled in the art.  It is noted that the Mylinski declaration

does not note, and it is unclear to Examiner, any compensation received or any vested

interest related to the outcome of the proceeding of the reexamination of the '811

patent.  For the record, in order to assess the probative value of an opinion, the

examiner must consider the nature of the matter sought to be established, the strength

of any opposing evidence, *the interest of the expert in the outcome of the case*, and the

presence or absence of factual support for the expert's opinion. (emphasis added).

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 227 USPQ 657

(Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). See also *In re Oelrich*, 579 F.2d

86, 198 USPQ 210 (CCPA 1978) (factually based expert opinions on the level of

ordinary skill in the art were sufficient to rebut the *prima facie* case of obviousness); *Ex*

*parte Gray*, 10 USPQ2d 1922 (Bd. Pat. App. & Inter. 1989) (statement in publication

dismissing the "preliminary identification of a human b-NGF-like molecule" in the prior

art, even if considered to be an expert opinion, was inadequate to overcome the

rejection based on that prior art because there was no factual evidence supporting the

statement); *In re Carroll*, 601 F.2d 1184, 202 USPQ 571 (CCPA 1979) (expert opinion

on what the prior art taught, supported by documentary evidence and formulated prior to

the making of the claimed invention, received considerable deference); *In re Beattie*,

974 F.2d 1309, 24 USPQ2d 1040 (Fed. Cir. 1992) (declarations of seven persons

skilled in the art offering opinion evidence praising the merits of the claimed invention were found to have little value because of a lack of factual support); *Ex parte George*, 21 USPQ2d 1058 (Bd. Pat. App. & Inter. 1991) (conclusory statements that results were "unexpected," unsupported by objective factual evidence, were considered but were not found to be of substantial evidentiary value). However, the lack of clarity noted above is minor. Therefore, in this proceeding, the opinion testimony in support of Patent Owner has been afforded some weight but less than otherwise if the issue of compensation was clearer; however, this is relatively minor issue.

The Mylinski declaration is addressed in more detail with respect to the discussion of issues and response to arguments below.

### *Response to Arguments*

**14.     The rejections of claims 7-10 and 12-16 under 35 U.S.C. § 103(a) as being obvious over Kang in view of Chang and Kurosaki.**

**PO's Arguments:**

In the Request, the Requester asserted that Kang teaches combining a facsimile device with a personal computer. Request at p. 41. Chang was asserted as teaching an interface for connecting a fax machine to a personal computer. Id. at p. 42. Kurosaki is asserted as teaching the use of an "unmodified standard protocol for shifting a computer to a connected mode for sending or receiving signals with a fax machine." and that it shows and discloses direct connection of the PC and the fax via RS-232." Id. at p. 43.

With regard claim 7 and to the Requesters assertion that Kang teaches using "an unmodified standard protocol for shifting the personal computer to a connected mode for sending or receiving digital signals," the patent owner respectfully submits that Kang teaches a facsimile device and computer that communicates using a protocol that does not conform to any particular standard communications protocol, and thus does not teach either a standard or unmodified standard communications protocol.  As specified in TABLE 2, to enable the communications between their facsimile device and the computer, the control codes of TABLES 2, 3, 4 and 5 must be communicated in a specific fashion to enable the various modes of operation, as described in col., 3, line 27 - col. 4, line 23, and col. 4, lines 28-039. The control codes are shown in FIG. 3 as being pre-pended to the image information as part of the data that is communicated between the facsimile device and the computer. Thus, PO argues Kang requires that the facsimile device and the computer must each be equipped with non-standard protocol send/receive driver communications software, as both the facsimile device and the computer must include such non-standard software to enable them to understand the disclosed (and claimed) non-standard control codes of TABLE 2, 3, 4 and 5. As a result, PO argues the "unmodified standard protocol" of the instant patent claims is clearly absent in the teachings of Kang.

With regard to Chang, the Requester makes no mention of any teaching of an "unmodified standard protocol" as recited in the claims. The patent owner agrees, as Chang is completely silent with regard to this feature of the claims.

Application/Control Number: 90/012,816                                    Page 10
Art Unit: 3992

The Requester alternatively cites to Kurosaki as teaching the limitation of using "an unmodified standard protocol for shifting the personal computer to a connected mode for sending or receiving digital signals." The patent owner respectfully submits that the Requester's characterization of Kurosaki in the Request is erroneous. In particular, Kurosaki teaches a state table of the protocol signaling and commands that transpire between the PC and the fax machine, and also between the fax machine and a remote fax machine. These protocol and signaling commands are shown operated in 5 "phases" labeled A-E. The patent owner notes that RS-232 protocol signaling between the PC and the fax are only used in Phases A and C. CCITT T30 protocol commands are used in phases B, D and E, however CCITT T30 commands only apply to fax-to-fax communications (i.e., the cited example is not used between a fax a PC). Thus, PO argues Kurosaki's use of CCITT Group 1, 2, 3 standard protocol (an "unmodified standard protocol") only relates to the fax machine and does not apply or qualify the protocol used between the fax machine and the PC. In other words, PO argues the CCITT Group 1, 2, 3 standard protocol is not applicable to the direct connection between the facsimile machine and the personal computer recited in the claims and asserted by the Requester on pp, 46 and 64-65 of the Request. As such, PO argues the Requesters attempt to read the claim limitation "unmodified standard protocol" on Kurosaki is erroneous as it does not apply to the direct connection between the fax machine and the personal computer.

The patent owner notes that the Request on p. 65 correctly refers to the use of CCITT T30 in "phases B, D and E." As noted above, these phases are only directed to

communications that transpire between the fax and the remote fax, and do not apply to any communications that transpire between the fax machine and the PC. However, PO argues immediately following the above, the Requester mistakenly (or incorrectly) refers to use of the CCITT T30 protocol as being used in the "A-E phases" of communication. As noted in claim 7, if the "...send/receive driver communications software enabling the transfer of the scanning and printing signals between the computer and the facsimile machine." were incorporated into Kurosaki it would not work. PO argues there would be a hardware and software conflict, because Kurosaki's Broadcast fax was designed to enable a fax connection through the PNTL, and RS 232 lines were selected for such transmissions.

Further, PO argues the claims reference a bi-directional direct connection enabling said connection to transmit scan and print digital image data between the facsimile machine and the computer. PO argues Kurosaki does not use a bi-directional direct connection between the facsimile machine and the computer to transmit scan and print digital image data between the facsimile machine and the computer. Kurosaki uses a one way connection for scanning only and a one way connection for broadcasting data over a telephone line for faxing in the other direction. As such, PO argues Kurosaki, does not perform the same function as recited in the claims, and cannot without major design changes to the disclosed system.

Thus, in view of the above, the patent owner submits that no proper combination of the references teaches the subject matter of claim 7, as none of the references alone or properly combined teaches using "an unmodified standard protocol for shifting the

personal computer to a connected mode for sending or receiving digital signals." As

such, PO argues claims 7 and 8-10, which depend from claim 7, should be confirmed.

Claim 12 recites "using an unmodified standard protocol for shifting the personal

computer to an off-hook condition, or connection mode for sending or receiving signals."

While not identical to claim 7, the Requester asserted that this limitation reads on Kang

and Kurosaki in a similar fashion as claim 7. However, for the reasons noted above, the

patent owner respectfully submits that claims 12 and 13-16, which depend from claim

12, should be confirmed over the proposed combination, as none of the references

alone or properly combined teaches "using an unmodified standard protocol for shifting

the personal computer to an off-hook condition, or connection mode for sending or

receiving signals."

Accordingly, the patent owner respectfully requests reconsideration and

withdrawal of the rejection under 35 U.S.C. § 103.


**Examiner's Response:**


Examiner notes pages 62-65 of the Request indicate Kang discloses "shifting the

personal computer to a connected mode for sending or receiving digital signals" and

Kurosaki is relied upon to teach "using an unmodified standard protocol".

Regarding PO's argument that RS-232 protocol signaling between the PC and

the fax are only used in Phases A and C and the CCITT T30 commands only apply to

fax-to-fax communications (i.e., the cited example is not used between a fax a PC),

Application/Control Number: 90/012,816                                    Page 13
Art Unit: 3992

Examiner disagrees.  Kurosaki is directed to communications between a fax and PC.

See page 1-2 and figures 1-4.   Further, Kurosaki discloses the PC and fax are

connected with a RS232C interface (a standard interface for connecting faxes to

personal computers, etc., based on CCITT recommendations) signal control line.  See

page 2, column 1.  Kurosaki states "fax transmission functions can be implemented by

connecting a PC and FAX using the lines of the RS232C interface, wherein the existing

hardware and software of the fax are used for T30 phase B, D, and E protocol control".

See page 2.  Further, Kurosaki discloses there is no need to add new hardware or to

modify the PC or fax, the existing PC and fax functions are made use of as they are.

See page 2.  Figure 4 discloses the use of phases A-E of the standard T.30 protocol for

communications between the PC and fax machine.  CCITT T.30 fax protocol specifies

five phases for the flow of a fax session as depicted in figure 4.  It does not **only** apply

to phases B, D, and E.  Thus, Kurosaki discloses performing communications between

the fax and computer by using each device in its standard, unmodified form.  Examiner

disagrees that the T30 commands only apply to fax-to-fax communications as page 2

and figure 4 show PC to fax communications.

