IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INFINITY COMPUTER PRODUCTS, INC.** : <br> *Plaintiff* : <br> : <br> **v.** : <br> : <br> **OKI DATA AMERICAS, INC.** : <br> *Defendant* : | **CIVIL ACTION** <br><br> **NO. 12-6797** |
| **INFINITY COMPUTER PRODUCTS, INC.** : <br> *Plaintiff* : <br> : <br> **v.** : <br> : <br> **LEXMARK INTERNATIONAL, INC.** : <br> *Defendant* : | **CIVIL ACTION** <br><br> **NO. 12-6799** |
| **INFINITY COMPUTER PRODUCTS, INC.** : <br> *Plaintiff* : <br> : <br> **v.** : <br> : <br> **CANON USA, INC.** : <br> *Defendant* : | **CIVIL ACTION** <br><br> **NO. 12-6800** |
| **INFINITY COMPUTER PRODUCTS, INC.** : <br> *Plaintiff* : <br> : <br> **v.** : <br> : <br> **EPSON AMERICA, INC.** : <br> *Defendant* : | **CIVIL ACTION** <br><br> **NO. 12-6806** |

NITZA I. QUIÑONES ALEJANDRO, J.                                                         FEBRUARY 23, 2018

# MEMORANDUM OPINION

**INTRODUCTION**

The above-captioned civil actions are part of twelve cases which were consolidated by Order dated January 11, 2018,[1] (collectively, the "Related Cases") for discovery and pretrial purposes with Civil Action No. 12-6796 designated as the lead case. Before this Court are four motions to transfer the above-captioned cases based upon arguments of improper venue, and the recent Supreme Court decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) and 28 U.S.C. § 1400(b). Defendant Toshiba America Business Solutions, Inc., ("Toshiba") also filed a motion to transfer venue, however; said motion is based on 28 U.S.C. § 1404(a), *forum non conveniens* and, therefore, will be addressed by separate opinion. [*See* 12-cv-6799 at ECF 71].[2]

Specifically, in their respective motions, Defendants OKI Data Americas, Inc. ("OKI"), Lexmark International, Inc., ("Lexmark"), Canon U.S.A, Inc., ("Canon"), and Epson America, Inc., ("Epson") (collectively, the "Moving Defendants") seek to transfer their cases as follows: Defendant OKI to the District of Delaware, [12-cv-6797 at ECF 80]; Defendant Lexmark to the Eastern District of Kentucky, [12-cv-6799 at ECF 71]; Defendant Canon to the Eastern District of New York, [12-cv-6800 at ECF 61]; and Defendant Epson to the Central District of California. [12-cv-6806 at ECF 61]. Plaintiff Infinity Computer Products, Inc. ("Plaintiff" or

---

[1] The twelve consolidated cases are filed as: Civil Action Nos. 12-6796, 12-6797, 12-6798, 12-6799, 12-6800, 12-6802, 12-6803, 12-6804, 12-6805, 12-6806, 12-6807, and 12-6808.

[2] Defendant Toshiba filed its motion to transfer pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Unlike the other Defendants herein, Defendant Toshiba does not argue that venue is improper in the Eastern District of Pennsylvania based upon the Supreme Court's holding in *TC Heartland*. Accordingly, this Court will address Defendant Toshiba's motion to transfer separately.

"Infinity") opposes these motions on the basis of waiver, prejudice, and *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016).[3]

The issues raised in these four motions have been fully briefed by the parties and are now ripe for disposition. This Court notes that the issues and relevant facts relied upon in the various motions to transfer, responses and replies are similar, except where noted, and, therefore, these motions will be jointly addressed and decided. For the reasons set forth, Moving Defendants' respective motions to transfer are granted.

**BACKGROUND**[4]

To give context to the motions to transfer venue, a summary of the protracted procedural history in these cases is warranted:

> On June 30, 2010, Plaintiff filed a patent infringement action against fifteen corporate defendants, including Moving Defendants, which was docketed at Civil Action No. 10-3175 (the "Original Case"), and assigned to the calendar of the Honorable Legrome D. Davis.[5] Subsequently, Plaintiff amended the complaint to assert additional patent infringement counts related to its Patent Nos. 6,894,811 (the "811 Patent") and 7,489,423 (the "423 Patent").[6] [Original Case

---

[3] Plaintiff's responses are docketed at ECF 82 in 12-cv-6797, ECF 72 in 12-cv-6799, ECF 63 in 12-cv-6800, and ECF 63 in 12-cv-6806. In ruling on Moving Defendants' motions to transfer, this Court also considered Moving Defendants' replies in support of their motions to transfer, and Plaintiff's *sur-reply* in opposition to Defendant Lexmark's motion to transfer.

[4] The procedural and factual backgrounds of these cases are known to the parties. Therefore, only the facts pertinent to the motions to transfer will be discussed.