Regarding PO's argument that Kurosaki does not use a bi-directional direct

connection between the facsimile machine and the computer to transmit scan and print

digital image data between the facsimile machine and the computer, Examiner notes

Kang in view of Chang and Kurosaki is relied upon to teach this feature. Specifically,

Kang is relied upon to teach this limitation.  See pages 65-66 of the Request.

15.     **The rejections of claims 1-4 and 20 under 35 U.S.C. § 103(a) as being obvious over Kang in view of Kochis '762.**

**PO/Declarant Arguments:**

In the Request, the Requester asserted that Kang teaches combining a facsimile device with a personal computer. Request at p. 41. Kochis '762 is asserted as teaching "generic" send/receive driver communications software. Id at p. 207.  PO argues submitted herewith is a Declaration of Mark Myslinski, who provides a discussion of the term "generic," as it applies to the recited "send/receive driver communications software" in U.S. Patent No. 6,894,811 ("the 811 patent"). In particular, Mr. Myslinski sets forth the understanding that one of ordinary skill in the art would have had at the time of filing of the 811 patent. PO argues the "generic send/receive driver communications software" of the 811 patent would be understood by one of ordinary skill in the art to be communications software that is not customized and not tailored to a specific application or process, and in this sense a characteristic of commercial off-the-shelf communications software. Declaration of Mark Myslinski at ¶ 17. PO argues the 811 patent explicitly discloses "Generic Send/Receive Communication Software" in FIG. 2g. Id., at ¶ 8. The 811 patent further teaches in col. 8, lines 4-26, that scan and print functions of a personal computer and a facsimile machine are accomplished using digital data that is communicated between the personal computer and the facsimile machine by the "generic send/receive driver communications software." Id.  PO argues the 811 patent teaches that the Rockwell chip series is an example of hardware that

Application/Control Number: 90/012,816                                    Page 15
Art Unit: 3992

was capable of communicating serial digital data between a facsimile machine and a personal computer to accomplish the above. Id., at ¶ 9. Data sheets associated with the Rockwell chip series referenced in the spec and extracted from the inventor's archive from the time of the 811 filing provide several examples of communication software packages that were capable of operating with the Rockwell chip series. Id. at ¶ 12. PO argues all of the identified software falls into a category of commercial off-the-shelf communication software that conformed to common industry-wide standards. Id., at ¶ 13.  As such, PO argues the extrinsic evidence associated with the explicitly disclosed Rockwell chip series confirms the understanding set forth by Mr. Myslinski that "generic send/receive driver communications software," would have been understood to be "software that is not customized and not tailored to a specific application or process, and in this sense a characteristic of commercial off-the-shelf communications software."

PO argues the software in the references asserted by the Requester to be "generic send/receive driver communications software" is customized and/or not commercial off- the-shelf communication software, and thus fails to teach or suggest the use of "generic send/receive driver communications software" recited in the claims.

PO argues Kang teaches a facsimile device and computer that communicate in a specific manner that could not be accomplished using "generic send/receive driver communications software." As specified in TABLE 2, to enable the communications between their facsimile device and the computer, the control codes of TABLES 2, 3, 4 and 5 must be communicated in a specific fashion to enable the various modes of operation, as described in col., 3, line 27 - col. 4, line 23, and col. 4, lines 28 - 39. The

control codes are shown in FIG. 3 as being pre-pended to the image information as part

of the data that is communicated between the facsimile device and the computer. Thus,

PO argues Kang requires that the facsimile device and the computer must each be

equipped with specific, proprietary (i.e., non-generic), send/receive driver

communications software, as both the facsimile device and the computer must include

such specific proprietary software to enable them to understand the disclosed (and

claimed) non-standard control codes of TABLE 2, 3, 4 and 5. PO argues such software

is customized and not commercial off-the-shelf software.  As a result, PO argues

"generic send/receive driver communications software" of the instant patent claims

would not be able to communicate using the control codes of Kang, and thus does not

read on Kang.

In the alternative, on pages 219-220 (claim 1) and 237-238 (claim 20) of the

Request, the Requester cites to Kochis '762 as disclosing "generic send/receive driver

communications software." The Requestor noted that Kochis '762 teaches a memory

312 that contains user software 314 and an operating system 316. The Requester cited

the Printer Command Language (PCL) driver software 318 that is used by the user

software 314 to communicate to the printer 206 through the switch 230; a Scanner

Command Language (SCL) driver module 320 that is used to communicate to a

scanner device within the Multi-Functional Peripheral Device 204; and a FAX Command

Language (FCL) driver module 322 that is used by the user software 314 to control all

FAX functions within the Multi-Functional Peripheral Device 204. Kochis '762 at col. 4,

lines 18-29; Fig. 3.

Application/Control Number: 90/012,816                                      Page 17
Art Unit: 3992

　　　　The patent owner notes that Kochis 762's SCL, PCL and FCL driver software are
not commercial off-the-shelf software (i.e. not "generic send/receive driver
communications software"), rather they are application specific, proprietary command
language routines created using a PC's command language utility. In accordance with
the teaching of Kochis '762, the PC must be retrofitted with three separate send/receive
driver software applications, each individually communicating to the separately
disclosed printer, scanner and fax devices depending on whether printing, scanning or
faxing was to be performed (i.e., that is the reason for the different drivers). Further, PO
argues Kochis '762 uses a Non-Standard Facility (NSF) of Group III Fax protocol. Thus,
PO argues Kochis '762 is customized for a particular purpose as the NSF enables a
completely proprietary mode wherein the endpoint devices can use any page
transmission techniques they can mutually agree upon. As such, PO argues Kochis '762
fails to teach or suggest "generic send/receive driver communications software."

　　　　PO argues as neither Kang, nor Kochis '762 teach or suggest "generic
send/receive driver communications software," the patent owner respectfully submits
that no proper combination of the references teaches the subject matter of claims 1 and
20. Claims 2-4 patentably define over the proposed combination for at least the reason
that they depend from an allowable base claim.  Accordingly, the patent owner
respectfully requests reconsideration and withdrawal of the rejection under 35 U.S.C. §
103.


**Examiner's Response:**

**16.    "Interpretation of "generic send/receive driver communications software"**

Examiner does not agree with PO and Declarant that the term "generic send/receive driver communication software" is limited to "software that is not customized and not tailored to a specific application or process" and/or is characteristic of commercial off-the-shelf communications software.  Examiner further disagrees that the software packages must be interchangeable and interoperable per the standard, thus validating them as not customized nor tailored for a specific application or process.

During reexamination, claims are given the broadest reasonable interpretation consistent with the Specification and limitations in the Specification are not read into the claims (in re Yamamoto, 740 F.2d 1569, 222 USPQ 934 (Fed. Circ. 1984)).  It is noted the terms "commercial", "off-the-shelf", and "interchangeable and interoperable" do not appear in the '811 Patent.  The scope of the term "generic" is broader than the definition set forth by the PO and Declarant in relying on the use of Rockwell chip hardware and commercial software.  Specifically, PO and Declarant rely on or present evidence based on the reference to the "Rockwell chip series" in column 8 of the '811 patent; however, the reference to the Rockwell chip series is merely an example.  See column 8, lines 11-14 which states "The aforementioned procedure utilizes unused signal lines which are available on most modem chips **such as the Rockwell chip series"**.  The Rockwell chip is merely cited as an exemplary embodiment and is not the only hardware that can be used according to the '811 specification. In other words, the invention fails to preclude other hardware, firmware, and/or software to perform the steps/functions

claimed as the '811 patent is not limited to commercial software products or the Rockwell chip series.

Thus, PO and Declarant's proposed definition is not the only definition consistent with the specification.   The broadest reasonable interpretation of the term "generic" consistent with the '423 patent without improperly importing limitations into the claims regards its plain meaning of 'pertaining to or describing an entire group or class: GENERAL' as defined in Webster's II New Riverside University Dictionary, copyright 1984, 1988, 1994 by Houghton Mifflin Company, or similar.   Thus the broadest reasonable interpretation of "generic" is not limited to require commercial off the shelf software that is not customized or not tailored to a specific application or process. Further, column 8, lines 23-25 discloses "any available send/receive communications software package is acceptable".   The broadest reasonable interpretation of the term "generic send/receive driver communication software", in light of the Specification, is "any available send/receive communications software package" or general send/receive communications software package.   "Any available send/receive communications software package" does not preclude proprietary software as argued by the PO and Declarant with respect the applied references specifically (addressed in more detail in the relevant sections below).

PO and Declarant argue this term means any available commercial off-the-shelf communication software that is not customized and not tailored to a specific application or process; however, the Specification does not support only this interpretation.   "Any available send/receive communications software package" allows for propriety software

Application/Control Number: 90/012,816                                    Page 20
Art Unit: 3992

using the same structure to perform the same steps.  Words in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning.  *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999).  In the '811 patent, the Specification does not make clear that the phrase "generic send/receive driver communications software" **only** carries a special meaning as put forth by the PO and Declarant.

Accordingly, Examiner interprets "generic send/receive driver communications software" as "any available send/receive communications software package".


### 17.    Kang in view of Kochis '762

While PO argues Kang does not teach "generic send/receive driver communications software", it is noted Kochis '762 has been relied upon to teach "generic send/receive driver communications software" in the rejections.