[5] The original fifteen defendants are: (1) Brother International Corporation; (2) Toshiba America Business Solutions, Inc.; (3) OKI Data Americas, Inc.; (4) Samsung Electronics Americas, Inc.; (5) Lexmark International, Inc. (6) Canon USA, Inc.; (7) Konica Minolta Business Solutions, U.S.A., Inc.; (8) Panasonic Corporation of North America; (9) Xerox Corporation; (10) Hewlett-Packard Company; (11) Epson America, Inc.; (12) Ricoh Americas Corporation; (12) Dell, Inc.; (14) Eastman Kodak Company; and (15) Sharp Electronics Corporation.

[6] The 811 Patent is entitled "Interface Circuit for Utilizing a Facsimile Coupled to a PC as a Scanner or Printer." The 423 Patent is entitled "Interface Circuit for Utilizing a Facsimile Machine Coupled to a PC as a Scanner or Printer."

ECF 158]. On October 5, 2012, the defendants filed motions to dismiss the complaint and/or sever based on misjoinder, [Original Case ECF 260, 261], which Plaintiff opposed. [Original Case ECF 265, 266]. On November 16, 2012, Judge Davis granted the motion to sever, [Original Case ECF 280], and ordered that the civil actions, other than the one involving Defendant Brother International Corporation, be severed,[7] and that Plaintiff file separate complaints against each defendant. On December 5, 2012, Plaintiff filed separate complaints (the Related Cases),[8] which alleged the infringement of the 811 and 423 Patents, as well as Patent Nos. 8,040,574 (the "574 Patent") and Patent 8,294,915 (the "915 Patent"),[9] (Patents 811, 423, 574 and 915, will be referred to as collectively the "Patents").

In January 2013, Defendant Epson filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and in February 2013, Defendant OKI filed a motion for judgment on the pleadings as to the 811 Patent and a motion to dismiss the complaint pursuant to Rule 12(b)(6). Judge Davis denied these motions.

In the spring of 2013, defendants in the Related Cases, including Moving Defendants, moved to stay their respective actions pending the outcome of a reexamination of the Patents by the United States Patent and Trademark Office ("USPTO"). Notwithstanding Plaintiff's opposition, Judge Davis granted the motions and stayed all proceeding pending the conclusion of the reexamination.

On July 12, 2013, Plaintiff's then counsel, Attorney Robert Sachs, moved to withdraw as counsel. Judge Davis denied the motion. On November 18, 2013, Attorney Sachs renewed his motion to withdraw as counsel. By Order dated November 22, 2013, Judge Davis granted the motion and ordered Plaintiff to "promptly retain new counsel." Despite the passage of more than three-and-one-half years, no attorney entered an appearance on behalf of Plaintiff. In June 2017,

---

[7] Prior to the cases being severed, Infinity and Sharp Electronics filed a joint motion to dismiss all of Infinity's claims against Sharp Electronics, [Original Case ECF 237]. Judge Davis granted said motion on October 29, 2011. [Original Case ECF 239].

[8] Infinity ultimately filed thirteen actions against the remaining defendants in the Original Case other than Brother International Corporation. One of these cases, *Infinity Computer Products, Inc. v. Eastman Kodak Company* (12-cv-6801) was voluntarily dismissed by Infinity on December 27, 2012. [Civil Action No. 12-6801 ECF 5]. In addition, on May 16, 2013, Infinity and Brothers International Corporation filed a stipulated motion to dismiss all claims asserted against Brothers International Corporation with prejudice, [Original Case ECF 289], which Judge Davis granted. [Original Case ECF 290]. Thus, the only remaining cases are the twelve pending Related Cases.

[9] The 574 Patent is entitled "Interface Circuit for Utilizing a Facsimile Machine Coupled to a PC as a Scanner or Printer." The 915 Patent is entitled "Interface Circuit for Utilizing a Facsimile Machine Coupled to a PC as a Scanner or Printer."

4

Moving Defendants filed individual motions to dismiss the complaints filed against them pursuant to Rule 41(b) based on Plaintiff's failure to prosecute its claims and comply with Judge Davis' orders.[10] On June 15, 2017, Judge Davis again ordered Plaintiff to obtain counsel and to file a response to the Rule 41(b) motions. On July 13, 2017, Attorney Edward Behm, Jr., entered his appearance on behalf of Plaintiff, and filed responses in opposition to the Rule 41(b) motions. On July 28, 2017, Plaintiff filed motions to lift the stay in the Related Cases, which were granted by Judge Davis by Order dated August 8, 2017.