As stated above, the term "generic send/receive driver communications software" is given its broadest reasonable interpretation.   "Generic" is interpreted as 'pertaining to or describing an entire group or class:  GENERAL'.  Thus, "generic send/receive driver communications software" is interpreted as "any available send/receive communications software package" as specified in column 8, lines 23-25 of the '811 patent or "general send/receive driver communications software".

Application/Control Number: 90/012,816                                    Page 21
Art Unit: 3992

Kochis '762 discloses "generic send/receive driver communications software".

Kochis '762 discloses a memory contains user software and an OS.  The user software

uses PCL, SCL, and FCL driver modules to communicate to the printer, scanner device,

and FAX respectively.  As stated above regarding the interpretation of "generic

send/receive  driver communications software", Examiner finds this to include "any

available send/receive communications software package" (column 8, lines 23-25 of the

'811 patent).  "Any available send/receive communications software package" allows for

propriety software using the same structure to perform the same steps.  Kochis '762

discloses a memory contains user software 314 and an operating system 316.  The

user software uses PCL, SCL, and FCL driver modules to communicate to the printer, a

scanner device within the MFPD and to control all fax functions within the MFPD.  See

column 4, lines 18-29 and figure 3.  Kochis '762 discloses "user software" enables

communication with multiple devices, including a facsimile machine.  Further "package"

indicates the claimed software can comprise multiple components.  Accordingly,

Examiner maintains that Kochis '762 teaches "generic send/receive driver

communications software".

Regarding PO's argument that Kochis '762 uses a Non-Standard Facility (NSF)

of Group III fax protocol and thus is customized for a particular purpose as the NSF

enables a completely proprietary mode wherein the endpoint devices can use any page

transmission techniques they can mutually agree upon, Examiner notes this refers to

standardized methods of allowing fax machines to use special features, such as

transferring data without converting it to graphical image format and does not change

the fact that Kochis '762 teaches generic send/receive driver communications software.

Accordingly, the rejection presented in Issue 2 is maintained.

**18.    The rejection of claims 1-5 and 20 under 35 U.S.C. § 103(a) as being**

**obvious over Kang in view of Kochis '458 and Kochis '762.**

**PO's Arguments:**

PO argues in the Request, the Requester asserted that Kang teaches combining

a facsimile device with a personal computer. Request at p. 41. Kochis '458 is asserted

as teaching using an unmodified standard protocol - the CCITT FAX protocol. Id at p.

98. Kochis '762 is asserted as teaching "generic send/receive driver communications

software." Id. at p. 207.

PO presents the same arguments with respect to Kang and Kochis '762 as

presented under section II above.

In the alternative, on pages 249-250 (claim 1) and 270-272 (claim 20) of the

Request, the Requester cites to Kochis '458 as teaching "software" that performs the

function of "generic send/receive driver communications." While the patent owner

acknowledges that Kochis '458 teaches "software," the patent owner disagrees that the

Kochis '458 teaches "generic send/receive driver communications software," as

explicitly recited in the claims. MPEP §2111 provide guidance regarding claim

construction. The patent owner notes that it would be improper to interpret the recitation

of "generic send/receive driver communications software" of claims 1 and 20 as

"software," as proposed by the Requester, as explicitly recited terms and limitations are

ignored by such an interpretation. Further, the Requester references Fig 3 and Fig 7 in

Kochis '458 as teaching software that allows the computer to receive files. Request at

pp. 250 and 271. PO argues neither of these figures state or impute the term "generic,"

nor demonstrate that the driver software is commercial off-the-shelf software. The

Requester also cites to Kochis '458 at column 6, lines 17-19 and lines 48-50. However,

PO argues here again there are no mention or implications to the usage of "generic"

software. As such, PO argues Kochis '458 fails to teach or suggest "generic

send/receive driver communications software."

PO argues as neither Kang, nor Kochis '458, nor Kochis '762 teach or suggest

"generic send/receive driver communications software," the patent owner submits that

no proper combination of the references teaches the subject matter of claims 1 and 20.

Claims 2-4 patentably define over the proposed combination for at least the reason that

they depend from an allowable base claim. Accordingly, the patent owner respectfully

requests reconsideration and withdrawal of the rejection under 35 U.S.C. § 103.


**Examiner's Response:**

While PO argues Kang and Kochis '458 do not teach "generic send/receive driver

communications software", it is noted Kochis '762 has been relied upon to teach

"generic send/receive driver communications software" in the rejections.

Application/Control Number: 90/012,816                                        Page 24
Art Unit: 3992

As stated above, the term "generic send/receive driver communications software" is given its broadest reasonable interpretation.   "Generic" is interpreted as 'pertaining to or describing an entire group or class:  GENERAL'.  Thus, "generic send/receive driver communications software" is interpreted as "any available send/receive communications software package" as specified in column 8, lines 23-25 of the '811 patent or "general send/receive driver communications software".

Kochis '762 discloses generic send/receive driver communications software.  A memory contains user software and an OS.  The user software uses PCL, SCL, and FCL driver modules to communicate to the printer, scanner device, and FAX respectively.  As stated above regarding the interpretation of "generic send/receive driver communications software", Examiner finds this to include "any available send/receive communications software package" (column 8, lines 23-25 of the '811). Kochis discloses a memory contains user software 314 and an operating system 316. The user software uses PCL, SCL, and FCL driver modules to communicate to the printer, a scanner device within the MFPD and to control all fax functions within the MFPD.  See column 4, lines 18-29 and figure 3.  Kochis '762 discloses "user software" enables communication with multiple devices, including a facsimile machine.  Further "package" indicates the claimed software can comprise multiple components. Accordingly, Examiner maintains that Kochis '762 teaches "generic send/receive driver communications software".

Regarding PO's argument that Kochis '762 uses a Non-Standard Facility (NSF) of Group III fax protocol and thus is customized for a particular purpose as the NSF

enables a completely proprietary mode wherein the endpoint devices can use any page

transmission techniques they can mutually agree upon, Examiner notes this refers to

standardized methods of allowing fax machines to use special features, such as

transferring data without converting it to graphical image format and does not change

the fact that Kochis '762 teaches generic send/receive driver communications software.

Accordingly, the rejections presented in Issue 3 is maintained.

**19. Claims 1-4 and 20 are rejected under 35 U.S.C. § 103 (a) as being obvious over Kang in view of Yokota.**

**PO's Arguments:**

In the Request, the Requester asserted that Kang teaches combining a facsimile

device with a personal computer. Request at p. 41. Yokota is asserted as teaching a

personal computer and a facsimile machine connected by ports and as teaching

"generic send/receive driver communications software." Id. at p. 273.

PO presents the same arguments with respect to Kang as presented under

section II above.

In the alternative, on pages 284-285 (claim 1) and 302-303 (claim 20) of the

Request, the Requester cites to Yokota as teaching "generic" send/receive driver

communications software because Yokota teaches a driver that is not limited to a single

purpose or function. PO argues this definition of "generic" appears to be different than

that used by the Requester in the above combinations, as the Requester previously

asserted references as teaching "generic" because the allegedly taught "communication

software characterized as general-purpose."

However, PO argues Yokota teaches a store and forward process as part of the

device-to-device communications whereby there is intervening processes that occurs

between two memory means in the PC prior to permanent storage of data received from

the fax machine. Interrupt Service Routines (ISRs) are an integral function/process of a

software driver. Yokota discloses development or modification of each of the PC and fax

device's standard driver software via their ISRs of which makes the send/receive driver

communication software in each device non-generic, as they are specifically designed

to work together. PO argues commercially available off-the-shelf software is not taught

by, nor would it operate in Yokota. Further, PO argues Yokota beginning at column 4,

line 54, teaches "except for the common memory 34, the above ports, registers and the

like are constructed on one or more gate arrays," which suggests modifications are

made to the hardware of the PC, and apparently specific to the data communications

port.

Pertaining to the intervening processes, PO argues Yokota at column 14, line 53,

teaches, "...the image data which was formed by the application software and which is

the data to be printed and output as a visible image by the fax can also be directly

transmitted to a remote facsimile apparatus." PO argues while the word direct is used

here, it is clear from the description of the element and the existence of the shared

memory for the data transfer that a direct transfer is not being used. Rather an indirect

shared memory approach is described using proprietary and non-standard software. As

such, PO argues Yokota fails to teach or suggest "generic" send/receive driver

communications software.

PO argues as neither Kang, nor Yokota teach or suggest "generic send/receive

driver communications software," the patent owner respectfully submits that no proper

combination of the references teaches the subject matter of claims 1 and 20. Claims 2-4

patentably define over the proposed combination for at least the reason that they

depend from an allowable base claim.  Accordingly, the patent owner respectfully

requests reconsideration and withdrawal of the rejection under 35 U.S.C. § 103.


**Examiner's Response:**

Examiner refers to the Examiner's Response in the sections above with respect

to Kang.

Regarding PO's argument that Yokota does not teach "generic send/receive

driver communications software", Examiner disagrees.  It is noted that PO does not

appear to argue whether Yokota teaches send/receive driver communications software,

only that Yokota fails to teach it is generic as it is not commercially available and is

proprietary.

As stated above, Examiner is interpreting generic send/receive driver

communications software as "any available send/receive communications software

package" or "general send/receive driver communications software" and is not limited to

commercial off the shelf software. Yokota teaches ordinarily when an application

software using the image scanner (PC scanner) is started, the scanner driver is loaded

Application/Control Number: 90/012,816                                      Page 28
Art Unit: 3992

into the memory before the application software is started.  However, in the

embodiment, a driver having three functions of the personal computer scanner, FAX

scanner, and FAX reception data which have been prepared is provided and they are

previously loaded before the application is started (column 12, lines 37-44).  Thus,

Yokota discloses generic send/receive driver communications software.