Judge Davis retired in September 2017, and by Order dated October 3, 2017, the Related Cases were reassigned to the undersigned. By Order dated October 12, 2017, Moving Defendants' various Rule 41(b) motions were denied. Subsequently, Moving Defendants filed the instant motions to transfer for improper venue pursuant to 28 U.S.C. §§ 1400 and 1406.[11]

**LEGAL STANDARD**

In deciding a motion to transfer for improper venue, courts must generally accept as true the allegations in the complaint, although the parties may submit affidavits in support of their positions.[12] *See Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724 (3d Cir. 1982); *see also Anderson v. TransUnion, LLC*, 2018 WL 334495, at *1 (E.D. Pa. Jan. 9, 2018). The court may examine facts outside the complaint to determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor. *See Heft v. AAI Corp.,* 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005). The movant bears the burden of proving that venue in the selected

---

[10] The Rule 41(b) motions were docketed at ECF 58 in 12-cv-6797 (Defendant OKI); ECF 43 in 12-cv-6799 (Defendant Lexmark); ECF 42 in 12-cv-6800 (Defendant Canon); and ECF 41 in 12-cv-6806 (Defendant Epson).

[11] Defendant Canon filed its motion to transfer on November 15, 2017, Defendant Epson on November 21, 2017, and Defendant OKI on December 6, 2017. On January 10, 2018, this Court set January 16, 2018, as the deadline for Defendants in the Related Cases to file motions to transfer based on improper venue. Defendant Lexmark filed its motion to transfer on January 16, 2018.

[12] While Moving Defendants style their motions as motions to transfer brought pursuant to 28 U.S.C. § 1406(a), as opposed to Rule 12(b)(3), this is a distinction without a difference. "The only difference between Rule 12(b)(3) and 28 U.S.C. § 1406(a) is that the former specifically provides that a defendant may bring a motion to dismiss for improper venue. Both provisions are triggered by the same defect, however: noncompliance with the statutory venue provisions of 28 U.S.C. §§ 1391-1403." *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 680 (D.N.J. 1993).

judicial district is improper. *Myers,* 695 F.2d at 724; *see also Bockman v. First Am. Mktg. Corp.,* 459 F. App'x 157, 160 (3d Cir. 2012).

As noted, these civil actions are based on claims of patent infringement. The applicable venue statute provides that a "civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For purposes of venue under § 1400(b), a domestic corporation "resides" *only* in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Further, to have a "regular and established place of business" in a district, a defendant must have "a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017).[13] The place of business must be both "regular," which means that it operates in a "steady[,] uniform[,] orderly [, and] methodical" manner, and "established," which means that it is not transient but instead "settle[d] certainly, or fix[ed] permanently." *Id.* at 1362-63. Finally, the place of business must be the defendant's place, and not simply a place of the defendant's employees—the defendant must be the one that established or ratified the business. *Id. at* 1363.

If a district court determines that venue is improper, the court may either dismiss the case or, if it is in the interest of justice, may transfer the case to any district in which it properly could have been brought. 28 U.S.C. § 1406(a). The court may transfer the entire case or may sever the claims for which venue is improper and transfer only those claims. *Cottman Transmission Sys.,*

---

[13] The Federal Circuit's decisions on patent law are binding on this Court, as the Federal Circuit has exclusive appellate jurisdiction over cases in which this Court's jurisdiction is based on federal patent law. *See In re Cray Inc.*, 871 F.3d at 1360 (Fed. Cir. 2017); *In re Micron Tech., Inc.*, 875 F.3d 1091, 1098 (Fed. Cir. 2017); *see also Trustees of Univ. of Pennsylvania v. St. Jude Children's Research Hosp.*, 982 F. Supp. 2d 518, 529 n.14 (E.D. Pa. 2013).

*Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994). The decision of whether to transfer an action is a matter within the district court's discretion. *See* 28 U.S.C. § 1404(b). The moving party bears the burden of establishing the need for transfer. *Myers*, 695 F.2d at 724.

**DISCUSSION**

With this legal framework in mind, Moving Defendants argue that venue is improper in the United States District Court for the Eastern District of Pennsylvania because each Moving Defendant is a domestic corporation incorporated in a state other than Pennsylvania, and none maintains headquarters, or a place of business, or offices, in Pennsylvania. As such, Defendant OKI seeks transfer of its case to the District of Delaware, the state in which it is incorporated. Defendant Lexmark seeks transfer of its case to the Eastern District of Kentucky, arguing that its principal place of business is in Lexington, Kentucky. Defendant Canon seeks transfer of its case to the Eastern District of New York as it is incorporated in New York and its principal place of business is in the Eastern District of New York. Defendant Epson seeks transfer of its case to the Central District of California because it is incorporated in California and maintains its headquarters in the Central District of California.

Plaintiff objects to any transfer and argues that (1) Moving Defendants waived any right to assert improper venue, (2) any transfer would cause Plaintiff to suffer prejudice, and (3) any transfer would be inappropriate under the holding of *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016). Plaintiff also argues that as to Defendants Canon and Lexmark, venue is proper because both Defendants maintain a presence in this federal district. Because Plaintiff's waiver, *Dietz*, and prejudice arguments apply to all Moving Defendants, these arguments will be jointly addressed.