     With respect to PO's argument that Yokota describes using an indirect shared

memory using proprietary and non-standard software, Examiner notes "any available

send/receive driver communications software does not preclude proprietary software.


**20.     The rejection of claims 1-5 and 20 under 35 U.S.C. § 103(a) as being**

**obvious over Kang in view of Kochis '458 and Yokota.**

**PO's Arguments:**

     In the Request, the Requester asserted that Kang teaches combining a facsimile

device with a personal computer. Request at p. 41. Kochis '458 is asserted as teaching

using an unmodified standard protocol - the CCITT FAX protocol. Id at p. 98.

     PO presents the same arguments with respect to Kang and Kochis '458 as

presented under section II and III above.  PO also presents the same arguments with

respect to Yokota as presented in section IV above.

     As neither Kang, nor Kochis '458, nor Yokota teach or suggest "generic

send/receive driver communications software," the patent owner submits that no proper

combination of the references teaches the subject matter of claims 1 and 20. Claims 2-5

patentably define over the proposed combination for at least the reason that they

depend from an allowable base claim.

Accordingly, the patent owner respectfully requests reconsideration and

withdrawal of the rejection under 35 U.S.C. § 103.


**Examiner's Response:**

Examiner refers to the sections above in response to these arguments.


**21. The rejections of claims 6, 18 and 19 under 35 U.S.C. § 103(a) as being**

**obvious over Kang in view of Chang and Kochis '762.**


**PO's Arguments:**

In the Request, the Requester asserted that Kang teaches combining a facsimile

device with a personal computer. Request at p. 41. Chang was asserted as teaching an

interface for connecting a fax machine to a personal computer. Id. at p. 42. Kochis '762

is asserted as teaching "generic" send/receive driver communications software. Id at p.

207.

PO presents the same arguments with respect to Kang and Kochis '762 as

presented in section II above.

With regard to Chang, PO argues the Requester makes no mention of any

teaching of an "unmodified standard protocol" as recited in the claims. The patent owner

agrees, as Chang is completely silent with regard to this feature of the claims.

Application/Control Number: 90/012,816                                          Page 30
Art Unit: 3992

As neither Kang, nor Chang, nor Kochis '762 teach or suggest "generic send/receive driver communications software," the patent owner respectfully submits that no proper combination of the references teaches the subject matter of claims 6, 18 and 19.

Accordingly, the patent owner respectfully requests reconsideration and withdrawal of the rejection under 35 U.S.C. § 103.

**Examiner's Response:**

Examiner refers to the sections above in response to these arguments.

**22.  The rejection of claims 6, 18 and 19 under 35 U.S.C. § 103(a) as being obvious over Kang in view of Chang,  Kochis '458 and Kochis '762.**

**PO's Arguments:**

In the Request, the Requester asserted that Kang teaches combining a facsimile device with a personal computer. Request at p. 41. Chang was asserted as teaching an interface for connecting a fax machine to a personal computer. Id at p. 42. Kochis '458 is asserted as teaching using an unmodified standard protocol - the CCITT FAX protocol. Id at p. 98. Kochis '762 is asserted as teaching "generic" send/receive driver communications software. Id. at p. 207.

Application/Control Number: 90/012,816                                      Page 31
Art Unit: 3992

PO presents the same arguments with respect to Kang and Kochis '762 as presented under section II above.  PO presents the same arguments with respect to Kochis '458 as presented in section III above.

With regard to Chang, PO argues the Requester makes no mention of any teaching of an "unmodified standard protocol" as recited in the claims. The patent owner agrees, as Chang is completely silent with regard to this feature of the claims.

PO argues neither Kang, nor Chang, nor Kochis '458, nor Kochis '762 teach or suggest "generic send/receive driver communications software," the patent owner respectfully submits that no proper combination of the references teaches the subject matter of claims 6, 18 and 19.

Accordingly, the patent owner requests reconsideration and withdrawal of the rejection under 35 U.S.C. § 103.

**Examiner's Response:**

Examiner refers to the sections above in response to these arguments.

**23.  The rejection of claims 6, 18, and 19 under 35 U.S.C. § 103(a) as being obvious over Kang in view of Chang and Yokota.**

**PO's Arguments:**

Application/Control Number: 90/012,816                                    Page 32
Art Unit: 3992

In the Request, the Requester asserted that Kang teaches combining a facsimile device

with a personal computer. Request at p. 41. Chang was asserted as teaching an

interface for connecting a fax machine to a personal computer. Id. at p. 42. Yokota is

asserted as teaching a personal computer and a facsimile machine connected by ports

and as teaching "generic" send/receive driver communications software. Id. at p. 273.

     PO presents the same arguments presented in the sections above with respect

to Kang, Chang, and Yokota.


**Examiner's Response:**

     Examiner refers to the sections above in response to these arguments.


**24. Claims 6, 18, and 19 are rejected under 35 U.S.C. § 103(a) as being obvious**

**over Kang in view of Chang, Kochis '458 and Yokota.**


**PO's Arguments:**

     PO presents the same arguments presented in the sections above with respect

to Kang, Chang, Kochis '458, and Yokota.

     As neither Kang, nor Kochis '458, nor Yokota teach or suggest "generic

send/receive driver communications software," the patent owner respectfully submits

that no proper combination of the references teaches the subject matter of claims 6, 18

Application/Control Number: 90/012,816                                      Page 33
Art Unit: 3992

and 19.  Accordingly, the patent owner respectfully requests reconsideration and

withdrawal of the rejection under 35 U.S.C. § 103.


**Examiner's Response:**

Examiner refers to the sections above in response to these arguments.



**Conclusion**

**25.     THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire **one**

**month** from the mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to

parties in a reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR

1.550(a), it is required that reexamination proceedings "will be conducted with special

dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37**

**CFR 1.550(c).**  A request for extension of time must be filed on or before the day on

which a response to this action is due, and it must be accompanied by the petition fee

set forth in 37 CFR 1.17(g).  The mere filing of a request will not effect any extension of

Application/Control Number: 90/012,816                    Page 34
Art Unit: 3992

time.  An extension of time will be granted only for sufficient cause, and for a reasonable

time specified.

The filing of a timely first response to this final rejection will be construed as

including a request to extend the shortened statutory period for an additional month,

which will be granted even if previous extensions have been granted.  In no event

however, will the statutory period for response expire later than SIX MONTHS from the

mailing date of the final action.  See MPEP § 2265.


26.    All correspondence relating to this inter partes reexamination proceeding should

be directed:

By Mail to:      Mail Stop *Inter Partes* Reexam
                 Central Reexamination Unit
                 Commissioner for Patents
                 United States Patent & Trademark Office
                 P.O. Box 1450
                 Alexandria, VA 22313-1450

By FAX to:       (571) 273-9900
                 Central Reexamination Unit

By hand:         Customer Service Window
                 Randolph Building
                 401 Dulany Street
                 Alexandria, VA 22314

Registered users of EFS-Web may alternatively submit such correspondence via the

electronic filing system EFS-Web, at:


https://efs.uspto.gov/efile/myportal/efs-registered

Application/Control Number: 90/012,816                                    Page 35
Art Unit: 3992

EFS-Web offers the benefit of quick submission to the particular area of the Office that

needs to act on the correspondence.  Also, EFS-Web submissions are "soft scanned"

(i.e., electronically uploaded) directly into the official file for the reexamination

proceeding, which offers parties the opportunity to review the content of their

submissions after the "soft scanning" process is complete.


Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number 571-272-7705.


/Rachna S Desai/
Primary Examiner
Central Reexamination Unit – Art Unit 3992


Conferees:
/MAS/

/Daniel J Ryman/
Supervisory Patent Examiner, Art Unit 3992

| | Control No. | Patent Under Reexamination |
|---|---|---|
| **Office Action in Ex Parte Reexamination** | 90/012,816 | 6894811 |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | RACHNA DESAI | 3992 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on *7/24/2013* .

     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☒ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-20* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-20* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All   b) ☐ Some*   c) ☐ None    of the certified copies have

     1 ☐ been received.

     2 ☐ not been received.

     3 ☐ been filed in Application No. _____ .

     4 ☐ been filed in reexamination Control No. _____.

     5 ☐ been received by the International Bureau in PCT application No. _____.