*Plaintiff's Waiver of Improper Venue Argument*

Moving Defendants rely exclusively on the Supreme Court decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), decided on May 22, 2017, to support their improper venue arguments. In that case, the Supreme Court definitively established that consistent with 28 U.S.C § 1400(b), "any civil action for patent infringement may be brought in the judicial district where the defendant resides", and that a domestic corporation "resides" *only* in its state of its incorporation. *TC Heartland*, 137 S. Ct. at 1521. Thereafter, on November 15, 2017, the Federal Circuit Court, whose decisions in patent cases are binding on this Court, held that the *TC Heartland* decision constituted an intervening change of law. *In re Micron Tech., Inc.*, 875 F.3d 1091, 1099-1100 (Fed. Cir. 2017). The *Micron* ruling established binding authority that a *TC Heartland*-based venue objection became available *only* after the *TC Heartland* decision was rendered. Thus, a defendant wishing to file a motion asserting a *TC Heartland* venue argument is not barred from doing so by operation of Rule 12(h) waiver provisions, merely because it filed a previous Rule 12(b) motion prior to *TC Heartland*. *Id.* at 1096-1100;[14] s*ee also* Fed. R. Civ. P. 12(h).

---

[14] Initially, district courts nationwide were split over whether *TC Heartland* constituted an intervening change of law. *Compare Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 254 F. Supp. 3d 836, 839 (E.D. Va. 2017) (holding that *TC Heartland* does not qualify as a change of law because it merely affirms *Fourco*); *Reebok Int'l Ltd. v. TRB Acquisitions LLC*, 2017 WL 3016034, at *4 (D. Or. July 14, 2017) (same); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017) (same) *with Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229 (D. Del. 2017) (holding that *TC Heartland* was an intervening change of law because it overruled *VE Holdings*). *Simpson Performance Prod., Inc. v. Mastercraft Safety, Inc.*, 2017 WL 3620001, at *5-7 (W.D.N.C. Aug. 23, 2017) (same); *Westech Aerosol Corp. v. 3M Co.*, 2017 WL 2671297, at *2 (W.D. Wash. June 21, 2017) (same). Whether *TC Heartland* constituted an intervening change of law is relevant because a defendant who files a Rule 12(b) motion is precluded from filing a second Rule 12(b) motion "raising a defense or objection <u>that was available</u> to the party but omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g)(2) (emphasis added). Thus, if *TC Heartland* was not an intervening change of law, defendants who filed a pre-*TC Heartland* Rule 12(b) motion that did not assert an improper venue defense, as Moving Defendants did here, would not be entitled to file a new improper venue motion. Alternatively, if

Plaintiff does not strenuously dispute that *TC Heartland* is a change of law.[15] Instead, Plaintiff argues that Moving Defendants waived any right to raise this improper venue argument based on their actions and/or inactions after *TC Heartland* was decided. Specifically, Plaintiff argues that Moving Defendants waived their improper venue argument because they: (1) waited approximately six months or longer after the *TC Heartland* decision was issued on May 22, 2017, to file the improper venue motions and (2) filed motions to dismiss for failure to prosecute that did not include, but should have, dismissal based on improper venue. This Court disagrees.

Clearly, an improper venue argument may be deemed waived by a defendant who does not interpose a timely and sufficient objection to venue. *See* 28 U.S.C. § 1406(b); *Breland v. ATC Vancom, Inc.*, 212 F.R.D. 475, 476 (E.D. Pa. 2002) (noting that "[i]mproper venue may . . . be waived by [a] defendant."). Plaintiff submits that the motions are untimely and argues that this Court should consider the date on which the *TC Heartland* was issued, May 22, 2017, as the "accrual" or starting date to determine if the motions to transfer were timely filed. Moving Defendants contend that the "accrual" date for consideration is November 15, 2017, the date when the *Micron* decision established that *TC Heartland* constituted an intervening change of law. This Court has considered the totality of the events in these Related Cases, including the

---

the defense was not originally available and only became available due to an intervening change of law, Rule 12's waiver provisions would not apply. *See In re Micron Tech., Inc.*, 875 F.3d at 1096-97.

[15] In its response to Defendant Lexmark's and Epson's motions to transfer, Plaintiff merely states that "[r]egardless of whether *TC Heartland* constituted an intervening change of law," Moving Defendants' conduct after *TC Heartland* constitutes waiver. To the extent, however, that Plaintiff does dispute that *TC Heartland* constituted an intervening change of law, this argument is without merit. *In re Micron Tech., Inc.*, 875 F.3d at 1096-1100.