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____.

cc: Requester (if third party requester)

| ***Search Notes*** | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012816 | 6894811 |
| | **Examiner** | **Art Unit** |
| | RACHNA DESAI | 3992 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed Patent File's Prosecution History | 04/05/2013 | RSD |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| (barcode) | 90012816 | 6894811 |
| | Certificate Date | Certificate Number |

| Requester Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|

ROPES & GRAY LLP PRUDENTIAL TOWER
800 BOYLSTON STREET
IPRM-FLOOR 43
BOSTON, MA 02199-3600

| **LITIGATION REVIEW** ☒ | /RSD/ (examiner initials) | 09/30/2013 (date) |
|---|---|---|
| Case Name | | Director Initials |
| Infinity Computer Products, Inc. V. Brother International Cor | | |
| Infinity Computer Products, Inc. V. Toshiba America Business | | |
| Infinity Computer Products, Inc V. Oki Data Americas, Inc. 2: | | |
| Infinity Computer Products, Inc. V. Samsung Electronics Ameri | | |
| Infinity Computer Products Inc. V. Lexmark International, Inc | | |
| Infinity Computer Products, Inc V. Canon USA, Inc. 2:12cv800 | | |
| Infinity Computer Products, Inc. V. Eastman Kodak Company 2:1 | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| | |
| | |

| | |
|---|---|
| | |

U̲nited S̲tates P̲atent and T̲rademark O̲ffice

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,817 | 03/22/2013 | 8040574 | 105413-0007-503 | 2462 |

7590          10/29/2013

MARVIN J. NACHMAN
315 SAYBROOK ROAD
VILLANOVA, PA 19085

| EXAMINER |
|---|
| SAGER, MARK ALAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/29/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ROPES & GRAY LLP

PRUDENTIAL TOWER

800 BOYLSTON STREET

IPRM-FLOOR 43

BOSTON, MA 02199-3600

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,817*.

PATENT NO. *8040574*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Application/Control Number: 90/012,817                                    Page 2
Art Unit: 3992

The present proceeding is being examined under the pre-AIA first to invent provisions.

### *Reexamination*

1.      Reexamination continues in response to Patent Owner response that amends claims 1 and

7-8 of United States Patent Number 8040574 (hereinafter Nachman '574 or '574) and provides a

declaration under 1.132.

### Extension of Time

2.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that reexamination proceedings

"will be conducted with special dispatch" (37 CFR 1.550(a)).  Extension of time in *ex parte*

reexamination proceedings are provided for in 37 CFR 1.550(c).

### Identification of References

3.      The following references from page pages 1-2 and 6 of Request are relied on herein:

| U.S. Patent No. 5,390,031 to Kang et al, (hereinafter "Kang") | Exhibit E |
|---|---|
| U.S. Patent No. 5,218,458 to Kochis et al, (hereinafter "Kochis") | Exhibit F |

4.      The following new references are relied on herein solely in reply to added "generic":

| U.S. Patent No. 5,175,762 | Kochis et al, (hereinafter "Kochis '762") |
|---|---|
| U.S. Patent No. 5,598,533 | Yokota et al. (hereinafter "Yokota") |

Application/Control Number: 90/012,817                                      Page 3
Art Unit: 3992

### *Response to Amendment*

5.      The declaration by Mr. Mark Myslinski under 37 CFR 1.132 filed July 26, 2013 is

insufficient to overcome the rejection of claims 1-8 based upon anticipation and/or obviousness

of Kang alone or combined with Kochis as set forth in the last Office action because:  At the

outset, Mr. Mark Myslinski asserts that he is an artisan of the field of invention in this reexam

based on the knowledge/experience submitted in paragraph 1 that avers in part having a BSEE

and having completed nine courses towards a Masters in Digital Communications with

experience in the broadcast and television industry including video-on-demand.  However, while

the recited experience is in the telecommunications and telephone industries, there is no expertise

shown relative to the particularly claimed PC with scan, print and fax functions of the Nachman

patent under reexam.  Also, Mr. Mark Myslinski does not state whether he has been compensated

for his testimony or, if any compensation was received, that it is in no way conditioned on the

outcome of this reexamination.  He also does not state that he has no other affiliation with Patent

Owner/assignee so as to establish whether this expert has any other indirect/direct personal

interest in the outcome of this proceeding.  For the record, in order to assess the probative value

of an opinion, the examiner must consider the nature of the matter sought to be established, the

strength of any opposing evidence, *the interest of the expert in the outcome of the case*, and the

presence or absence of factual support for the expert's opinion. (emphasis added).  *Ashland Oil,*

*Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 227 USPQ 657 (Fed. Cir. 1985), *cert.*

*denied*, 475 U.S. 1017 (1986). See also *In re Oelrich*, 579 F.2d 86, 198 USPQ 210 (CCPA 1978)

(factually based expert opinions on the level of ordinary skill in the art were sufficient to rebut

the *prima facie* case of obviousness); *Ex parte Gray*, 10 USPQ2d 1922 (Bd. Pat. App. & Inter.

Application/Control Number: 90/012,817                                            Page 4
Art Unit: 3992

1989) (statement in publication dismissing the "preliminary identification of a human b-NGF-

like molecule" in the prior art, even if considered to be an expert opinion, was inadequate to

overcome the rejection based on that prior art because there was no factual evidence supporting

the statement); *In re Carroll*, 601 F.2d 1184, 202 USPQ 571 (CCPA 1979) (expert opinion on

what the prior art taught, supported by documentary evidence and formulated prior to the making

of the claimed invention, received considerable deference); *In re Beattie*, 974 F.2d 1309, 24

USPQ2d 1040 (Fed. Cir. 1992) (declarations of seven persons skilled in the art offering opinion

evidence praising the merits of the claimed invention were found to have little value because of a

lack of factual support); *Ex parte George*, 21 USPQ2d 1058 (Bd. Pat. App. & Inter. 1991)

(conclusory statements that results were "unexpected," unsupported by objective factual

evidence, were considered but were not found to be of substantial evidentiary value).  **However,**

**the lack of clarity noted above is minor.  Therefore, in this proceeding, the opinion testimony in**

**support of Patent Owner has been afforded some weight but less than otherwise if the issue was**

**clearer as to impartiality; however, this is relatively minor issue.**

     **Although** factual evidence is preferable to opinion testimony, such testimony is entitled

to consideration and some weight so long as the opinion is not on the ultimate legal conclusion at

issue. While an opinion as to a legal conclusion is not entitled to any weight, the underlying basis

for the opinion may be persuasive. *In re Chilowsky*, 306 F.2d 908, 134 USPQ 515 (CCPA 1962)

(expert opinion that an application meets the requirements of **35 U.S.C. 112** is not entitled to any

weight; however, facts supporting a basis for deciding that the specification complies with **35**

**U.S.C. 112** are entitled to some weight); *In re Lindell*, 385 F.2d 453, 155 USPQ 521 (CCPA

1967) (Although an affiant's or declarant's opinion on the ultimate legal issue is not evidence in

Application/Control Number: 90/012,817                                    Page 5
Art Unit: 3992

the case, "some weight ought to be given to a persuasively supported statement of one skilled in

the art on what was not obvious to him." 385 F.2d at 456, 155 USPQ at 524 (emphasis in

original)).  With consideration of the above cases, the following review of the opinion testimony

is provided.

During reexamination, claims are given the broadest reasonable interpretation consistent

with the specification and limitations in the specification are not read into the claims *(In re*

*Yamamoto,* 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984)).

Also, the weight attached to evidence of secondary considerations by the examiner will

depend upon its relevance to the issue of obviousness and the amount and nature of the evidence.

Note the great reliance apparently placed on this type of evidence by the Supreme Court in

upholding the patent in *United States v. Adams,* 383 U.S. 39,148 USPQ 479 (1966).

Further, to be given substantial weight in the determination of obviousness or

nonobviousness, evidence of secondary considerations *must be relevant to the subject matter as*

*claimed*, and therefore the examiner must determine whether there is a nexus between the merits

of the claimed invention and the evidence of secondary considerations. *Ashland Oil, Inc. v. Delta*

*Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42, 227 USPQ 657, 673-674 n. 42 (Fed. Cir.

1985), *cert. denied,* 475 U.S. 1017 (1986). The term "nexus" designates a factually and legally

sufficient connection between the objective evidence of nonobviousness and the claimed

invention so that the evidence is of probative value in the determination of nonobviousness.

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir.),

*cert. denied,* 488 U.S. 956 (1988).

The following guidance and rulings are relevant in considering the opinion testimony.

Application/Control Number: 90/012,817                                    Page 6
Art Unit: 3992

During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims *(In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984)). The statutory presumption of validity, **35 U.S.C. 282**, has no application in reexamination (*In re Etter*, 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985)). See **MPEP 2258, I, G.**

A mere reference to another application, patent, or publication is not an incorporation of anything therein into the application containing such reference for the purpose of the disclosure required by **35 U.S.C. 112**, first paragraph. *In re Seversky*, 474 F.2d 671, 177 USPQ 144 (CCPA 1973). 37 CFR 1.57(b)(1) limits a proper incorporation by reference (except as provided in 37 CFR 1.57(a)) to instances only where the perfecting words "incorporated by reference" or the root of the words "incorporate" (e.g., incorporating, incorporated) and "reference" (e.g., referencing) appear. The requirement for specific root words will bring greater clarity to the record and provide a bright line test as to where something is being referred to is an incorporation by reference. The Office intends to treat references to documents that do not meet this "bright line" test as noncompliant incorporations by reference and may require correction pursuant to 37 CFR 1.57(g). If a reference to a document does not clearly indicate an intended incorporation by reference, examination will proceed as if no incorporation by reference statement has been made and the Office will not expend resources trying to determine if incorporation by reference was intended.  See MPEP 608.01(p).