9

protracted procedural history, and finds that, even using the earlier *TC Heartland* "accrual" date, Moving Defendants have not waived their improper venue arguments.[16]

When *TC Heartland* was decided on May 22, 2017, the Related Cases were all stayed, and had been stayed for approximately four years pending the reexamination of the Patents. It was not until August 8, 2017, that the stay was lifted. Thus, the August 8, 2017 date will be considered as the operative date to evaluate Moving Defendants' conduct and the waiver arguments. The docket reveals that Defendants Canon and Epson filed their motions to transfer on November 15 and November 21, 2017, respectively, approximately three months after the stay was lifted. Defendant OKI filed its motion to transfer on December 6, 2017, and Defendant Lexmark filed its motion to transfer on January 16, 2017, in accordance with the Court's deadline, approximately five months after the stay was lifted.[17] In this Court's opinion, none of these delays alone is sufficient to trigger waiver. *Cf. Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 303 (3d Cir. 2016) (finding that a three-month delay is not an unreasonable delay, and will not result in waiver of a newly available defense); *Imbesi v. Imbesi*, 2001 WL 1352318, at *6 (E.D. Pa. Oct. 30, 2001) (finding that four-month delay of party's right to assert disqualification

---

[16] Moving Defendants argue that November 15, 2017 is the "accrual" date because prior to *Micron*, district courts nationwide were split on whether *TC Heartland* constituted an intervening change of law, and thus, there was no guarantee that this Court would have found that Moving Defendants had not waived their improper venue defense by virtue of filing prior Rule 12(b) motions and not including an improper defense in their respective answer. While it is true that "a litigant [need not] engage in futile gestures merely to avoid a claim of waiver," *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 293 (3d Cir. 2016) (quoting *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986)), it is not clear that filing motions to transfer prior to *Micron* would have been futile. Further, the *Micron* Court, while finding that *TC Heartland* was an intervening change of law, decided to remand the case so the district court could consider whether the defendant had waived improper venue on non-Rule 12 grounds. *In re Micron*, 875 F.3d at1102. Due to the procedural history of Moving Defendants' cases, however, using the *TC Heartland* decision as the relevant date does not change the outcome.

[17] This Court notes that, while not dispositive, even the last motion to be filed was filed only two months after the *Micron* Court concluded that *TC Heartland* was a change of law, thus guaranteeing that Moving Defendants were not barred from filing their motions to transfer by operation of Rule 12's waiver provision.

is insufficient to warrant waiver); *First Fin. Bank, N.A. v. J.P. Morgan Chase & Co.*, 2009 WL 881034, at *2 n.4 (E.D. Pa. Mar. 30, 2009) (finding that six-month delay in filing motion to dismiss for lack of personal jurisdiction does not warrant waiver). This is especially true where, as in these cases pending before this Court, there has been virtually no substantive and/or procedural litigation occurring between the lifting of the stay and the filing of the motions to transfer, aside from actions taken pursuant to this Court's Orders. *Cf. Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 232 (3d Cir. 2008) (noting that the "length of the time period involved alone is not determinative" when determining waiver of right to compel arbitration); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223 (3d Cir. 2007) (same). In short, this Court finds that Moving Defendants' three-to-five month delay in filing motions to transfer, in the absence of any other conduct or action during the relevant time period, does not warrant waiver.

Plaintiff next argues that Moving Defendants' waived their right to object to venue when they filed Rule 41(b) motions to dismiss based on Plaintiff's failure to prosecute. Plaintiff argues that only after the Rule 41(b) motions were denied did Moving Defendants file their motions to transfer. Plaintiff contends that this "wait-and-see" approach requires the denial of these motions. Plaintiff is mistaken.

Rule 41(b) provides, *in part*, that if a "plaintiff fails to prosecute or to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Moving Defendants relied on Rule 41(b) to seek the dismissal of their respective cases and argued that despite Judge Davis' November 22, 2013 Order, more than three years had passed, and Plaintiff had not yet obtained counsel. While this Court recognizes that these cases were stayed pending the reexaminations of the Patents by the USPTO, it appears that it took Moving Defendants' filing of the Rule 41(b) motions for involuntary dismissal and the issuance

of a second order from Judge Davis to prompt Plaintiff to finally obtain new counsel. Clearly, these motions were not substantive motions brought under Rule 12(b), but rather were brought under Rule 41(b) due to what was perceived, correctly or not, as Plaintiff's abandonment of the respective cases.[18] By denying these Rule 41(b) motions, this Court gave Plaintiff the benefit of the stay despite its failure to comply with Judge Davis' Order for over three years. Despite the consideration afforded, Plaintiff now complains that Moving Defendants did not file motions to transfer while the cases were stayed. Plaintiff ignores that the filing of the Rule 41(b) motions was necessitated because of its own conduct and inaction, and that as a corporation, it is required to have legal representation. Thus, for the reasons set forth, this Court finds that Plaintiff's argument that Moving Defendants' decision to file Rule 41(b) motions without including a request to transfer venue constitute waivers of their improper venue arguments, is without merit.