Under a broadest reasonable interpretation, words of the claim must be given their plain meaning, unless such meaning is inconsistent with the specification. The plain meaning of a term means the ordinary and customary meaning given to the term by those of ordinary skill in the art at the time of the invention. The ordinary and customary meaning of a term may be evidenced by a variety of sources, including the words of the claims themselves, the specification, drawings, and prior art. However, the best source for determining the meaning of a claim term is the specification - the greatest clarity is obtained when the specification serves as a glossary for the claim terms. The presumption that a term is given its ordinary and customary meaning may be rebutted by the applicant by clearly setting forth a different definition of the term in the specification. *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997) (the USPTO looks to the ordinary use of the claim terms taking into account definitions or other "enlightenment" contained in the written description); *But c.f. In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("We have cautioned against reading limitations into a claim from the preferred embodiment described in the specification, even if it is the only embodiment described, absent clear disclaimer in the specification."). When the specification sets a clear path to the claim language, the scope of the claims is more easily determined and the public notice function of the claims is best served.  See MPEP 2111.01. I.

Although claims of issued patents are interpreted in light of the specification, prosecution history, prior art and other claims, this is not the mode of claim interpretation to be applied during examination. During examination, the claims must be interpreted as

Application/Control Number: 90/012,817                                        Page 7
Art Unit: 3992

broadly as their terms reasonably allow. *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1369, 70 USPQ2d 1827, 1834 (Fed. Cir. 2004) (The USPTO uses a different standard for construing claims than that used by district courts; during examination the USPTO must give claims their broadest reasonable interpretation in light of the specification.). This means that the words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification. *In re Zletz*, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (discussed below); *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372, 69 USPQ2d 1857 (Fed. Cir. 2004) (Ordinary, simple English words whose meaning is clear and unquestionable, absent any indication that their use in a particular context changes their meaning, are construed to mean exactly what they say. Thus, "heating the resulting batter-coated dough to a temperature in the range of about 400°F to 850°F" required heating the dough, rather than the air inside an oven, to the specified temperature.). See MPEP 2111.01. I.

"Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004)(discussing recent cases wherein the court expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment);*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369, 67 USPQ2d 1947, 1950 (Fed. Cir. 2003) ("Interpretation of descriptive statements in a patent's written description is a difficult task, as an inherent tension exists as to whether a statement is a clear lexicographic definition or a description of a preferred embodiment. The problem is to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims."); *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371, 65 USPQ2d 1865, 1869-70 (Fed. Cir. 2003) (Although the specification discussed only a single embodiment, the court held that it was improper to read a specific order of steps into method claims where, as a matter of logic or grammar, the language of the method claims did not impose a specific order on the performance of the method steps, and the specification did not directly or implicitly require a particular order). See MPEP 2111.01. II.

An applicant is entitled to be his or her own lexicographer and may rebut the presumption that claim terms are to be given their ordinary and customary meaning by clearly setting forth a definition of the term that is different from its ordinary and customary meaning(s). See *In re Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed. Cir. 1994) (inventor may define specific terms used to describe invention, but must do so "with reasonable clarity, deliberateness, and precision" and, if done, must "'set out his uncommon definition in some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of the change" in meaning) (quoting *Intellicall, Inc. v.*

*Phonometrics, Inc.*, 952 F.2d 1384, 1387-88, 21 USPQ2d 1383, 1386 (Fed. Cir. 1992)).
Where an explicit definition is provided by the applicant for a term, that definition will
control interpretation of the term as it is used in the claim. *Toro Co. v. White
Consolidated Industries Inc.*, 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir.
1999) (meaning of words used in a claim is not construed in a "lexicographic vacuum,
but in the context of the specification and drawings"). Any special meaning assigned to a
term "must be sufficiently clear in the specification that any departure from common
usage would be so understood by a person of experience in the field of the invention."
*Multiform Desiccants Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477, 45 USPQ2d 1429, 1432
(Fed. Cir. 1998). See also *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350,
1357, 52 USPQ2d 1029, 1033 (Fed. Cir. 1999) and **MPEP § 2173.05(a)**. The
specification should also be relied on for more than just explicit lexicography or clear
disavowal of claim scope to determine the meaning of a claim term when applicant acts
as his or her own lexicographer; the meaning of a particular claim term may be defined
by implication, that is, according to the usage of the term in the context in the
specification. See *Phillips v. AWH Corp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir.
2005) (*en banc*); and *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583,
39 USPQ2d 1573, 1577 (Fed. Cir. 1996). Compare *Merck & Co., Inc., v. Teva Pharms.
USA, Inc.*, 395 F.3d 1364, 1370, 73 USPQ2d 1641, 1646 (Fed. Cir. 2005), where the
court held that patentee failed to redefine the ordinary meaning of "about" to mean
"exactly" in clear enough terms to justify the counterintuitive definition of "about."
("When a patentee acts as his own lexicographer in redefining the meaning of particular
claim terms away from their ordinary meaning, he must clearly express that intent in the
written description."). See MPEP 2111.01. IV.

Although the claims are interpreted in light of the specification, limitations from the
specification are not read into the claims. *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d
1057 (Fed. Cir. 1993) (Claims to a superconducting magnet which generates a "uniform
magnetic field" were not limited to the degree of magnetic field uniformity required for
Nuclear Magnetic Resonance (NMR) imaging. Although the specification disclosed that
the claimed magnet may be used in an NMR apparatus, the claims were not so limited.);
*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571-72, 7 USPQ2d 1057,
1064-1065 (Fed. Cir.), *cert. denied*, 488 U.S. 892 (1988) (Various limitations on which
appellant relied were not stated in the claims; the specification did not provide evidence
indicating these limitations must be read into the claims to give meaning to the disputed
terms.); *Ex parte McCullough*, 7 USPQ2d 1889, 1891 (Bd. Pat. App. & Inter. 1987)
(Claimed electrode was rejected as obvious despite assertions that electrode functions
differently than would be expected when used in nonaqueous battery since "although the
demonstrated results may be germane to the patentability of a battery containing
appellant's electrode, they are not germane to the patentability of the invention claimed
on appeal."). See MPEP 2145. VI.

Application/Control Number: 90/012,817                                     Page 9
Art Unit: 3992

     In consideration of the above, there is no factual support in the Nachman '574 patent that
Patentee acted as their own lexicographer by clearly setting forth a definition of the term
'generic' that is different from its ordinary and customary meaning(s) as similarly noted during
the June 12, 2013 and July 22, 2013 interviews (see respective Examiner interview summaries
mailed June 21, 2013 and Aug 6, 2013). Also, there is no indication that the Rockwell chip
series specifications mentioned in column 8 of Nachman '574 patent is incorporated by
reference. See MPEP 608.01(p) cited above.   The Patent Owner provided opinion testimony
where Mr. Mark Myslinski avers in part that 'generic' send/receive driver communications
software package regards "'commercially' available" (paragraph 10 second occurrence on page
5; it is noteworthy to point out that there exists a paragraph numbering typo in the testimony due
to multiple occurrences of paragraphs numbered 9 and 10 on pages 4 and 5; however, this review
relies on his paragraph numbering with notation to specify particular paragraph when/if
differentiation is necessary), "'off-the-shelf' packages that were generally, commercially
available" (paragraphs 11-13 and 17), are 'interchangeable and interoperable" (paragraphs 11
and 13-14) and "not customized or not tailored to a specific application or process" (paragraphs
9 first occurrence, 15 and 17). It is likewise noteworthy that the Nachman '574 patent does not
use the terms "commercial", "off-the-shelf", "interchangeable and interoperable", or "not
customized or not tailored to a specific application or process" in any form including for the
discussions of figure 2g and the discussions of the Rockwell chip series. In addition, there was
no reference to these terms in the prosecution history to the application becoming the granted
Nachman '574 patent.

Application/Control Number: 90/012,817                                                        Page 10
Art Unit: 3992

      In review of the Nachman '574 patent, the discussion of the Rockwell chip series is only

a data point or one example due in part to the language at 8:10 of 8,040,574 "*such as* the

Rockwell chip series" (emphasis added).  The scope of 'generic' is broader than the embodiment

in '574 relied on by Patentee and Mr. Myslinski due to the use of Rockwell chip series hardware

and commercial software being non-limiting examples in the '574 patent.   It is emphasized from

above that it is improper to rely on a specific embodiment in the '574 Patent specification to

determine the broadest reasonable interpretation of "generic" especially where Patent Owner

failed to act as their own lexicographer.  *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358

F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v.*

*Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004).  In essence, the

opinion testimony relied on by Patent Owner does not show that the Rockwell chip series that are

relied on to establish how one of ordinary skill in the art would interpret the claimed invention

*must be the only* hardware used to enable the invention.  Therefore, the amended invention fails

to preclude other hardware, firmware and/or software to perform the steps/functions claimed.  In

fact, the language of '574 disclosure at 8:10 and Patentee remarks, first complete sentence on

page 5 of their July 26, 2013 reply, essentially indicates the Rockwell chip series is merely a

non-limiting example.  Specifically, the Patent Owner states in-part "The 574 patent teaches that

the Rockwell chip series is *an example* of hardware that was capable of communicating serial

digital data" (emphasis added).   Further, similarly, the discussion in '574 at 5:30-35 of various

software packages and the reference by Mr. Myslinski in paragraphs 10 (page 5) -16 for use of

commercial software packages are also non-limiting examples.  At best the '574 disclosure

indicates software products may be used.  Declarant and Patent Owner improperly import so as

to re-draft the '574 specification to add "commercial" and/or "commercial-off-the-shelf" into
'574 at 8:21-22 for "any available send/receive communications software package". The plain
language in '574 and the reliance on the Rockwell chip series provides no indication for "any
available send/receive communications software package" to be limited to *only* "commercial"
products so as to be read as "*only* any available *commercial* send/receive communications
software package" (emphasis added), or similar phrasing. This is not stating '574 does not
permit use of commercial software products or the Rockwell chip series but instead it is noting
that '574 discloses their use only as non-limiting examples. **Words in patent claims are given
their ordinary meaning in the usage of the field of the invention, unless the text of the patent
makes clear that a word was used with a special meaning.** *Toro Co. v. White Consol. Indus.,
Inc.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999). In the '574 patent, the
Specification does not make clear that the phrase "generic" send/receive driver communications
software **only** carries a special meaning as set forth by the Patentee and Declarant for reasons
noted above.