### *Plaintiff's Dietz Argument*

Plaintiff also asserts a waiver argument in reliance on *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). Specifically, Plaintiff asks this Court to use its inherent power and find that Moving Defendants forfeited the right to assert improper venue due to their participation and/or actions in their respective cases. Plaintiff further contends that Moving Defendants forfeited any right to assert an improper venue argument because, prior to *TC Heartland*, Moving Defendants did not contest venue and participated in the various aspects of the case proceedings. In addition, Plaintiff contends that after *TC Heartland*, Moving Defendants continued to prepare their defenses by, *inter alia*, engaging in motions practice, exchanging initial disclosures, submitting a joint Rule 26(f) report with proposed scheduling deadlines for the Related Cases, attending the

---

[18] This Court notes that because Moving Defendants' motions to dismiss for failure to prosecute were brought pursuant to Rule 41(b), these motions do not, in and of themselves, trigger the waiver provisions of Rule 12. *See* Fed. R. Civ. P. 12(h)(1).

preliminary pretrial conference, and agreeing that the Related Cases ought to be consolidated for pretrial purposes. These actions, Plaintiff argues, are sufficient for this Court to hold that Moving Defendants forfeited their improper venue arguments. This Court disagrees.

Undeniably, "a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (internal quotations omitted). A district court's exercise of its inherent powers "must be a reasonable response to the problems and needs confronting the court's fair administration of justice" and "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id.* at 1891-92 (internal quotations and citations omitted). The framework set forth in *Dietz* applies to venue objections. *In re Micron Tech., Inc.*, 875 F.3d at 1100-01.

While active participation in the proceedings and the exchange of discovery may result in forfeiture of an improper venue argument, *see Koninklijke Philips N.V. v. ASUSTeK Computer Inc.*, 2017 WL 3055517, at *3 (D. Del. July 19, 2017), such forfeiture has not occurred here. As noted, prior to and after the *TC Heartland* decision, these actions were stayed. It was not until the *TC Heartland* Court conclusively established that for purposes of venue under § 1400(b), a corporate defendant only "resides" in its state of incorporation that Moving Defendants were able, and chose, to assert their respective improper venue arguments. Thus, this Court opines that it is Moving Defendants' conduct after the decision in *TC Heartland*, and not its conduct before, that is relevant to Plaintiff's *Dietz* argument.

As noted, procedurally, Moving Defendants filed their Rule 41(b) motions in June 2017 based on Plaintiff's failure to comply with Judge Davis' November 22, 2013 Order. Moving

Defendants' Rule 41(b) motions were fully briefed prior to the stay being lifted on August 8, 2017. Thereafter, nothing substantial occurred in the Related Cases until the Order dated October 20, 2017, which directed the parties to provide initial disclosures and commence discovery, submit a joint Rule 26(f) report, and attend a preliminary pretrial conference.

From a review of the docket, it appears that the Moving Defendants' individual "participation" after *TC Heartland* was limited to (1) filing the Rule 41(b) motions and (2) complying with the October 20, 2017 Order, with the exceptions of *pro hac vice* motions and the underlying motions to transfer. Further, though these cases were filed in 2012 and stem from the Original Case filed in 2010, these Related Cases are still in their very early stages due to the four year court-imposed stay which occurred shortly after Moving Defendants filed their respective answers. An initial scheduling order was not issued until October 20, 2017. The final pretrial conference is not scheduled to take place until sometime in January 2020. In addition, in light of this Court's Order dated February 1, 2018, discovery has been stayed in Moving Defendants' cases pending this Court's resolution of the motions to transfer. In light of the procedural posture of these cases, there is no reason for this Court to utilize its inherent powers and find forfeiture of the improper venue arguments. To find otherwise would not be a "reasonable response to the problems and needs confronting the court's fair administration of justice" and may well be contrary to 28 U.S.C. § 1406(a). *Cf. Dietz* 136 S. Ct. at 1891. Accordingly, Plaintiff's request for this Court to use its inherent powers is declined.

### *Plaintiff's Prejudice Argument*

Plaintiff argues that it will be prejudiced if the motions to transfer are granted and bases its argument on the fact that these cases were originally commenced more than seven years ago. Plaintiff further argues that any transfer would cause additional delay, prolong the recovery and

augment damages, and force Plaintiff to litigate in multiple forums where inconsistent rulings could result. Plaintiff, however, does not provide any support that prejudice is a relevant consideration where transfer is sought pursuant to 28 U.S.C. §§ 1400(b) and 1406. To the contrary, Plaintiff solely relies on cases that address transfer of venue for *forum non conveniens,* as provided under 28 U.S.C. § 1404, and where there is no challenge to the propriety of venue. That is not the case here.