Thus, the totality of the Mr. Myslinski's opinion testimony for his averment of definitions
of "generic" and "any available send/receive communications software package" as rebuttal
evidence fails to outweigh the anticipation by Kang and/or the obviousness of Kang with other
applied references where the claim language is broader than the embodiment relied on from the
Nachman patent that at best discloses a non-limiting form of the invention where the broadest
reasonable interpretation of the claimed invention consistent with its disclosure without
improperly importing features into the claims overlaps the applied art.

Application/Control Number: 90/012,817                                    Page 12
Art Unit: 3992

### *Response to Arguments*

6.      Patent Owner's arguments with respect to claims 1-8 have been considered but are moot

because the arguments do not apply to any of the new Kochis '762 and Yokota references being

used in the new rejections solely in response to newly added "generic".

7.      Patent Owner's arguments filed July 26, 2013 have been fully considered but they are not

persuasive.  Based in part on testimony by Mr. Myslinski, Patent Owner asserts on pages 4-5 that

the term "generic" as it applies to 'send/receive driver communications software package' would

be interpreted by an artisan to regard "software than is not customized and not tailored to a

specific application or process and in this sense a characteristic of commercial off-the-shelf

communications software".  The Examiner disagrees for reasons stated above in review of the

testimony (supra) where Patent Owner failed to act as their own lexicographer to set out their

uncommon definition(s) with reasonable clarity, deliberateness and precision within in the '574

patent.  See *In re Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed. Cir. 1994)

(inventor may define specific terms used to describe invention, but must do so "with reasonable

clarity, deliberateness, and precision" and, if done, must "'set out his uncommon definition in

some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of

the change" in meaning) (quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88,

21 USPQ2d 1383, 1386 (Fed. Cir. 1992)).  In considering the broadest reasonable interpretation

of claimed invention, the facts in this proceeding with regards to use of term "generic" in figure

2g, mentioning use of Rockwell chip series at 8:8-10 and 'any available send/receive

communications software" at 8:21-22 are in each instance only non-limiting examples (supra).

See MPEP 2111.01 I-II and IV cited above.   Contrary to Patent Owner, in this case, the broadest

reasonable interpretation of the term 'generic' consistent with '574 without improperly importing limitations into the claims regards its plain meaning of 'pertaining to or describing an entire group or class:  GENERAL' as defined in **Webster's II New Riverside University Dictionary,** copyright 1984, 1988, 1994 by Houghton Mifflin Company, or similar, that in no way must be limited to require commercial off the shelf software that is not customized or not tailored to a specific application or process.  Also, Patent Owner states in part, in the first complete sentence on page 5 of their July 26, 2013 response, "The 574 patent teaches that the Rockwell chip series is an example of hardware that was capable of communicating serial digital data". This indicates that the Patent Owner used the Rockwell chip series hardware merely as an example of hardware rather than an essential element that must be used.  Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).  It is emphasized from above that it is improper to rely on a specific embodiment in the '915 Patent to determine the broadest reasonable interpretation of "generic" especially where Patent Owner failed to act as their own lexicographer. *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004). See also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004).  Although the alleged characteristics of 'commercial-off-the-shelf' software of 'not customized' and 'not tailored' may be a form of the invention, as noted in review of the testimony above, they are not limiting as a required element of the claimed invention since that would involve improperly importing elements into the claims (supra).

In review of the rebuttal by Patent Owner on pages 4-6 regarding anticipation by Kang and on pages 6-7 regarding obviousness Kang with Kochis '458, the argument, in summary, is

Application/Control Number: 90/012,817                                    Page 14
Art Unit: 3992

that the applied patents do not teach or suggest the amended invention with 'generic' since the

applied patents are not commercial off the shelf communication software.  Specifically, Patentee

asserts the applied art is customized or tailored for a specific application or process rather than

not being customized for a specific application or process as a characteristic of commercial off

the shelf software.  The examiner disagrees for reasons stated in review of the opinion testimony

above to extent those features (e.g., commercial off the shelf, not customized, not tailored) are

non-limiting.  Thus their rebuttal is not persuasive due to relying on elements/features that are

not claimed.  The scope of claimed invention does not require these features and thus they do not

provide a basis to preclude applied art.

In response to Patent Owner's argument that the references fail to show certain features of

applicant's invention, it is noted that the features upon which applicant relies (i.e., commercial

off the shelf, not customized and not tailored to a specific application or process) are not recited

in the rejected claim(s).  Although the claims are interpreted in light of the specification,

limitations from the specification are not read into the claims.  See *In re Van Geuns*, 988

F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).  Patentee failed to act as their own lexicographer

and the facts relied on merely establishes that '574 discloses these features as non-limiting

examples of the invention; thereby, the claims are not limited to only a form having those

features for reasons noted above (supra) and the broadest reasonable interpretation of '574 as

amended, with consideration of scope of 'generic' and 'any available send/receive

communications software' overlaps the applied art or at least fails to preclude the applied art.

Application/Control Number: 90/012,817                                        Page 15
Art Unit: 3992

### *Claim Rejections - 35 USC § 102*

8.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United
> States before the invention thereof by the applicant for patent, or on an international application by another who
> has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention
> thereof by the applicant for patent.

The changes made to 35 U.S.C. 102(e) by the American Inventors Protection Act of 1999

(AIPA) and the Intellectual Property and High Technology Technical Amendments Act of 2002

do not apply when the reference is a U.S. patent resulting directly or indirectly from an

international application filed before November 29, 2000. Therefore, the prior art date of the

reference is determined under 35 U.S.C. 102(e) prior to the amendment by the AIPA (pre-AIPA

35 U.S.C. 102(e)).

9.     **Claims 1-5 and 8 are rejected under 35 U.S.C. 102(e) as being anticipated by Kang**.

Lacking evidence to the contrary, as would have been interpreted by an artisan at the time of the

invention, the Office agrees with factual findings stated in Request, pages 1-2, 6-10, 16, 18-20

and 24-54, incorporated herein, for cited claims for reasons stated therein with consideration of

response to amendment (paragraph 4) and response to arguments (paragraph 5) above

incorporated herein.  The Request pages 1-2, 6-10, 16, 18-20 are cited due to facts therein

provide additional support to show Kang discloses elements of '574; however, the reliance on the

facts therein is with regards to teachings of Kang under 35 USC 102 rather than in relation to 35

USC 303 and 37 CFR 1.515.  Nachman '574 patent @ 8:21-22 states in part "any available send

receive software package"; thus, lacking evidence to the contrary, the broadest reasonable

interpretation of the claimed communications software and send receive communications

Application/Control Number: 90/012,817                                      Page 16
Art Unit: 3992

software (or similar language) includes the software that enables the communication or transfer

of digital image data between fax machine and computer for scanning and/or printing functions

described in Kang to enable transfer of image data for print/scan between fax and computer.

Also, to clarify record, the citations to Office actions or statements in other proceedings are

considered and relied on herein only to extent discussed in Request for claim interpretation of

language herein or for scope of teachings of applied art herein but is not suggesting applying a

rejection of claims in any of those related proceedings to this proceeding and is not an

incorporation of any proposed rejection herein to any related proceeding discussed.

### *Claim Rejections - 35 USC § 103*

10.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

11.     The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

        1.      Determining the scope and contents of the prior art.
        2.      Ascertaining the differences between the prior art and the claims at issue.
        3.      Resolving the level of ordinary skill in the pertinent art.
        4.      Considering objective evidence present in the application indicating obviousness
                or nonobviousness.

12.     **Claims 1-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kang in**

**view of Kochis '458**.  Discussion above regarding Kang is incorporated herein.  Lacking

evidence to the contrary, as would have been interpreted by an artisan at the time of the

Application/Control Number: 90/012,817                                             Page 17
Art Unit: 3992

invention, the Office agrees with factual findings stated in Request, pages 1-2, 6-10, 16, 18-21,

24-25 and 54-89 incorporated herein, for cited claims for reasons stated therein with

consideration of response to amendment and response to arguments above incorporated herein

where the skill level of an artisan [i.e. one of ordinary skill] is as shown by the applied

references.  The reliance on the facts on pages 1-2, 6-10, 16 and 18-21 therein is with regards to

teachings of Kang with Kochis '458 under 35 USC 102/103 rather than in relation to 35 USC

303 and 37 CFR 1.515.  Also, as stated above, to clarify record, the citations to Office actions or

statements in other proceedings are considered and relied on herein only to extent discussed in

Request for claim interpretation of language herein or for scope of teachings of applied art herein

but is not suggesting applying a rejection of claims in any of those related examinations or

proceedings to this proceeding and is not an incorporation of any proposed rejection herein to

any related prosecution discussed.