Moving Defendants' motions to transfer are brought pursuant to §§ 1400(b) and 1406, the patent venue and the transfer for improper venue provisions. As noted, § 1400(b) is the patent venue provision which requires patent infringement cases to be brought in the judicial district where the defendant resides or has committed acts of infringement and has a regular established place of business. 28 U.S.C. § 1400(b). Under § 1406 (a), the cure provision, the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Thus, where venue is improper, as Moving Defendants argue, dismissal is the default court action, while transfer should be done only in the interest of justice. The element of prejudice is *only* considered under § 1406(a) when deciding between a dismissal or a transfer—it is not considered as the reason or basis to ignore improper venue claims, as Plaintiff appears to suggest. *Cf. Lafferty v. St. Riel*, 495 F.3d 72, 78-79 (3d Cir. 2007) (assessing prejudice when determining whether to transfer rather than dismiss case for improper venue under § 1406(a)). Accordingly, any prejudice Plaintiff may suffer from the transfer of these particular cases is not relevant to the determination of whether venue is or is not proper in the federal courts of Pennsylvania, particularly, the Eastern District. Prejudice is only relevant to the Court's decision to dismiss or to transfer. In these cases, since Moving

Defendants seek transfer and not dismissal of their respective cases, this Court need not consider prejudice to Plaintiff. Accordingly, Plaintiff's prejudice argument is not relevant and, therefore, lacks merit.

In sum, for the reasons provided, this Court finds that the arguments offered by Plaintiff regarding waiver, *Dietz*, and prejudice, lack merit. Plaintiff does not offer further argument that under 28 U.S.C. § 1400(b) venue is not proper in the Eastern District of Pennsylvania as to Defendants Epson and OKI. Therefore, Defendants Epson's and OKI's respective motions to transfer are granted. As to Defendants Canon and Lexmark, however, Plaintiff argues that since they both maintain a presence in the Eastern District of Pennsylvania, venue is proper pursuant to § 1400(b) because these Moving Defendants "committed acts of infringement and [have] a regular and established place of business" in this district. *See* 28 U.S.C. § 1400(b). This Court will address these contentions separately.

### *Defendant Canon*

Plaintiff contends that Defendant Canon's motion to transfer should be denied because venue is proper in the Eastern District of Pennsylvania pursuant to § 1400(b) since Defendant Canon committed acts of infringement and has a regular and established place of business in this district. Plaintiff relies on a Google search that reveals that Canon Solutions America, Inc. ("CSA"), a wholly owned subsidiary of Defendant Canon, has a physical, regular and established place of business at 1650 Market Street, Philadelphia, Pennsylvania 19103, and at 800 Enterprise Drive, Horsham, Pennsylvania 19044, both within the Eastern District of Pennsylvania. [12-cv-6800 at ECF 63 at 17-18]. Plaintiff argues that CSA's place of business should be imputed to Defendant Canon and cites to certain circumstances where the venue of a subsidiary may be imputed on the parent corporation, such as, when the entities do not maintain separate bank

16

accounts, tax returns, and/or financial statements. (*Id*. at 18). Plaintiff further notes that while Defendant Canon did not mention this subsidiary in its motion to transfer, it is apparent that its subsidiary sells infringing products and, as such, the motion should either be denied or this Court should permit the parties to conduct venue-related discovery. (*Id.*).

In its reply, Defendant Canon addresses Plaintiff's contentions. Specifically, Defendant Canon attests that CSA is a wholly-owned subsidiary of Defendant Canon; that CSA and Defendant Canon operate as separate legal and distinct entities that maintain separate bank accounts, and file separate financial statements and tax returns. [12-cv-6800 at ECF 66 at 7].[19] Defendant Canon further argues that CSA's contracts are not performed by Defendant Canon, nor does Defendant Canon direct or control the day-to-day activities of CSA. Finally, Defendant Canon argues that despite Plaintiff's bald assertions, Plaintiff has not established that CSA sold any infringing products in this district.

To have a "regular and established place of business" consistent with § 1400(b), the place of business must be the *defendant's* place of business. *In re Cray Inc.*, 871 F.3d at 1362-63. Here, there is no dispute that CSA is not a defendant in any of Plaintiff's cases and, in particular, is not a defendant in the case involving Defendant Canon. Though CSA is Defendant Canon's subsidiary, CSA's presence within this district is not enough to render venue proper as to Defendant Canon. *See Lawman Armor Corp. v. Winner Int'l, LLC*, 2003 WL 22902808, at *5 (E.D. Pa. Dec. 10, 2003) ("The Court notes that imputing the venue of the subsidiary to the parent should be done [o]nly in instances where the corporate parent exercises considerable control over the subsidiary . . . .") (internal quotations omitted). Plaintiff has not provided any support for its contention that CSA's venue should be imputed on Defendant Canon.

---

[19] Defendant Canon submitted the declaration of Ms. Ana C. Tavares, Defendant Canon's Vice President of Americas Accounting, to support its factual assertions. [12-cv-6800 at ECF 66-1].

In addition to having a "regular and established place of business" in a district, a defendant must have also "committed acts of infringement" in the district for venue to be proper. 28 U.S.C. § 1400(b). While Plaintiff does not provide any support for its contention that CSA engaged in infringing activity in the Eastern District of Pennsylvania, Defendant Canon attested that CSA did not sell the PIXMA MX320 product or similar products, the allegedly infringing product identified in Plaintiff's complaint. [12-cv-6800 at ECF 66 at 9]. Plaintiff has not contested this assertion.

Based on this analysis, this Court finds that venue in this district cannot be imputed to Defendant Canon on the basis of its subsidiary and, therefore, is not proper. Accordingly, Defendant Canon's motion to transfer is granted.

*Defendant Lexmark*

In its motion to transfer, Defendant Lexmark argues that venue is improper in this federal district because it is incorporated in Delaware, maintains its principal place of business in Lexington, Kentucky, [20] and "does not have a place of business or any offices, research, development or manufacturing facilities in the Commonwealth of Pennsylvania . . . does not own, lease, maintain, or operate any facility in Pennsylvania [and] does not operate any distribution centers, or maintain any inventory, in Pennsylvania." [12-cv-6799 at ECF 71-1 at 2]. Plaintiff again relies on an internet or Google search to argue that Defendant Lexmark has multiple locations in the Eastern District of Pennsylvania, specifically, in Plymouth Meeting, Emmaus, and Collegeville, Pennsylvania. [12-cv-6799 at ECF 72 at 4-5]. In its reply, Defendant Lexmark asserts that the Plymouth Meeting location was a former Lexmark office

---

[20] Defendant Lexmark submitted the declaration of Mr. Thomas C. Wade, Defendant Lexmark's Senior Manager of Corporate Real Estate, to support its factual assertions. [12-cv-6799 at ECF 71-2].

that closed in 2009, and the other two locations are residential addresses; the Collegeville address is a former address of a Lexmark employee and the Emmaus location is not related to Lexmark. [12-cv-6799 at ECF 74-1 at 1-2].[21] In its *sur*-reply, Plaintiff does not contest these factual assertions,[22] and, instead, argues, that the location in Plymouth Meeting is sufficient to defeat Defendant Lexmark's motion to transfer because Defendant Lexmark had a regular and established place of business in this district when the cause of action accrued, and Plaintiff initiated the relevant action on June 30, 2010, a reasonable time after Defendant Lexmark's office closed in 2009. [12-cv-6799 at ECF 80 at 1-2]. This Court disagrees.

Some courts have held that venue is proper under § 1400(b) when a defendant had a regular and established place of business in a district, and the plaintiff initiated the action within a reasonable time after the place of business was closed. *See Welch Sci. Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 35 (7th Cir. 1969) (concluding that suit filed thirty-seven days after regular and established business location closed is reasonable and establishes venue). However, this rule has not been adopted by the Third Circuit Court of Appeals, and this Court declines the invitation to apply said ruling in this patent case.[23] Therefore, this Court finds that Defendant Lexmark did not have a regular and established place of business in this district. Therefore,

---

[21] Defendant Lexmark submitted the second declaration of Mr. Wade to support its factual assertions. [12-cv-6799 at ECF 74-2]

[22] In rendering this decision, this Court relies on Mr. Wade's sworn declaration and the assertions made by Defendant Lexmark's counsel, which are not disputed by Plaintiff.

[23] Further, the cases Plaintiff relies on all involve delays of less than six weeks, as opposed to at least a six-month delay, and possibly as long as an eighteen-month delay, between Defendant Lexmark closing its Plymouth Meeting office and Plaintiff initiating his case on June 30, 2010. Thus, even if this Court were to adopt the *Welch* rule, Plaintiff did not initiate his case against Defendant Lexmark in a reasonable amount of time to benefit from it.

venue in this district is not proper as to Defendant Lexmark. Accordingly, Defendant Lexmark's motion to transfer is granted.[24]

**CONCLUSION**

For the reasons stated herein, Moving Defendants' respective motions to transfer are granted. This Court finds that each Moving Defendant has met its burden of showing that the Eastern District of Pennsylvania is an improper venue with respect to Plaintiff's patent infringement claims against said Moving Defendant. In the interests of justice, each Moving Defendant's case is transferred to the appropriate district court.

An Order consistent with this Memorandum Opinion will be docketed in each respective case.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[24] Defendant Lexmark moves that its case be transferred to the Eastern District of Kentucky, where it maintains its principal place of business. [12-cv-6799 at ECF 71-1 at 3]. It is uncontested that venue is proper in the Eastern District of Kentucky, as the alleged infringement occurred there and Defendant Lexmark maintains a regular and established place of business in that district. 28 U.S.C. § 1400(b). This Court notes, however, that venue would also be proper in the District of Delaware, as Defendant Lexmark is incorporated, and thus resides, in Delaware. *Id.*; [12-cv-6799 at ECF 71-1 at 2]. Because Plaintiff does not dispute that this case, if transferred, should be transferred to the Eastern District of Kentucky and makes no mention of Delaware, and because the interests of justice support transfer to that district, this Court will transfer the case against Defendant Lexmark to the Eastern District of Kentucky.