13.     **Claims 1-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kang in**

**view of Kochis '762**.  In response to Patent Owner adding 'generic' to claims, in the alternative,

to the extent that Kang discloses the claimed functions/elements including send/receive

communications software but it is not 'generic', Kochis '762 discloses send/receive driver

communications software on a host computer that uses drivers to exchange information with

peripheral devices to perform multiple functions (abstract, 2:7-12, 27-30, 4:1-3, 18-29, 40-61, fig

3) that is general so as to be 'generic' as defined with discussion from Response to Amendment

and Response to Arguments incorporated herein regarding broadest reasonable interpretation of

scope of 'generic'.   Kochis '762 recites: "A memory 312 contains user software 314 and an

operating system 316. Printer Command Language (PCL) driver software 318 is used by the user

Application/Control Number: 90/012,817                                             Page 18
Art Unit: 3992

software 314 to communicate to the printer 206 through the switch 230 of the present invention.

A Scanner Command Language (SCL) driver module 320 is used to communicate to a scanner

device within the Multi-Functional Peripheral Device 204. A FAX Command Language (FCL)

driver module 322 is used by the user software 314 to control all FAX functions within the

Multi-Functional Peripheral Device 204." Kochis '762, col.4 11.18-29, Fig. 3.   Thus, Kochis

'762 is relevant as analogous prior art due to having issued over a year prior to earliest priority of

'574 patent and for being in the same field as the '574 patent.   See *In re Oetiker*, 977 F.2d 1443,

24 USPQ2d 1443 (Fed. Cir. 1992).  The level of ordinary skill is as shown by the applied art.  If

the only facts of record pertaining to the level of skill in the art are found within the prior art of

record, the court has held that an invention may be held to have been obvious without a specific

finding of a particular level of skill where the prior art itself reflects an appropriate level. *Chore-

Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed. Cir. 1983). See

also *Okajima v. Bourdeau*, 261 F.3d 1350, 1355, 59 USPQ2d 1795, 1797 (Fed. Cir. 2001)).  In

consideration of the US Supreme Court decision in KSR v Teleflex, since both Kang and Kochis

'762 teach a method for communicating to receive image information from a telefax device and

to send image information to the telefax device, it would have been obvious to an artisan at the

time of the invention to substitute one method for the other to achieve the predictable result to

fax, scan and print using drivers.  In the alternative, it would have been obvious to apply the

generic send/receive driver communications software/process of Kochis '762 to the method of

Kang to achieve the predictable result to fax, scan and print by driver modules as shown by

Kochis '762.

Application/Control Number: 90/012,817                                          Page 19
Art Unit: 3992

14.      **Claims 1-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kang in**

**view of Yokota.**   In the alternative, in response to Patent Owner adding 'generic' to claims, to

the extent that Kang discloses the claimed functions/elements including send/receive

communications software but it is not 'generic', Yokota discloses send/receive driver

communications software on a host computer that uses modules to exchange information with

peripheral devices to perform multiple functions of print, fax and scan (abstract, 4:47-50, 12:37-

44, fig 1 and 6-17) that is general so as to be 'generic' as broadly defined with discussion from

Response to Amendment and Response to Arguments incorporated herein regarding broadest

reasonable interpretation of scope of 'generic'.   Yokota teaches, in particular, the use of general

purpose driver communications software with multiple applications: "Ordinarily, when an

application software using the image scanner (PC scanner) is started, the scanner driver is loaded

into the memory before the application software is started. However, in the embodiment [under

discussion], <u>a driver having three functions of the personal computer scanner, FAX scanner, and</u>

<u>FAX reception data which have been prepared is provided </u>and they are previously loaded before

the application is started." Col.12 11.37-44 (emphasis added). Yokota thus discloses a general

send/receive driver communications software.  Thus, Yokota is relevant as analogous prior art

due to claiming priority to an application that predates the earliest priority of '574 patent and for

being in the same field as the '574 patent.   See *In re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443

(Fed. Cir. 1992).  The level of ordinary skill is as shown by the applied art.  If the only facts of

record pertaining to the level of skill in the art are found within the prior art of record, the court

has held that an invention may be held to have been obvious without a specific finding of a

particular level of skill where the prior art itself reflects an appropriate level. *Chore-Time*

Application/Control Number: 90/012,817                                      Page 20
Art Unit: 3992

*Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed. Cir. 1983). See also

*Okajima v. Bourdeau*, 261 F.3d 1350, 1355, 59 USPQ2d 1795, 1797 (Fed. Cir. 2001)). In

consideration of the US Supreme Court decision in KSR v Teleflex, since both Kang and Yokota

teach a method for communicating to receive image information from a telefax device and to

send image information to the telefax device, it would have been obvious to an artisan at the time

of the invention to substitute one method for the other to achieve the predictable result to telefax,

scan and print by use of modules/routines. Alternatively, it would have been obvious to apply

the generic send/receive driver communications software/process of Yokota to the method of

Kang to achieve the predictable result to fax, scan and print by use of modules/routines.


*Conclusion*

15.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 8040574 throughout the course of this reexamination proceeding. The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282

and 2286.

16.     **THIS ACTION IS MADE FINAL.**

        A shortened statutory period for response to this action is set to expire two from the

mailing date of this action.

        **Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

Application/Control Number: 90/012,817                                    Page 21
Art Unit: 3992

reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that

reexamination proceedings "will be conducted with special dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37 CFR**

**1.550(c).**  A request for extension of time must be filed on or before the day on which a response

to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g).

The mere filing of a request will not effect any extension of time.  An extension of time will be

granted only for sufficient cause, and for a reasonable time specified.

The filing of a timely first response to this final rejection will be construed as including a

request to extend the shortened statutory period for an additional month, which will be granted

even if previous extensions have been granted.  In no event however, will the statutory period for

response expire later than SIX MONTHS from the mailing date of the final action.  See MPEP §

2265.

17.     **All** correspondence relating to this inter partes reexamination proceeding should be

directed:

By Mail to:
Mail Stop Ex Parte Reexam
Attn: Central Reexamination Unit
Commissioner of Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to:
(571) 273-9900
Central Reexamination Unit

By hand:
Customer Service Window
Randolph Building

Application/Control Number: 90/012,817                                    Page 22
Art Unit: 3992

401 Dulany St.
Alexandria, VA 22314

By EFS-Web:
Registered users of EFS-Web may alternatively submit such correspondence via the electronic
filing system EFS-Web, at

https:efs.uspto.qov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the particular area of the Office that needs to
act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically
uploaded) directly into the official file for the reexamination proceeding, which offers parties the
opportunity to review the content of their submissions after the "soft scanning" process is
complete.

Any inquiry concerning this communication or earlier communications from the examiner, or as
to the status of this proceeding, should be directed to the Central Reexamination Unit at
telephone number (571) 272-7705.

Signed:

/Mark Sager/
Reexamination Specialist Examiner, Art Unit 3992

Conferees:
/RSD/

/Daniel J Ryman/
Supervisory Patent Examiner, Art Unit 3992

| **Office Action in Ex Parte Reexamination** | **Control No.**<br>90/012,817 | **Patent Under Reexamination**<br>8040574 |
|---|---|---|
| | **Examiner**<br>MARK SAGER | **Art Unit**<br>3992 | **AIA (First Inventor to File) Status**<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on *July 26, 2013* .

     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☒ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.      3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.      4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-8* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-8* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All  b) ☐ Some*  c) ☐ None    of the certified copies have

     1 ☐ been received.

     2 ☐ not been received.

     3 ☐ been filed in Application No. _____ .

     4 ☐ been filed in reexamination Control No. _____.

     5 ☐ been received by the International Bureau in PCT application No. _____.

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

| *Notice of References Cited* | Application/Control No. 90/012,817 | Applicant(s)/Patent Under Reexamination 8040574 | |
|---|---|---|---|
| | Examiner MARK SAGER | Art Unit 3992 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,598,533 | 01-1997 | Yokota et al. | 358/1.15 |
| * | B | US-5,175,762 | 12-1992 | Kochis et al. | 379/100.01 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012817 | 8040574 |
| | Examiner | Art Unit |
| | MARK SAGER | 3992 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/10/2013 | 09/25/2013 | | | | | | | |
| | 1 | ✓ | ✓ | | | | | | | |
| | 2 | ✓ | ✓ | | | | | | | |
| | 3 | ✓ | ✓ | | | | | | | |
| | 4 | ✓ | ✓ | | | | | | | |
| | 5 | ✓ | ✓ | | | | | | | |
| | 6 | ✓ | ✓ | | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | |
| | 8 | ✓ | ✓ | | | | | | | |

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/012,817 | 8040574 |
| | **Certificate Date** | **Certificate Number** |

| Requester | Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|---|

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
IPRM-FLOOR 43
BOSTON, MA 02199-3600

| **LITIGATION REVIEW** ☒ | **mas** | |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| 2:12CV6799 | | |
| 2:12CV6796 | | |
| 2:12CV6806 | | |
| 2:12CV6801 (Closed 12/27/12) | | |
| See scanned Lit Search (9/25/2013) for further entries | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| 1.    NONE | |
| 2. | |
| 3. | |
| 4. | |

DOC. CODE **RXFILJKT**



### Search Notes

| Application/Control No. | Applicant(s)/Patent under Reexamination | |
|---|---|---|
| 90/012,817 | 8040574 | |
| **Examiner** | **Art Unit** | |
| MARK SAGER | 3992 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| NONE | 9/25/2013 | MAS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |